IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1)  SEAN SMITH and CRYSTAL SMITH,  ) | |
| ) | |
| Plaintiffs,  ) | |
| ) | |
| v.  ) | Case No.:    CIV-17-1302-D |
| ) | (*Formerly Payne County District Court* |
| 1)  CSAA FIRE AND CASUALTY  ) | *Case No. CJ-2017-501*) |
| INSURANCE COMPANY and  ) | |
| LISA HOLLIDAY,  ) | |
| ) | |
| Defendants.  ) | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1441 and 1446, the Defendant, CSAA Fire and Casualty Company ("CSAA"), hereby removes the state court action, *Sean Smith and Crystal Smith v. CSAA Fire and Casualty Insurance Company and Lisa Holliday*, Case No. CJ-2017-501, from the District Court in and for Payne County, State of Oklahoma, to this Court.  Pursuant to LCvR 81.2, a copy of the State Court docket sheet, as well as all documents filed or served in the State Court action are attached hereto as **EXHIBITS 1-11**.

The basis of this removal is that the amount in controversy exceeds the jurisdictional amount required by 28 U.S.C. § 1332, and that – disregarding the fraudulently joined Defendant Lisa Holliday ("Holliday") – complete diversity exists.  In support of its removal, CSAA submits the following.

## PERTINENT PROCEDURAL BACKGROUND

1.      Plaintiffs, Sean Smith and Crystal Smith ("Plaintiffs"), commenced this action in the District Court of Payne County, State of Oklahoma (Case No. CJ-2017-501), on or about November 6, 2017.  (*See generally*, Petition, **EXHIBIT 2**.)

2.      Plaintiffs served CSAA, through the Oklahoma Insurance Commissioner, with the Summons and Petition on or about November 9, 2017. CSAA's registered agent, The Corporation Company, received the Summons and Petition from the Oklahoma Insurance Commissioner on or about November 13, 2017. (*See* Return of Service Documents, **EXHIBIT 12**.)

3.      Upon information and belief, Holliday, the fraudulently joined defendant, was served with this lawsuit on or about November 9, 2017.

## THE AMOUNT IN CONTROVERSY

4.      The Tenth Circuit has explained "[t]he right of removal depends upon the case disclosed by the pleadings when the petition therefore is filed."  *Woerter v. Orr*, 127 F.2d 969 (10th Cir. 1942).  As disclosed by the pleadings, Plaintiffs are seeking damages in excess of $75,000.00.

5.      Specifically, Plaintiffs' Petition prays for "judgment against Defendants, CSAA Fire and Casualty Insurance Company and Lisa Holliday, in an amount in excess of $75,000.00 for compensatory damages and against Defendant CSAA Fire and Casualty Insurance Company in an amount in excess of $75,000.00 for punitive damages plus interest,

costs, attorney fees and all other relief which the Court deems just and equitable." (Petition, p. 4, **EXHIBIT 2**.)

6.     Based on the foregoing, the amount in controversy requirement of § 1332 is met.

### THE CITIZENSHIP OF THE PARTIES

7.     Upon information and belief, at the time of filing and all pertinent times, Plaintiffs were residents of the State of Oklahoma. (*See* Declarations Page, **EXHIBIT 13**.) Therefore, upon information and belief, Plaintiffs are citizens of the State of Oklahoma.

8.     For purposes of diversity jurisdiction, a corporation shall be deemed a citizen of any State by which it has been incorporated and the State where it has its principal place of business.  *See* 28 U.S. 1332(c).  While Congress did not define "principal place of business," the Supreme Court has held that a corporation's principal place of business is presumed to be the place of the corporation's "nerve center."  *Hertz Corp. v. Friend*, 130 S.Ct. 1181 (2010).

9.     At the time of filing, CSAA was a foreign corporation, incorporated under the laws of the State of Indiana, with its "nerve center" or "principal place of business" in California. (*See* NAIC Company Demographics for CSAA, **EXHIBIT 14**.)  Thus, CSAA was deemed to be a citizen of Indiana and California.  CSAA was not a citizen of the State of Oklahoma.

10.     Finally, although Plaintiffs' Petition does not allege the citizenship of Holliday, Holliday is believed to be a citizen of the State of Oklahoma.  However, as shown below,

Holliday was fraudulently joined for the purpose of defeating diversity jurisdiction. Therefore, the citizenship of Holliday can be disregarded.

