IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

SEAN SMITH and CRYSTAL SMITH,    )
       )
     Plaintiffs,    )
       )
v.        )     Case No.: CIV-17-1302-D
       )
CSAA FIRE AND CASUALTY    )
INSURANCE COMPANY,    )
       )
     Defendant.    )

**DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND SUPPORTING BRIEF**

The Defendant, CSAA Fire and Casualty Insurance Company ("CSAA"), moves this Court, pursuant to Rule 56, FED.R.CIV.P., and LCVR 56.1, to enter summary judgment in favor of this Defendant with respect to Plaintiffs' tortious breach of contract claim, or "bad faith" claim, in the above case. Plaintiffs have asserted two separate claims against CSAA in Plaintiffs' Complaint: breach of contract and bad faith. The present Motion addresses only Plaintiffs' bad faith claim and Plaintiffs' request for punitive damages. The material, undisputed facts set forth by CSAA, as well as the supporting Affidavits attached to this Motion, show there is no genuine dispute as to any material fact and, therefore, CSAA is entitled to judgment as a matter of law.

### FACTUAL BACKGROUND

On August 24, 2017, CSAA received its First Notice of Loss from the Plaintiff, Crystal Smith, stating she may have damage from an earthquake. Crystal Smith attributed the recently discovered damage in her house to an earthquake that occurred nine months earlier, on November 7, 2016. CSAA advised that it would hire an engineer to conduct an inspection of Plaintiffs' home.

CSAA reassigned this claim to senior adjuster, Chad Heckman ("Heckman").  Heckman contacted the Plaintiffs, explained to them the claims process, and set up an inspection with Lisa M. Holliday, P.E., Ph.D. ("Holliday"), who is a senior consultant with Rimkus Consulting Group, Inc. ("Rimkus").  Holliday inspected Plaintiffs' property on September 1, 2017.  She found no earthquake damage, only settlement and construction defects.

On September 18, 2107, Holliday completed her engineering report and forwarded it to CSAA.  The report stated that the November 7, 2016 earthquake did not cause the structural damage to Plaintiffs' residence.  The report further stated that the origin of the observed damages to the floor, ceiling tiles, and driveway slab was from differential foundation movement related to volumetric soil changes and poor construction techniques at the foundation.

On September 19, 2017, Heckman called and spoke with Plaintiffs to discuss the loss and that the damages found were not related to earthquake damage.  That same day, Heckman wrote a letter to Plaintiffs denying coverage and explaining that the damage was determined to be from settling and improper construction to the foundation.

Suit was promptly filed by Plaintiffs against CSAA on November 6, 2017.  Plaintiffs asserted claims against CSAA for breach of contract and bad faith.  CSAA filed its Answer, and asserted, among other defenses, that it acted reasonably in its investigation of Plaintiffs' claim and that a legitimate dispute exists regarding the cause of loss, thus barring Plaintiffs' bad faith claim.

Throughout the course of this lawsuit, Plaintiffs have DEVISED a theory that CSAA's retention of Rimkus constitutes a biased investigation, and therefore evidence of bad faith.  In that regard, Plaintiffs appear to contend that Rimkus is <u>routinely</u> hired by insurance companies, including CSAA, to investigate earthquake claims, and <u>routinely</u> determines that the cause of loss is something other than earthquake.  Said differently, Plaintiffs contend CSAA hires Rimkus

to investigate earthquake claims, and pays Rimkus large amounts of money, to report that the damage in question is not earthquake related.  The facts of this case will show that Heckman chose Rimkus through a random selection process and that he had never used Rimkus prior to Plaintiffs' claim.  The facts will also show that CSAA had never used Holliday to investigate any of their claims prior to Plaintiffs' claim.  Such a contention by Plaintiffs has no merit, but will nevertheless be addressed in this brief.

The present Motion for Partial Summary Judgment addresses Plaintiffs' bad faith and punitive damages claims, only.  There are no facts from which any rational fact-finder could conclude that with respect to Plaintiffs' earthquake claim, CSAA acted in bad faith, much less that CSAA's actions could warrant punitive damages.

## STATEMENT OF MATERIAL, UNDISPUTED FACTS

1.      CSAA Fire and Casualty Company, formerly AAA Fire and Casualty Company (hereafter "CSAA"), issued a homeowner's insurance policy to Sean Smith and Crystal Smith at their address of 314 E. 8th St., Cushing, Oklahoma 74023-4804, Policy No. HO3-003036315, for the policy period February 17, 2016 to Febraury 17, 2017 (hereafter the "Policy").  (CSAA Declarations Page, **EXHIBIT 1**.)

2.      Under the Policy, CSAA insures against risk of direct physical loss to property caused as a result of earthquake.   (Policy Endorsement, p. 1 [Bates CSAA_SMITH 0202], **EXHIBIT 1**).

3.      The Policy recognizes the following relevant exclusions:

**SECTION I – PERILS INSURED AGAINST**

**A. Coverage A – Dwelling And Coverage B – Other Structures**

1.   We insure against risk of direct physical loss to property described in Coverages A and B.

2.   We do not insure, however, for loss:

a. Excluded under Section I – Exclusions;
c. Caused by:

\*\*\*

(6) Any of the following:
(a) Wear and tear, marring, deterioration;

\*\*\*

(f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

**SECTION 1 – EXCLUSIONS**

B.  We do not insure for loss to property described in Coverages A and B caused by any of the following.  However, and ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

\*\*\*

3.  Faulty, inadequate or defective:

a.  Planning, zoning, development, surveying, siting;

b.  Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

c.  Materials used in repair, construction, renovation or remodeling; or

d.  Maintenance.

of part of all or any property whether on or off the "residence premises".