11.     Disregarding Holliday, the fraudulently joined defendant, the complete diversity requirement of § 1332 is met.

## CSAA 's Removal is Timely and Proper

12.     Pursuant to 28 U.S.C. § 1446(b), this Notice is timely filed with this Court. Thirty days have not elapsed since CSAA was served with the Summons and Petition.  (*See* Correspondence from the Oklahoma Department of Insurance, dated November 9, 2017, **Exhibit 15**; Return of Service Documents, **Exhibit 12**.)  Additionally, one year has not elapsed since the commencement of this action.  (*See generally,* Petition, **Exhibit 2**.)

13.     Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be served on counsel for the parties in this action.  Additionally, a copy of this Notice will be filed with the Clerk of the District Court in and for Payne County, State of Oklahoma.

14.     Title 28 U.S.C. § 1446(a) states that the defendant shall file the Notice of Removal in "[t]he District Court of the United States for the district and division within which such action is pending."  28 U.S.C. § 1446(a).  The Western District of Oklahoma includes the District Court in and for Payne County, State of Oklahoma.  28 U.S.C. 116(c). Therefore, the removal to this Court is proper.

15.     Finally, § 1446 generally requires that all defendants in multi-defendant cases join in the petition for removal or consent to such action.  There are, however, exceptions to

4

this rule.  *See McCurtain Cnty. Prod. Corp. v. Cowett*, 482 F.Supp. 809, 812 (E.D. Okla.

1978).  "An improperly joined party is not required to join in the removal petition."  *Id.* at

813; *see also Sycamore Family LLC v. Earthgrains Bakery Companies, Inc.*, No. 2:13-CV-

00639-EN, 2013 WL 5883868, at *2 & n. 21 (D. Utah Nov. 1, 2013) (collecting cases).

Holliday, an improperly joined party does not need to join or consent to this Removal.

Regardless, counsel for Holliday has advised counsel for CSAA that Holliday consents to the

present removal.

## THE FRAUDULENT JOINDER STANDARD

16.     Any Defendant who has been improperly or fraudulently joined must be

ignored for diversity purposes.  *Smoot v. Chicago, R.I. & P.R. Co.*, 378 F.2d 879, 882 (10th

Cir. 1967).  Despite the nomenclature, fraudulent joinder "does not reflect on the integrity

of the plaintiff or counsel, but exists regardless of the plaintiff's motives when the

circumstances do not offer any other justifiable reason for joining the defendant."  *Wolf*

*Creek Nuclear Operating Corp. v. Framatome ANP, Inc.*, 416 F. Supp. 2d 1081, 1085 (D.

Kan. 2006).  The reason for this doctrine is that a plaintiff who joins a non-diverse defendant

with the sole purpose of defeating removal is acting unfairly toward the non-diverse

defendant, who should not be a party, and to the diverse defendant, whose statutory right is

unjustly prohibited.  *Wilson v. Republic Iron & Steel*, 257 U.S. 92, 98, 42 S. Ct. 35, 37-38,

66 L. Ed. 144 (1921).

17.     As the removing party, a defendant bears the burden of establishing that

jurisdiction is proper.  *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir.

2001).   Assuming that the requisite amount in controversy can be satisfied, a removing

defendant does not have to show that the plaintiff committed outright "fraud" in pleading the

jurisdictional facts.   Rather, the removing defendant can simply show that there is no real

possibility of recovery against the non-diverse defendant.   *Dodson v. Spiliada Maritime*

*Corp.*, 951 F.2d 40, 42-43 & n. 3 (5th Cir. 1992).

18.   In *Slover v. The Equitable Variable Life Ins. Co.*, 443 F.Supp.2d 1272

(N.D.Okla. 2006), the court discussed the protocol for situations in which a defendant

believes that non-diverse co-defendants have been improperly joined:

> Because Defendants have alleged fraudulent joinder, the Court
> may pierce the pleadings. *Hale v. MasterSoft Int'l Pty. Ltd.*, 93
> F.Supp.2d 1108, 1113 (D.Colo. 2000). Thus, the Court may
> consider certain underlying facts--such as the insurance policy
> at issue here--to determine whether the non-diverse parties are
> proper. *Smoot v. Chi., Rock Island & Pac. R.R.*, 378 F.2d 879,
> 882 (10th Cir.1967) ("[U]pon specific allegations of fraudulent
> joiner the court may pierce the pleadings, consider the entire
> record, and determine the basis of joinder by any means
> available.") (Internal citations omitted). The standard, however,
> is stringent, and the Court must resolve any ambiguities in
> Plaintiffs' favor. *Martin*, 251 F.3d at 1289-90 ("[R]emoval
> statutes are construed narrowly; where plaintiff and defendant
> clash about jurisdiction, uncertainties are resolved in favor of
> remand.") (quoting *Burns v. Windsor Ins. Co.*, 31 F.3d 1092,
> 1095 (11th Cir.1994)).