(Policy, p. 34 [Bates CSAA_SMITH 0174 ], **EXHIBIT 1**).

4.    On August 24, 2017, Plaintiff, Crystal Smith, called CSAA and provided Plaintiffs' first Notice of Loss, claiming damage to their home from an earthquake that occurred nine (9) months earlier on November 7, 2016. (Claim Notes, p. 8, **EXHIBIT** 2; Depo. of C. Smith, pp. 112, 114, **EXHIBIT** 3).

5.      During that initial Notice of Loss, Crystal Smith advised CSAA that at the time of the earthquake some ceiling tiles fell in their northeast corner bedroom, power was lost in their home, and some items in the home shifted. (Claim Notes, p. 8, **EXHIBIT** 2; Depo. of C. Smith, pp. 114, 115, 122, **EXHIBIT** 3).

6.      During that initial Notice of Loss, CSAA advised Plaintiffs that it would need to dispatch an engineer to inspect the property before CSAA could either confirm or deny coverage until after the engineering inspection.  Crystal Smith understood the need for an engineering inspection of their home before Plaintiffs' claim could be resolved. (Claim Notes, p. 8, **EXHIBIT** 2; Depo. of C. Smith, p. 124, **EXHIBIT** 3).

7.      Plaintiffs delayed notifying CSAA about their alleged damage from the earthquake for 9 months because they did not know if they had enough money to cover the insurance deductible and because Plaintiffs did not believe the damage to their home was extensive at that time. (Claim Notes, p. 8, **EXHIBIT** 2; and Depo. of C. Smith, p. 44, **EXHIBIT** 3).

8.      Plaintiffs' deductible for earthquake coverage was $6,071.05. (Claim Notes, p. 6, **EXHIBIT** 2).

9.      The Policy recognizes the following exclusion:

**SECTION 1 – CONDITIONS**

B.  Duties after Loss
In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us.   These duties must be performed either by you, an a"insured" seeking coverage, or a representative of either:

1.  Give prompt notice to us or our agent.

(Policy, p. 34 [Bates CSAA_SMITH 0174 ], **EXHIBIT 1**).

10.     Crystal Smith agrees it is important to promptly notify the insurance company of a potential claim. (Depo. of C. Smith, pp. 33, 34, **EXHIBIT** 3).

11.     Crystal Smith understands the importance of prompt notification with regards to evidence on a claim. (Depo. of C. Smith, p. 34, **EXHIBIT** 3).

12.     Crystal Smith agrees that evidence can disappear or change over time. (Depo. of C. Smith, p. 34, **EXHIBIT** 3).

13.     Crystal Smith understands that memories can fade over time. (Depo. of C. Smith, p. 34, **EXHIBIT** 3).

14.     Crystal Smith understands that conditions can change. (Depo. of C. Smith, p. 34, **EXHIBIT** 3).

15.     Crystal Smith agrees that Plaintiffs did not give prompt notice to CSAA of their earthquake claim. (Depo. of C. Smith, p. 168, **EXHIBIT** 3).

16.     Plaintiffs did not take any photos or video of the alleged damage to their home prior to cleaning up after the earthquake. Depo. of C. Smith, pp. 114, 115, 122, **EXHIBIT** 3).

17.     Plaintiffs do not remember taking any photos or videos of the alleged damage to their home prior to hiring their attorneys in this lawsuit. (Depo. of C. Smith, p. 44, **EXHIBIT** 3).

18.     On August 28, 2017, CSAA assigned senior adjuster, Heckman, to handle Plaintiffs' claim because it was an earthquake claim. (Claim Notes, p. 7, **EXHIBIT** 2).

19.     On August 28, 2017, Heckman called Plaintiffs to introduce himself, explain the claims process and set up an engineer to inspect their home. (Claim Notes, p. 6, **EXHIBIT** 2).

20.      On August 28, 2017, Heckman contacted Rimkus to set up an earthquake loss so that Rimkus could assign an engineer to inspect Plaintiffs' home. (Claim Notes, p. 6, **EXHIBIT** 2).

21.     The decision by Heckman to use Rimkus on Plaintiffs' claim was based upon a random selection by him from a list maintained by CSAA that contained different engineering companies within Oklahoma. (Depo. of Heckman, p, 163, **EXHIBIT** 4).

22.     CSAA goes down the list of different engineering companies and uses the next available one so that they are continuously using different engineering companies as opposed to the same one repeatedly. (Depo. of Heckman, p, 163, **EXHIBIT** 4).

23.     Prior to Plaintiffs' claim, Heckman had never used Rimkus before to investigate one of its claims. (Depo. of Heckman, pp, 162, 163, **EXHIBIT** 4).

24.     The only information Heckman provided CSAA was the CSAA claim number, Plaintiffs' name, address and contact information, and that the claim was related to an earthquake. (Depo. of Heckman, p, 167, **EXHIBIT** 4).

25.     Rimkus assigned Holliday as the engineer to inspect Plaintiffs' home. (Depo. of Heckman, pp, 167, 168, **EXHIBIT** 4).

26.     Heckman did not specifically request Holliday to inspect Plaintiffs' home as Rimkus made that selection. (Depo. of Heckman, p, 167, **EXHIBIT** 4).

27.     Holliday received her BS in Civil Engineering in 1995 and her PhD in 2009 from the University of Oklahoma specializing in structures during her BS and further specializing in earthquake engineering during her PhD. (Holliday Report of Findings, [Bates HOLLIDAY/RCG 000069] **EXHIBIT** 5).

28.     Holliday began working at Rimkus in August 2017. (Depo. of Holliday, pp, 27, 28, **EXHIBIT** 6).

29.     Prior to starting work with Rimkus, Holliday worked as a professor at the University of Oklahoma College of Architecture between 2010 to May 15, 2018. (Holliday Report of Findings, [Bates HOLLIDAY/RCG 000069] **EXHIBIT** 5).