*Id.* at 1276.  The Northern District of Oklahoma went on to say:

> "If outright fraud in the pleading of jurisdictional facts cannot
> be proven, ***the question becomes more closely akin to that of***
> ***whether the plaintiff has properly stated a claim upon which***
> ***relief may be granted*** under Fed.R.Civ.P. 12(b)(6).   *See*
> *Frontier Airlines, Inc. v. United Air Lines, Inc.*, 758 F.Supp.
> 1399, 1404 (D.Colo. 1989); *Fine v. Braniff Airways, Inc.*, 302
> F.Supp. 496, 497 (W.D.Okla. 1969).

*Id.* at 1278 -1279 (emphasis added).  The *Slover* court concluded by making the succinct but meaningful observation that, "if the plaintiff clearly cannot maintain a state law claim against the non-diverse defendant . . . such defendant shall be considered fraudulently joined." *Id.* at 1279.

### HOLLIDAY WAS FRAUDULENTLY JOINED

19.    Under *Trinity Baptist Church v. Brotherhood Mutual Insurance Services, LLC*, 341 P.3d 75 (Okla. 2014), Plaintiffs cannot maintain their negligence claim against Holliday. CSAA anticipates Plaintiffs will argue *Trinity* is not controlling because Holliday is an engineer, not an independent adjuster.  The *Trinity* decision, however, was founded upon the relationship among the parties, not the titles of the parties.

20.    The relationship among Plaintiffs, Holliday and CSAA is <u>identical</u> to the relationship that existed among the parties in *Trinity*.  In *Trinity*, Brotherhood Mutual Insurance Services, LLC's ("BMIS's") insured, Trinity Baptist Church ("Trinity"), submitted a claim to it for property damage.  BMIS hired an independent insurance adjuster, Sooner Claims Services, Inc. ("Sooner"), to assist with the investigation of Trinity's claim.  Sooner's specific job duties included collection of documentation; personal inspection of the loss; provision of a complete estimate; and provision of a descriptive report.  *Trinity*, 341 P.3d at 77.  Sooner provided its information to BMIS and BMIS decided what information, if any, would be shared with Trinity.  *Id.* at 78.  Sooner did not make coverage decisions.  *Id.*  It was a BMIS adjuster who made coverage determinations.  *Id.*

21.     In this matter, CSAA's insureds, Plaintiffs, submitted an earthquake claim for damage to their home. (*See* Petition, ¶ 3, **EXHIBIT 2**.) CSAA requested that an engineer, Holliday, inspect Plaintiffs' property to help determine the extent of damage, if any, from the earthquake. (*See* Petition, ¶¶ 4-5, **EXHIBIT 2**.)  Holliday provided her report to CSAA to assist in its investigation of Plaintiffs' claim. (*See* Petition, ¶ 5, **EXHIBIT 2**.)  The only factual difference, with respect to Plaintiffs' claims against Holliday and the claims asserted against Sooner in *Trinity*, is that Holliday's professional title is "engineer" and that Sooner's professional title was "independent adjuster".

22.     Prior to *Trinity*, there was one Oklahoma state court opinion addressing the question of whether an insured could maintain a cause of action against an independent adjuster:  *Brown v. State Farm and Casualty Company*, 58 P.3d 217 (Okla. Civ. App. 2002). Ten years after *Brown* was decided, this Court came to the opposite conclusion in an unreported decision.  *Wallace v. Allstate Ins. Co.*, 2012 WL 2060664 (W.D.Okla. 2012). In reaching its decision, the *Trinity* court examined both *Brown* and *Wallace*.

23.     As noted by the Oklahoma Supreme Court in *Trinity*, the Court of Civil Appeals in *Brown* "adopted the view of a minority of courts in other states that independent insurance investigators owe a duty to the insured as well as the insurer to conduct a fair and reasonable investigation of an insurance claim. " *Trinity*, at ¶ 24.  The Oklahoma Supreme Court **expressly** overruled *Brown*, adopted the majority rule and held "Sooner owed no legal duty to Trinity that would subject it to liability in tort, either for bad faith or negligence ... ." *Trinity*, at ¶ 32.