30.     On September 1, 2017, Holliday inspected Plaintiffs' home to determine the cause of the structural damage, if any, and whether it was related to the November 7, 2016 earthquake. (Holliday Report of Findings, [Bates HOLLIDAY/RCG 000042] **EXHIBIT** 5).

31.     During the September 1, 2017 inspection, Holliday interviewed Crystal Smith and was informed by her that the house was constructed in 1920, and that during the earthquake the house shook, things fell off the shelves and broke, pictures fell off the wall, and the front door would not close resulting in the front door having to be replaced. (Holliday Report of Findings, [Bates HOLLIDAY/RCG 000044] **EXHIBIT** 5).

32.     On September 5, 2017, Heckman called and left a voice message with Plaintiffs that he was waiting for the engineer report to be completed and submitted to him. (Claim Notes, p. 5, **EXHIBIT** 2).

33.     On September 11, 2017, Crystal Smith called Heckman wanting to know the status of the claim.  Heckman explained to her that CSAA was still waiting on the engineer report to be provided and that he would follow-up with her once it has been received by him. (Claim Notes, p. 4, **EXHIBIT** 2).

34.     On September 14, 2017, Heckman received an email from Holliday providing that her engineer report would be finished in the next couple of days. (Claim Notes, p. 4, **EXHIBIT** 2).

35.     On September 18, 2017, Heckman received Holliday's Report of Findings. (Claim Notes, p. 3, **EXHIBIT** 2).

36.     Holliday concluded that the November 7, 2017 earthquake did not cause structural damage to Plaintiffs' home and that the origin of the damage to Plaintiffs' home was from: (1) differential foundation movement related to volumetric soil changes from soil moisture variations over time; and (2) poor construction techniques found at the foundation. (Holliday Report of Findings, [Bates HOLLIDAY/RCG 000043] **EXHIBIT** 5).

37.     On September 19, 2017, Heckman called Plaintiffs to discuss the loss and that the damages found were not related to earthquake damage. (Claim Notes, p. 3, **EXHIBIT** 2).

38.     On September 19, 2017, CSAA wrote to Plaintiffs and explained its coverage

position. (September 19, 2017 CSAA Letter, **EXHIBIT** 7).

39.     On November 6, 2017, Plaintiffs filed the present lawsuit, asserting claims against CSAA for breach of contract and bad faith. (Plaintiffs' Petition [DOC No. 1-2]).

40.     In CSAA's Answer, CSAA has raised the defense that its investigation of Plaintiffs' earthquake claim was reasonable, and that a legitimate dispute exists as to the cause of the damage to Plaintiffs' home, thus barring Plaintiffs' bad faith claim. (CSAA's Answer [DOC No. 7 ]).

41.     On April 20, 2018 and on behalf of CSAA, Steve Ford, P.E., Ph.D. ("Ford"), a structural engineering expert witness, conducted an on-site investigation of Plaintiffs' home to determine if existing damage was caused by the November 7, 2017 earthquake. (Ford Report, p. 1, **EXHIBIT** 8).

42.     Ford concluded that the November 7, 2017 earthquake did not cause structural damage to Plaintiffs' home. (Ford Report, p. 1, **EXHIBIT** 8).

43.     Ford also concluded that there are a number of structurally significant issues that exist in Plaintiffs' home; however, none of them were due to seismic activity. (Ford Report, p. 2, **EXHIBIT** 8).

44.     Steve Ford opined that the structural issues at Plaintiffs' home are due to:

1.     Poor drainage around and under the house;

2.     a lack of an appropriate foundation around the perimeter of the northeast addition;

3.     long-term water penetration into wood members that has resulted in rotted wood in the carport structure, the windowsills, and in the sill plate for the walls of the northeast addition, and

4.     a lack of a dowelled connection between the original patio slab and new strip of slab that was used to increase the size of the northeast addition beyond the size of the original patio.

(Ford Report, p. 2, **EXHIBIT** 8).

45.     Ford does not know Holliday and has never met her. (Depo. of Ford, p, 130, **EXHIBIT** 9).

46.     Ford has reviewed Holliday's Report of Findings. (Depo. of Ford, p, 71, **EXHIBIT** 9).

47.     Ford has reviewed Holliday's deposition transcript. (Depo. of Ford, p, 72, **EXHIBIT** 9).

48.     Ford has reviewed both of Plaintiffs' deposition transcripts. (Depo. of Ford, p, 72, **EXHIBIT** 9).

49.     Ford believes Holliday was qualified to investigate Plaintiffs' claim. (Depo. of Ford, pp, 148, 149, **EXHIBIT** 9).

50.     Ford believes Holliday did a sufficient inspection of Plaintiffs' home. (Depo. of Ford, p, 129, **EXHIBIT** 9).

51.     Ford believes Holliday was thorough during her investigation. (Depo. of Ford, p, 149, **EXHIBIT** 9).

52.     Ford believes Holliday's investigation of Plaintiffs' home was detailed enough to determine the cause of damage in Plaintiffs' claim. (Depo. of Ford, p, 149, **EXHIBIT** 9).

53.     Ford believes Holliday conducted an appropriate level of investigation and he certainly agreed with her conclusions that the damage to Plaintiffs' home was not caused by the November 7, 2016 earthquake. (Depo. of Ford, p, 130, **EXHIBIT** 9).

54.     On August 21, 2018 and on behalf of CSAA, Cindi Miles ("Miles"), a claims handling expert witness, reviewed Plaintiffs' Petition, the CSAA claim file for Plaintiffs, Plaintiffs' Policy Declaration, Plaintiffs' Homeowner's Policy and Earthquake Endorsement, Holliday's Report of Findings, Holliday's deposition transcript, and Plaintiffs' discovery

responses. (Miles Report, p. 2, **EXHIBIT** 10).