24.     The *Trinity* court also recognized that if the independent adjuster owes duty of care to the insured while fulfilling its duties to its client-insurer, the independent adjuster may be faced with an irreconcilable conflict.  The Oklahoma Supreme Court held these potential conflicting loyalties were another reason the general rule of foreseeability should not apply in the insurance claim context:

> The court in *Wallace* noted that the decision of this Court relied upon in *Brown* concerned an architect, bond counsel, and accounting firm, all of whom were highly skilled professionals who could reasonably expect third parties to rely upon their work.  The *Wallace* court correctly noted that different circumstances apply where insurance adjusters are concerned, stating:
>
>> [i]n the context of an insurance claim, it is "[t]he insurer [that] contractually controls the responsibilities of its adjuster and retains the ultimate power to deny coverage or pay a claim. Subjecting adjusters to potential tort liability from insureds could create conflicting loyalties with respect to the adjusters' contractual obligations, given that insureds and insurers often disagree on the context or the amount of damages."
>
> Put more succinctly, "'[c]reating a separate duty from the adjuster to the insured would thrust the adjuster into what could be an irreconcilable conflict between such duty and the adjuster's contractual duty to follow the instructions of its client, the insurer.'"

*Trinity* at ¶ 27 (citations omitted).

25.     More recently, as Holliday points out in her Motion to Dismiss[1] (attached as **EXHIBIT 11**), in *Hightower v. USAA Cas. Ins. Co.*, 16-CV-274-JED-FHM, 2017 WL

---

[1]In further support of this removal, CSAA adopts and incorporates the arguments presented in Holliday's Motion to Dismiss.

1347689 (N.D. Okla. April 7, 2017), the Northern District of Oklahoma ruled that the *Trinity* rationale applied regardless of the professional designation of the third-party hired by the insurer to assist in its investigation.  In that case, the plaintiffs asserted a negligence claim against an insurance appraiser asserting he was "negligent in that he departed from the professionally expected standards of care when he deliberately falsified his final findings to report that the roof damage to [p]laintiffs' home, although clearly caused by the wind, was somehow a result of a pre-existing condition to the home." *Id.* at *1 (internal quotations omitted).  The plaintiffs attempted to distinguish their claim from *Trinity* by pointing out that the third-party was an *appraiser* not an *independent adjuster*. *Id.* at *2.

26.     The Northern District rejected this argument stating:

> the Court agrees with defendant Fulton that it is irrelevant whether he is an insurance appraiser or an insurance adjuster because the reasoning in Trinity Baptist, although it pertained to an independent insurance adjuster, is broadly worded and the same policy concerns are applicable here. Specifically, given the existence of USAA CIC's legal duty to plaintiffs, it would be fundamentally unfair to permit plaintiffs to potentially recover from both defendants USAA CIC and Fulton for defendant Fulton's allegedly negligent conduct. *See Trinity Baptist*, 341 P.3d at 86.

> The Court's conclusion is further supported by the fact that the adjuster in *Trinity Baptist* and defendant Fulton functioned in essentially identical capacities. **Both were third parties retained by insurance companies to assist in the evaluation of an insured's claim. Both were also sued for their conduct in handling the insurance claim.** Specifically, the plaintiff in *Trinity Baptist* alleged the adjuster's "handling and investigation" of the insurance claim was negligent. *Id*. at 78. In this case, plaintiffs allege that defendant Fulton was negligent in his evaluation and reporting of their insurance claim. **Thus, the reasoning supporting the Oklahoma Supreme Court's**

> **conclusion in *Trinity Baptist* applies with equal force to this case. Accordingly, the Court finds that it would be inconsistent with Oklahoma law to impose a duty of care on defendant Fulton**.
>
> Plaintiffs have thus failed to allege a cognizable claim of negligence against defendant Fulton.

*Id.* at *2-3 (emphasis added).