54.     Miles believes the timeline in the handling of this claim was appropriate as the total time elapsed form the First Notice of Loss through the conclusion with the denial letter was a total of 26 days. During that time, contact with the insured was timely and informative of the claim status. (Miles Report, p. 4, **EXHIBIT** 10).

55.     Miles believes the referral by CSAA to an Engineering firm such as Rimkus was appropriate and timely as it is a common practice in the insurance industry to enlist the services of a Structural Engineer on homes claiming earthquake damage. (Miles Report, p. 4, **EXHIBIT** 10).

56.     Miles noted that Holliday's Report of Findings included soil reports, identified Magnitude (energy released) and Mercalli Intensity documentation to explain her findings. (Miles Report, p. 4, **EXHIBIT** 10).

57.     Miles noted that Holliday was particularly qualified in assessing earthquake damage as she has more actual earthquake experience than the average structural engineer in the state of Oklahoma. (Miles Report, p. 4, **EXHIBIT** 10).

58.     Miles believes it was appropriate for CSAA to rely on Holliday's Report of Findings for its denial of Plaintiffs' claim. (Miles Report, p. 5, **EXHIBIT** 10).

59.     Holliday understands the importance of her reporting now that she does forensic investigations, and her focus is solely on the engineering and she is not concerned with the insurance handling side of the investigation. (Depo. of Holliday, pp, 78, 79, **EXHIBIT** 6).

60.     Holliday makes engineering decisions and not insurance policy decisions based upon fair engineering assessments. (Depo. of Holliday, pp, 245, 246, **EXHIBIT** 6).

ARGUMENTS AND AUTHORITIES

**PROPOSITION I:   SUMMARY JUDGMENT STANDARD**

Summary judgment is warranted where "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party opposing a motion for summary judgment must offer evidence of specific facts, in admissible form, sufficient to raise "a genuine issue of material fact."  *See, Anderson v. Liberty Lobby*, 477 U.S. 242 (1986).  Conclusory allegations or denials do not suffice.  *See, Id.* at 248.  Moreover, opposition to summary judgment "must be based on more than mere speculation, conjecture, or surmise. Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007).  Here, the undisputed material facts foreclose Plaintiffs' claims for bad faith and punitive damages as a matter of law.  The Court should grant summary judgment.

**PROPOSITION II:  THE UNDISPUTED FACTS DEMONSTRATE, AS A MATTER OF LAW, THAT CSAA'S INVESTIGATION OF PLAINTIFFS' EARTHQUAKE CLAIM WAS REASONABLE.**

Plaintiffs' bad faith claim is based on CSAA's denial of their earthquake claim, which was submitted to CSAA approximately nine months after the suspect earthquake.  In order to prevail on the present Motion for Partial Summary Judgment, CSAA merely has to show that its investigation and denial were *reasonable*.  It does not have to be correct.  It has a good faith right to be wrong.  The undisputed facts demonstrate, as a matter of law, that Plaintiffs are unable to establish any unreasonable conduct or bad faith, on the part of CSAA.

The parties disagree on the cause of the damage to Plaintiffs' home at issue.  Prior to the filing of this lawsuit, Plaintiffs did not indicate what it might cost to repair and/or replace their

home, and Plaintiffs did not endorse an expert to address this issue, either.[1]  CSAA believes its handling of Plaintiffs' earthquake claim was proper in all respects, that Rimkus did not conduct a biased investigation, that CSAA's reliance on the Rimkus report was reasonable, and therefore, CSAA's action with respect to this claim was reasonable.  CSAA asserts the disagreement between it and Plaintiffs constitutes a legitimate dispute, thus barring Plaintiffs' bad faith claim. This defense is recognized under Oklahoma law, and CSAA raised this defense in its Answer filed in this case.

The Oklahoma Supreme Court first recognized the tort of bad faith in *Christian v. American Home Assur. Co*., 522 P.2d 899 (Okla. 1977).  "[A]n insurer has an implied duty to deal fairly and act in good faith with its insured and . . . the violation of this duty gives rise to an action in tort." *Id*. at 904.  The duty of good faith does not require an insurer to pay every claim made by an insured.

> We recognize that there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, <u>cause of loss</u>, <u>amount of loss</u>, or breach of policy conditions.  Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit. Rather, tort liability may be imposed only where there is a clear showing that the insurer <u>unreasonably</u>, <u>and in bad faith</u>, withholds payment of the claim of its insured.

(Underline emphasis added.) *Id.* at 905.  Thus, an insurer's delay in tendering payment must be <u>unreasonable</u> in order to be actionable.  *See also, Badillo v. Mid Century Ins. Co.,* 2005 OK 48 ¶ 28, 121 P.3d 1080, 1093 ("[t]he essence of an action for breach of the duty of good faith and fair dealing 'is the insurer's <u>unreasonable</u>, bad-faith conduct'"); *Skinner v. John Deere Ins. Co.*, 2000

---

[1]    Defendant did identify such an expert, however, in David Battles.  Plaintiffs then endorsed a rebuttal expert.  CSAA filed a Motion to Strike Plaintiffs' rebuttal expert, and this Court ruled that Plaintiffs were allowed to call a rebuttal expert solely to rebut the testimony of Mr. Battle.  CSAA has since made the decision not to call Mr. Battle to testify as an expert at trial regarding the cost of repair and/or replacement.  Thus, this issue will not be addressed at trial.