27.     *Trinity* also makes it clear that an insured cannot maintain a cause of action for gross negligence against an independent contractor hired by their insurer in the course of that insurer's investigation and evaluation of the insured's claim:

> The court in *Wallace* repeatedly refers to "simple negligence," noting that it makes little sense to hold an adjuster liable for simple negligence when a greater magnitude of culpability is necessary to hold the insurer itself liable for violation of the duty of good faith and fair dealing. The reason for the *Wallace* court's distinction is this Court's language in *Badillo*, where we stated:
>
> > To the extent *American Fidelity & Casualty Co. v. L.C. Jones Trucking Co.*, 321 P.2d at 687, may have implied that a simple negligence standard was approved or adopted as to the level of culpability necessary to be shown for liability to attach to an insurer for breach of the duty of good faith and fair dealing in relation to the handling of a third-party claim made against the insured, i.e., the situation involved here, that case is expressly overruled, but only to such extent. In our view, under *Christian* and later cases, the minimum level of culpability necessary for liability against an insurer to attach is more than simple negligence, but less than the reckless conduct necessary to sanction a punitive damage award against said insurer. In PART VII, *infra*, we discuss the minimum level of culpability

> necessary to warrant a punitive damage recovery
> against an insurer for breach of the duty of good
> faith and fair dealing.

2005 OK 48, ¶ 28, 121 P.3d 1080.

> Any intense focus on the degree of negligence (Trinity alleges
> gross negligence, the *Wallace* court refers to "simple
> negligence") is misplaced. **Whereas the existence of a legal
> duty is a question of law, the degree of negligence, which can
> be considered the magnitude of the breach of that duty, is a
> question of fact and a separate issue from whether a legal
> duty existed in the first place**. *See Fox v. Oklahoma Memorial
> Hosp.*, 1989 OK 38, ¶ 7, 774 P.2d 459; NMP Corp. v.
> Parametric Technology Corp., 958 F.Supp. 1536, 1546
> (N.D.Okla.1997) ("gross negligence requires the intentional
> failure to perform a manifest duty in reckless disregard of the
> consequences or in callous indifference to the life, liberty, or
> property of another. Thus, **gross negligence is the same as a
> negligence claim, differing only as to the degree.**"); 25
> O.S.2011 § 6 (degrees of negligence defined). At issue on
> appeal in this cause is whether Sooner, as an independent
> insurance adjuster, owed a legal duty to Trinity, the insured, not
> the magnitude of their potential breach of such a duty.

*Trinity* at FN13 (emphasis added).

28.     Plaintiffs have asserted a negligence claim against Holliday.  Plaintiffs' claim

against Holliday arises out of her conduct during the course of CSAA's investigation of

Plaintiffs' claim.  (*See* Petition, ¶¶ 6-7).  But, Plaintiffs have already acknowledged that

Holliday was "hired by CSAA", not Plaintiffs, to assist in CSAA's investigation of Plaintiffs'

earthquake claim. (*See* Petition, ¶ 5, **EXHIBIT 2**.)  As demonstrated by *Trinity* and *Hightower*,

Plaintiffs cannot maintain a valid cause of action against Holliday.  Thus, it is patently

obvious Plaintiffs named Holliday for the sole purpose of defeating diversity jurisdiction.

Accordingly, the Court may disregard the citizenship of Holliday for the purpose of diversity jurisdiction.

CONCLUSION

WHEREFORE, for the foregoing reasons, the Defendant, CSAA Fire & Casualty Insurance Company, submits that this matter should be removed to, and remain in, federal district court, and that Defendant Lisa Holliday should be dismissed, as she was fraudulently joined for the sole purpose of defeating diversity jurisdiction.

Respectfully submitted,


s/ Erin J. Rooney
Gerard F. Pignato, OBA No. 11473
Erin J. Rooney, OBA No. 32107
Jace T. White, OBA No. 32892
PIGNATO, COOPER, KOLKER &ROBERSON, P.C.
Robinson Renaissance Building
119 North Robinson Avenue, 11th Floor
Oklahoma City, Oklahoma  73102
Telephone:   405-606-3333
Facsimile:    405-606-3334
Email: jerry@pclaw.org;
       erin@pclaw.org;
       jace@pclaw.org
ATTORNEYS FOR DEFENDANT,
CSAA FIRE AND CASUALTY INSURANCE
  COMPANY

**CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2017, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

  Steven S. Mansell, Esquire
  Mark A. Engel, Esquire
  Kenneth G. Cole, Esquire
  M. Adam Engel, Esquire
  Michael C. Felty, Esquire
  Matthew K. Felty, Esquire

I hereby certify that on December 4, 2017, I served the same document by U.S. Mail to the following, who are not registered participants in the ECF system:

  Ms. Lori Allen
  Payne County Court Clerk
  Payne County Courthouse
  606 South Husband Street
  Stillwater, Oklahoma 74074

        s/ Erin J. Rooney
        For the Firm