OK 18, ¶ 17, 998 P.2d 1219, 1223 (recognizing that insurer "acted <u>reasonably</u> as a matter of law and, thus, summary judgment was proper"); *Navarez v. State Farm Mut. Auto. Ins. Co.,* 1999 OK CIV APP 92 ¶13, 989 P.2d 1051, 1053 (citing *McCorkle v. Great Atlantic Insurance Co.*, 1981 OK 128, 637 P.2d 583) ("The essence of the tort of bad faith, as it is recognized in Oklahoma, is the <u>unreasonableness</u> of the insurer's actions").

    *Badillo* also clarified that "bad faith" requires a showing of "more than simple negligence." *Badillo* at 1094. This point was recently reiterated by the Oklahoma Supreme Court when it held that "a party prosecuting a claim of bad faith carries the burden of proof and must plead all of the elements of an <u>intentional</u> tort." *Garnett v. Government Employees Ins. Co.*, 186 P.3d 935, 944 (Okla. 2008) (Emphasis added). The Court in *Garnett* also recited:

> The essence of the (intentional) tort is the <u>unreasonable, bad faith</u> conduct of the insurer. A central issue is whether the insurer had a good faith belief in some justifiable reason for the actions it took or omitted to take that are alleged to be violative of the duty of good faith and fair dealing. Before the issue of an insurer's alleged bad faith may be submitted to the jury, the trial court must first determine as a matter of law, under the facts most favorably construed against the insurer, whether the insurer's conduct may be <u>reasonably</u> perceived as tortious. <u>It is not a breach of the duty of good faith for an insurer to resort to a judicial forum to settle legitimate disputes as to the validity or amount of an insurance claim.</u>

*Id.* at 944. The Oklahoma Supreme Court affirmed the trial court's grant of summary judgment to GEICO because GEICO's handling of the claim was *reasonable*.

    Thus, in evaluating an insurer's conduct in light of an allegation of bad faith, the Court may consider both the <u>reasonableness</u> of the conduct of the insurer in light of existing Oklahoma law at the time of the conduct, and the <u>reasonableness</u> of the insurer's conduct in light of the facts that are known or knowable to the insurer. *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 612-13 (10th Cir. 1994) (applying Oklahoma law). Said differently, the action of the company "must be assessed in light of all of the facts known and knowable concerning the claim at the

time the plaintiff requested the company to perform its contractual obligation." *Buzzard v. McDanel*, 1987 OK 28, 736 P.2d 157, 159.

As stated above, The Oklahoma Supreme Court has made the point that bad faith is an intentional tort. To succeed on such a theory, the insured's claims must be predicated upon a clear showing that the insurer's conduct was not only unreasonable, but was also motivated by bad faith. *Lewis v. Farmers Ins. Co., Inc.*, 681 P.2d 67 (Okla. 1983). Thus, to prove a *prima facie* case of bad faith against CSAA, Plaintiffs must establish more than just a mistake or negligence. Instead, Plaintiffs must come forward with evidence from which a reasonable jury could conclude that CSAA was *motivated by bad faith*. Plaintiffs cannot meet their burden of proof in this case, and accordingly, summary judgment must be granted in favor of CSAA with respect to Plaintiffs' bad faith claim.

In an effort to prove CSAA's investigation of Plaintiffs' earthquake claim was unreasonable, Plaintiffs have attacked Rimkus and have erroneously alleged that Rimkus is biased, that CSAA knows that Rimkus is biased, and that CSAA purposely uses Rimkus to investigate earthquake claims in Oklahoma, knowing that Rimkus will determine the damage in question is not earthquake related. Rimkus' structural engineer, Holliday, is highly qualified and credentialed. Her Ph.D. dissertation while at the University of Oklahoma ("OU") addressed earthquakes and the seismic vulnerabilities of residential structures. She served as a professor at OU for more than eight (8) years before joining Rimkus fulltime. Ford, who is a structural engineer expert witness also holding a Ph.D., testified that Holliday was more than qualified to determine the cause of damage at Plaintiffs' home. Miles, who is a claims handling expert witness, echoed Ford's opinion regarding Holliday's credentials relating to investigating an earthquake related claim and opines that it was appropriate for CSAA to rely on Holliday's Report of Findings in denying Plaintiffs' claim.

The facts against Plaintiffs' theory that CSAA's retention of Rimkus constitutes a biased investigation, and therefore evidence of bad faith, could not be much worse for Plaintiffs. Prior to Plaintiffs' claim, Heckman had never used Rimkus. Heckman testified that the selection of Rimkus was purely random on his part and Rimkus was only selected because they were the next engineering firm on the list. Rimkus selected Holliday to inspect Plaintiffs' home, not CSAA. Holliday is an expert on damage caused by earthquakes to residential structures having written her Ph.D. dissertation on that subject. Holliday's inspection of Plaintiffs' home was her first earthquake inspection for CSAA, and she is not concerned with the business relationship between Rimkus and CSAA as it relates to preparing an engineering report. Holliday did not deny this claim or make any other decisions regarding this claim. It was Heckman with CSAA who denied Plaintiffs' claim.

This lawsuit should not be about Rimkus. Plaintiffs are trying hard to make this lawsuit about Rimkus and trying to survive the present Motion for Partial Summary Judgment by use of this smokescreen. CSAA uses multiple structural engineering firms when necessary and simply goes down the list each time a structural engineer is needed so as to avoid any allegation of impropriety or bias. Rimkus is one of several structural engineering firms that have met the strict criteria of CSAA and they were chosen on this claim at random by Heckman.

In order to defeat Plaintiffs' bad faith claim, CSAA has to demonstrate that its investigation of Plaintiffs' earthquake claim was *reasonable*, not perfect. *Roberts v. State Farm Mut. Auto*, 61 Fed.Appx. 587, 592, 2003 WL 1559155, at *4 (10th Cir. Mar. 26, 2003) (citing *Buzzard at* 1109, *supra.*). The uncontroverted material facts support CSAA's defense of reasonableness investigation.

**PROPOSITION III: PLAINTIFFS' PUNITIVE DAMAGE CLAIM FAILS AS THE UNDISPUTED FACTS LACK EVIDENCE OF "RECKLESS DISREGARD."**

In the event Plaintiffs' bad faith claim survives summary judgment, this Court should still grant judgment in CSAA's favor on Plaintiffs' claim for punitive damages because there is no evidence CSAA acted with "reckless disregard" in its handling of Plaintiffs' earthquake claim. Whether an award of punitive damages is permissible is a question of law for the trial court in the first instance and the issue of punitive damages may not be submitted to the jury unless sufficiently supported by the evidence. *Frank v. Mayberry*, 1999 OK 63, 985 P.2d 773, 777 ("The issue of whether the record contains enough evidence to justify a punitive damages award is a question of law."); *Sides v. John Cordes, Inc.*, 1999 OK 36, 981 P.2d 301, 305 ("These threshold rulings [on punitive damages] present issues of law for the trial judge."); *Rodebush by and through Rodebush v. Oklahoma Nursing Homes, Ltd.*, 1993 OK 160, 867 P.2d 1241, 1250 (Oklahoma's punitive damages statute "requires a preliminary determination before the question can even be considered by the jury.").

A jury may not award punitive damages unless it finds by clear and convincing evidence that "an insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured." 23 O.S. § 9.1(B)(2). Upon such a finding, the jury may only award punitive damages in an amount not to exceed the greater of $100,000 or the amount of actual damages awarded. *Id.* If a jury finds by clear and convincing evidence that "an insurer intentionally and with malice breached its duty to deal fairly and act in good faith with its insured, the jury may award punitive damages either (1) not to exceed the greatest $500,000, (2) twice the amount of actual damages awarded, or (3) "the increased financial benefit to the insurer directly from the conduct causing the injury to the plaintiff and other persons or entities." 23 O.S. § 9.1(C)(2).

As recognized by the court in *Buzzard* at 1115, *supra*. and *Badillo v. Mid-Century Ins. Co., supra*.  "The availability of a punitive damage award in a bad faith case is not automatic, but rather, is governed by the standard applicable in other tort cases."  The fact that Section 9.1 specifically references insurers does not change this rule. *Badillo* at 1106.  Further, even if the evidence is sufficient to justify submission of the bad faith claim to the jury, it is not necessarily sufficient to submit the punitive damages claim because the proof necessary to establish the "reckless disregard" justifying a punitive damage award is greater than the proof required to establish bad faith.  *Id.*

According to the Oklahoma Uniform Jury Instructions, the conduct is in reckless disregard of another's rights if the actor "was either aware or did not care that there was a substantial and unnecessary risk that its conduct would cause serious injury" to others.  OUJI-CIV-3d 22.5.  There must have been a high probability that the conduct would cause serious harm to another person.  *Id.*

The record set forth above cannot support a conclusion that CSAA's investigation and handling of Plaintiffs' earthquake claim posed a "substantial unnecessary risk" of "serious injury" to Plaintiffs, let alone that CSAA was aware of or indifferent to such risks.  The undisputed facts show no evidence of reckless disregard of Plaintiffs' rights from which malice or evil intent may be inferred.  Therefore, summary judgment should be entered in favor of CSAA on Plaintiffs' punitive damage claim.

**PROPOSITION IV: EVIDENCE OF ENGINEERING REPORTS FROM OTHER CLAIMS NOT INVOLVED IN THIS LAWSUIT CANNOT BE INTRODUCED AS EVIDENCE OF BAD FAITH.**

CSAA retained Rimkus to evaluate Plaintiffs' home, and to determine the cause of structural damage, if any, and whether that damage was related to seismic activity that occurred on November 7, 2016.  Rimkus assigned Holliday as the structural engineer to conduct that

inspection.  CSAA anticipates that Plaintiffs will argue that CSAA's use of Rimkus is evidence of bad faith.   The basis of the claim will likely be that CSAA has retained Rimkus for engineering work in other claims (claims that have nothing to do with these Plaintiffs or this lawsuit), and that CSAA denied those other claims based on Rimkus reports that determined the claimed damage was not caused by an earthquake.   The implication is that, because Rimkus found that the damage in the other claims was not earthquake-related, CSAA selected Rimkus on the present claim expecting the same result.  This is untrue and unproven.  This Court should not consider evidence of any engineering reports for any claims other than the one at issue in this lawsuit.

### A.    Evidence of Other Rimkus Reports is Irrelevant to Plaintiffs' Bad Faith Claim

"The threshold inquiry in any dispute over the admissibility of evidence is whether the evidence is relevant."  *Black v. M & W Gear Co.*, 269 F.3d 1220, 1227 (10th Cir. (Okla.) 2001) (citing *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 777 (10th Cir. 1999)).   The determination of whether the subject evidence is relevant rests in this Court's sound discretion. *See, e.g., Greenberg v. Service Business Forms Industries, Inc.*, 882 F.2d 1538, 1543 (10th Cir. (Okla.) 1989).  "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401. "The term 'relevant' is frequently made to appear more complex than it really is. It simply means that which has a *tendency* to prove a proposition if that proposition has probative value as to an issue in the case." *Birdsell v. Birdsell*, 1983 OK CIV APP 41, 671 P.2d 80, 82 (emphasis in the original).

The only proposition that has probative value for Plaintiffs' bad faith claim is whether CSAA dealt fairly and acted in good faith with Plaintiffs. *Christian v. Am. Home Assur. Co.*, 1977 OK 141, 577 P.2d 899, 904.  The relevant inquiry in a bad faith claim is, "<u>under the facts of</u>

<u>the particular case</u> and as a matter of law, whether insurer's conduct may be reasonably perceived as tortious." *City Nat'l Bank and Trust Co. v. Jackson Nat'l Life Ins.*, 1990 OK CIV APP 89, ¶ 18, 804 P.2d 463, 468-69 (emphasis added). The insurer's conduct in other, unrelated claims, is not relevant to the determination of whether the insurer's conduct may be perceived as tortious in the present case.

The Rimkus reports in other cases have no possible relevance to any element Plaintiffs must prove for a bad faith claim. The fact that CSAA has received reports from Rimkus in other cases does not make it any more or less likely that CSAA breached its duty of good faith and fair dealing to Plaintiffs in this case. The other reports have nothing to do with CSAA's dealings with Plaintiffs. Moreover, the investigative facts contained within the other reports are separate and specific to those claims. Only the facts of this particular case and this particular engineering investigation are relevant. CSAA's conduct in other claims has no bearing on whether CSAA's conduct in this case could reasonably be perceived as tortious. Therefore, evidence about other Rimkus reports in other claims that has nothing to do with Plaintiffs or this lawsuit is irrelevant.

**B.      Even if the Other Rimkus Reports are Relevant, Their Probative Value is Substantially Outweighed by Unfair Prejudice, Confusion of the Issues, Misleading the Jury, and Undue Delay**

Even relevant evidence may be excluded if the probative value is substantially outweighed by the "the danger of unfair prejudice, confusion of the issues, misleading the jury, [or] undue delay." Rule 403. Plaintiffs may argue that the other reports are relevant to show bias, or to establish a pattern of denials as a result of Rimkus reports. However, there is no pattern. Each claim denial is fact specific. Additionally, there is no evidence that Rimkus reached improper conclusions in any of their reports on other claims. If Rimkus's conclusions in the other claims were correct, Rimkus cannot be said to be biased. However, CSAA would be required to conduct a mini-trial for each report in order to prove that Rimkus's conclusions were

correct. This would necessitate introduction of evidence on the type of house, type of claim, location of house, time and location of the earthquake, prior damage, strength of earthquake, unrelated damage, claimed damage, reason for denial, and so on *for every single claim Rimkus completed a report for*.

Not only would CSAA be required to justify why it relied on Rimkus's findings in this case, but also would be required to defend itself for relying on Rimkus in each of the other claims. Requiring the jury to hear multiple mini trials to determine whether Rimkus correctly concluded that different types of damage on different types of structures were caused by things other than earthquakes would confuse the issues for the jury. It would also result in a considerable use of this Court's time and resources, all to establish whether Rimkus is biased in this case. Therefore, even if the reports are relevant to show bias, they should be excluded because the probative value of the reports is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and undue delay. Rule 403.

Plaintiffs' introduction of other Rimkus reports would be analogous to CSAA's introduction into evidence that Plaintiffs' counsel has filed the same Petitions in dozens of cases against insurers alleging substantially the same things Plaintiffs have alleged against CSAA in this case. If CSAA did so, the jurors may conclude that Plaintiffs' counsel asserts the same allegations against insurers regardless of the merits of each lawsuit. Plaintiffs' counsel would then likely feel compelled to defend why each allegation was made in each case. Just as information about other lawsuits filed by Plaintiffs' counsel is irrelevant and prejudicial, so is evidence of reports from Rimkus on claims that have nothing to do with this lawsuit.

Allowing Plaintiffs to introduce evidence of CSAA's use of Rimkus reports or opinions in other, unrelated claims, would be unfairly prejudicial. Not only are the reports irrelevant, but introduction of them would require CSAA to defend itself in numerous mini-trials in order to

justify its use of Rimkus opinions on other claims. None of the other claims are the same as this claim. The structures are different, the damages are different, the causes of the damage are different, the earthquakes are different, the locations are different, and so on. The reports are irrelevant to Plaintiffs' bad faith claims, and introduction of the reports will confuse the issues for the jury, and require CSAA to defend itself in multiple mini trials, which is unfairly prejudicial. For these reasons, evidence about the other Rimkus reports should not be admissible at trial, and therefore this Court should not consider such evidence in conjunction with CSAA's Motion for Summary Judgment.

### C.    Evidence of Other Reports Is Inadmissible Evidence of Unrelated Conduct

It is well established that evidence of "other wrongs" or "other acts" is generally inadmissible to prove that a party behaved in a particular way on a particular occasion. Rule 404 (b). The Rule provides, in pertinent part:

> Evidence of other. . . wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. *Id.*

In the criminal context, for evidence of prior acts to be admissible under "common scheme or plan" exception to the rule prohibiting the admission of other crimes evidence, the relatedness of the crimes must be so great that it overcomes the prejudicial nature of other crimes evidence. *Owens v. State*, 2010 OK CR 1, 229 P.3d 1261. The same principle applies in the civil context: for other acts to be admissible under the "common scheme or plan" exception, the similarity of the acts must be so great that it overcomes the prejudicial nature of other "bad acts" evidence. "[T]he evidence of prior bad acts is admissible only if (1) it is relevant under FED.R.EVID. 401; (2) the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice under FED.R.EVID. 403; and (3) the district court, upon request, instructs the jury to consider the evidence only for the purpose for which it was admitted." *Wilson v. Muckala*, 303

F.3d 1207, 1217 (10th Cir. 2002).

Plaintiffs' main purpose for introducing Rimkus reports which were relied upon, at least in part, to deny other, unrelated claims, would be to prove that CSAA acted in conformity in this case, and selected Rimkus with the expectation that Rimkus would generate a report that would allow CSAA to deny this claim. This is improper evidence of other acts. CSAA denies that its use of Rimkus is a "bad act," but is including this proposition in the event that: a) the Court determines the other reports are relevant; b) the Court determines that the probative value of the other reports is not substantially outweighed by unfair prejudice and confusion of the issues; and c) CSAA is prohibited from proving to the jury through mini trials that the Rimkus reports were correct in every claim.

Admission of evidence of other claim denials using other Rimkus reports would create a substantial risk that the jury might punish CSAA for behavior that has no relationship to the issues in this case. Additionally, Rimkus' opinions and CSAA's claim denials in other claims are not similar, especially not so similar that the value outweighs the prejudicial nature of other acts evidence. The claims involve different earthquakes, locations, damages, causes of damages, time, etc.   The probative value of the other reports is substantially outweighed by unfair prejudice and confusion of the issues.   Thus, evidence about other Rimkus reports in other claims, as well as CSAA's denial of those claims, must be excluded as "bad act" evidence.

**D.      If This Court Determines That the Other Reports are Admissible, Only Those Reports CSAA Had at the Time Performance Was Requested in This Case are Relevant**

Whether the insurer "had a good faith belief, <u>at the time its performance was requested</u>, that it had a justifiable reason for withholding payment under the policy" is the relevant inquiry in determining whether an insurer has breached the duty of good faith and fair dealing. *Buzzard* at  159, *supra*. (emphasis added); see also *Porter v. Oklahoma Farm Bureau Mut. Ins. Co.*, 2014

OK 50, ¶23, 330 P.3d 511, 518. If this Court determines that the reports are relevant, and that requiring CSAA to conduct mini trials to prove that the other reports were correct is not unfairly prejudicial, and that the probative value of the other reports is not substantially outweighed by the risk of confusion of the issues, then only those reports from Rimkus that CSAA had at the time performance was requested should be considered by this Court for purposes of the present motion, and even then only those reports prepared by Holliday prior to Plaintiffs' claim should be considered.  Those reports alone cannot establish that CSAA knew or should have known that Holliday would determine that an earthquake did not cause the damage to Plaintiffs' home. Therefore, those Rimkus reports cannot be used as evidence in support of Plaintiffs' bad faith claim.

### E.      Evidence of Other Reports is Inadmissible Hearsay

Evidence of any other Rimkus reports from other claims constitute inadmissible hearsay if the authors of those reports, as well as the insureds whose claims resulted in the reports, are not available to testify.  Such evidence would be a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Rule 801. Thus, evidence of other Rimkus reports relied upon by CSAA in other claims must be excluded.

### CONCLUSION

Two Hundred Ninety (290) days after an earthquake allegedly shook their home, Plaintiffs notified CSAA that they believed their home suffered some damage from the earthquake.  CSAA promptly initiated a claim for the Plaintiffs and within eight (8) days CSAA had an engineer out to Plaintiffs' home to investigate their alleged damage.  The selection of Rimkus was random and was the first time CSAA's senior adjuster, Heckman, had used them. Rimkus chose Holliday as the engineer to inspect Plaintiffs' home and it was the first time she

had inspected an earthquake claim for Rimkus.  It was also the first time she had inspected a claim from CSAA.  Holliday provided her Report of Findings twenty-five (25) days after Plaintiffs' provided CSAA with their Notice of Loss.  The day after receiving the Report of Findings from Holliday, Heckman called Plaintiffs to discuss the loss and that the damages found were not related to earthquake damage, as well as wrote a letter to Plaintiffs and explained its coverage position.

Holliday is an expert on earthquake damage to residential structures.  Ford and Miles both believe she was more than qualified to investigate Plaintiffs' alleged damage.  Ford testified that Holliday's investigation was proper and he agreed with her determination that the damage suffered by Plaintiffs' home was caused by differential foundation movement related to volumetric soil changes from soil moisture variations and poor construction.  Miles opined that it was appropriate for CSAA to rely on Holliday's Report of Findings for its denial of Plaintiffs' claim.

The undisputed material facts demonstrate that CSAA's investigation of Plaintiffs' earthquake claim was *reasonable*.  The undisputed material facts show no evidence of reckless disregard of Plaintiffs' rights from which malice or evil intent may be inferred.  As a result, this Court should sustain CSAA's Motion for Partial Summary Judgment on Plaintiffs' bad faith claim and Plaintiffs' request for punitive damages.

This Court should also not consider evidence of any engineering reports for any claims other than the one at issue in this lawsuit. Evidence about other Rimkus reports in other claims that has nothing to do with Plaintiffs or this lawsuit is irrelevant and contains hearsay.  The probative value is substantially outweighed by the "the danger of unfair prejudice, confusion of the issues, misleading the jury, [or] undue delay."  Evidence of "other wrongs" or "other acts" is generally inadmissible to prove that a party behaved in a particular way on a particular occasion.

Respectfully submitted,


/Gerard F. Pignato

Gerard F. Pignato, OBA No. 11473
R. Greg Andrews, OBA No. 19037
Dixie A. Craven, OBA No. 31528
PIGNATO, COOPER, KOLKER & ROBERSON, P.C.
Robinson Renaissance Building
119 North Robinson Avenue, 11th Floor
Oklahoma City, Oklahoma  73102
Telephone:     405-606-3333
Facsimile:     405-606-3334
Email: jerry@pclaw.org
           greg@andrews.law
           dixie@pclaw.org
**ATTORNEYS FOR DEFENDANT, CSAA
FIRE AND CASUALTY INSURANCE
COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 21, 2018, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Steven S. Mansell, Esquire
Mark A. Engel, Esquire
Kenneth G. Cole, Esquire
M. Adam Engel, Esquire

s/ Gerard F. Pignato
For the Firm