# EXHIBIT 3

Case 5:17-cv-01302-D   Document 48-3   Filed 12/21/18   Page 2 of 14

CRYSTAL ANJEANETTE DUMOND SMITH
SMITH vs CSAA FIRE and CASUALTY INS.

August 22, 2018
1

```
 1            IN THE UNITED STATES DISTRICT COURT
 2            FOR THE WESTERN DISTRICT OF OKLAHOMA
 3
 4  SEAN SMITH and CRYSTAL SMITH,       )
                                        )
 5            Plaintiffs,               )
                                        )No.
 6  vs.                                 )5:17-cv-1302D
                                        )
 7  CSAA FIRE & CASUALTY INSURANCE      )
    COMPANY,                            )
 8                                      )
              Defendant.                )
 9
10
11     VIDEOTAPED DEPOSITION OF CRYSTAL ANJEANETTE SMITH
12           TAKEN ON BEHALF OF THE DEFENDANT
13               IN OKLAHOMA CITY, OKLAHOMA
14                  ON AUGUST 22, 2018
15
16
17
18
19       REPORTED BY:   KAREN B. JOHNSON, CSR
20
21
22
23
24
25
```



Case 5:17-cv-01302-D   Document 48-3   Filed 12/21/18   Page 3 of 14

CRYSTAL ANJEANETTE DUMOND SMITH
SMITH vs CSAA FIRE and CASUALTY INS.

August 22, 2018

33

1   Q   You don't recall ever seeing him in the
2 crawl space then; is that accurate?
3   A   I have not seen him in the crawl space.
4   Q   Do you have any family members that are
5 insured by AAA?
6   A   Not to my knowledge.
7   Q   Any close friends insured by AAA?
8   A   Not that I know of.
9   Q   Have you ever read your insurance policy
10 with AAA?
11   A   Not in-depth.
12   Q   Did you ever read it prior to the
13 earthquake?
14   A   I'm sure I looked at it.
15   Q   Do you know whether or not there's a
16 notice requirement in your policy with AAA?
17   A   I have no idea what that is.
18   Q   If there's a clause in your policy that
19 requires you to notify AAA of any potential claim,
20 do you recall ever reading something like that?
21   A   No.
22   Q   Do you know why such a clause might be in
23 your policy?
24   A   No.
25   Q   You think it's important to promptly



Case 5:17-cv-01302-D   Document 48-3   Filed 12/21/18   Page 4 of 14

CRYSTAL ANJEANETTE DUMOND SMITH
SMITH vs CSAA FIRE and CASUALTY INS.

August 22, 2018
34

1  notify the insurance company of a potential claim?
2      A    To some degree, yes.
3      Q    Explain "to some degree," what do you mean
4  by that?
5      A    Because at times you may not realize what
6  the problem is.
7      Q    Do you understand the importance of prompt
8  notification with regards to evidence on a claim?
9      A    Yes.
10     Q    You would agree with me that evidence can
11 disappear or change over time?
12          MR. ENGEL:  Objection to the form.  Go
13 ahead.
14          THE WITNESS:  To some degree, yes, again.
15     Q    (By Mr. Andrews)  And you understand that
16 memories can fade over time?
17          MR. ENGEL:  Objection to the form.  Go
18 ahead.
19          THE WITNESS:  To some degree.
20     Q    (By Mr. Andrews)  And conditions can
21 change; correct?
22     A    To some degree.
23     Q    Want you to describe to me in detail
24 everything you recall about the earthquake.
25     A    That I experienced in the earthquake?



Case 5:17-cv-01302-D   Document 48-3   Filed 12/21/18   Page 5 of 14

CRYSTAL ANJEANETTE DUMOND SMITH
SMITH vs CSAA FIRE and CASUALTY INS.

August 22, 2018
44

1 the earthquake?
2   A   No, we were just kind of in shock and
3 don't think about it.
4   Q   Prior to cleaning up all of the stuff that
5 had fallen from the earthquake, did you take any
6 photographs?
7   A   Not to my remembrance, no.
8   Q   Did you take any videos?
9   A   Not that I recall.
10  Q   Do you have any photos or videos showing
11 any damage to your property after the earthquake
12 prior to hiring your attorneys?
13  A   I honestly don't remember.
14  Q   Okay. So you didn't contact AAA at this
15 point in time; correct?
16  A   That is correct.
17  Q   Why did you not contact AAA insurance
18 regarding the earthquake?
19  A   Because we didn't know if we'd have enough
20 money to cover the deductible, we didn't think the
21 damage was that extensive at that time.
22  Q   Do you know how much the deductible was
23 for the earthquake?
24  A   I do not know.
25  Q   Do you know what your insurance provides



Case 5:17-cv-01302-D   Document 48-3   Filed 12/21/18   Page 6 of 14

CRYSTAL ANJEANETTE DUMOND SMITH
SMITH vs CSAA FIRE and CASUALTY INS.

August 22, 2018
47

1        THE WITNESS: There has been pictures
2  taken.
3        Q    (By Mr. Andrews)  Did you take any?
4        A    I honestly don't recall.
5        Q    Do you know if your husband has?
6        A    I could not answer for him on that.
7        Q    Do you know if there are any pictures or
8  video of the crawl space prior to the earthquake?
9        A    Not to my knowledge.
10       Q    Do you have photos or video of the -- want
11 to call this a living -- the living room where the
12 wall is leaning; is that correct?
13       A    Yes.
14       Q    Do you have any video or photos of that
15 wall prior to the earthquake?
16       A    Not to my knowledge.
17       Q    Do you mind, mark out to the side of the
18 living room with a line, living room, please, I
19 think you had referenced that you were sitting in
20 the living room, that way we'll know.
21       A    (Complies).
22       Q    Did anyone ever take any measurements of
23 that wall in the living room that you were holding
24 up during the earthquake prior to the earthquake?
25       A    Of the actual wall itself or like

```
 1              (Defendant's Exhibit Number 8 marked for
 2              identification and made part of the
 3              record)
 4       Q    (By Mr. Andrews)  Ms. Smith, have you ever
 5  seen Exhibit 8 before?
 6       A    Not to my recollection, no.
 7       Q    Okay.  This is some claim handling notes
 8  from your claim, I want to go through with these and
 9  ask a couple questions relating to these, okay?  If
10  you would, these go from back to front is how these
11  work, so if you would flip back to Page 8, in the
12  very bottom entry, the bottom it's dated August
13  24th, 2017, 9:57 a.m.  Do you see that, says Rich
14  Turnbull, T-U-R-N-B-U-L-L?
15       A    Yes.
16       Q    Okay.  It provides on here, "Inbound call
17  from insured, Crystal Smith," do you see where I'm
18  reading that from at the top?
19       A    Yes, sir.
20       Q    Says, "She mentioned that she may have
21  some damage to her dwelling that is related to an
22  earthquake.  The accuracy of the date of loss is not
23  certain at this time," do you see that?
24       A    Yes.
25       Q    Says, "Insured thinks that the earthquake
```

Case 5:17-cv-01302-D   Document 48-3   Filed 12/21/18   Page 8 of 14

CRYSTAL ANJEANETTE DUMOND SMITH
SMITH vs CSAA FIRE and CASUALTY INS.

August 22, 2018
114

1   Q   So is it fair to say, as we sit here
2   today, we don't know the exact date of the
3   earthquake that you're claiming damage from?
4          MR. ENGEL:  Objection to the form.  Go
5   ahead.
6          THE WITNESS:  No, the damage would have
7   been on the big earthquake in Cushing.
8   Q   (By Mr. Andrews)  So then is your
9   testimony you don't know the date of the big
10  earthquake in Cushing?
11  A   I believe it was around the 7th.
12  Q   Okay.
13  A   I would have to look that up to be sure.
14  Q   Provides that "When the loss occurred,
15  ceiling tiles fell down," where were the ceiling
16  tiles?
17  A   At some -- in the back bedroom, which was
18  the storage slash, that -- this room (indicating).
19  Q   Okay.  So which is now the boys' room,
20  it's the far northeast corner of the house; is that
21  correct?
22  A   Yes.
23  Q   Now, are those -- on that map, is that --
24  is north, south, east, west in accordance with the
25  page, and if not --



1  A   I know this is east, so, yeah.
2  Q   Do you mind putting a big N, E, S and W on
3 there, yeah.
4  A   (Complies).
5  Q   Okay.  So the northeast corner bedroom,
6 which is now the boys' bedroom, ceiling tiles fell
7 down; is that accurate?
8  A   Yes, there was some that fell.
9  Q   Did any other ceiling tiles fall in the
10 house?
11  A   Possibly in the bathroom, but I don't
12 really recall at this time.
13  Q   With regards to the ceiling tiles that
14 fell in the house, did you replace those ceiling
15 tiles?
16  A   No, sir.
17  Q   So they're still down?
18  A   I can't answer that at this time.  I'm not
19 sure.
20  Q   You're not sure if the ceiling tiles are
21 up on your ceiling, as we sit here today?
22  A   It's possibly been replaced with some
23 drywall.
24  Q   Okay.  Do you know who would have
25 performed those repairs, if they were made?

```
 1      A    No, sir.
 2      Q    Back to Exhibit 8.  I just finished with
 3 the "She stated that when the loss occurred, ceiling
 4 tiles fell down," and we talked about that; correct?
 5      A    Uh-huh.
 6      Q    Says, "They lost power to their home for
 7 three days," do you see that?
 8      A    Yeah, I don't know where that came from.
 9      Q    Okay.  So earlier you testified for two to
10 three hours or for a couple or few hours; is that
11 correct?
12      A    That is correct.
13      Q    Okay.  So the three days is inaccurate?
14      A    To the best of my knowledge, yeah.
15      Q    Says, "Several items in the home were
16 shifted around," do you see that?
17      A    Yes, sir.
18      Q    What is that referring to?
19      A    I would assume probably the dishes, the
20 wall, the floor, ceiling tiles, all the
21 aforementioned.
22      Q    So it's your belief that the items
23 shifting around in the house included the wall and
24 the floor in the living room?
25      A    I would assume so, yes.
```



```
 1      Q    Do you recall specifically telling the
 2 adjuster that the wall was leaning and the floor had
 3 a dip in it?
 4      A    I honestly don't know what all I said
 5 during that phone call.
 6      Q    Is it possible that you did not tell the
 7 adjuster that the wall was leaning or that the floor
 8 had a dip in it?
 9           MR. ENGEL:  Asked and answered.  Go ahead.
10           THE WITNESS:  I don't recall exact words.
11      Q    (By Mr. Andrews)  So it's possible that
12 you didn't; correct?
13           MR. ENGEL:  Asked and answered.
14           THE WITNESS:  Very slightly possible.
15      Q    (By Mr. Andrews)  It says, "Insured is
16 currently research earthquakes that occurred in the
17 Cushing area around that time, therefore, the date
18 of loss may need to be amended," do you see that?
19      A    I'm looking for it.  Yes, I see that.
20      Q    Did you research earthquakes around that
21 time?
22      A    I may have attempted to look up the date
23 of the big earthquake.
24      Q    It says -- looks like OI, and I'm not
25 really sure what that stands for, but it says,
```



1  "Discovered the damage in her son's room recently,
2  that's why she delayed reporting the loss," do you
3  see that?
4      A     Yes, sir.
5      Q     And that's relating to that northeast
6  corner bedroom that we're talking about; correct?
7      A     I would assume so, sir.
8      Q     The notes from that list a Rich Turnbull,
9  do you recall ever speaking with Rich Turnbull,
10 other than that call?
11     A     I could honestly not tell you who all I
12 spoke to at CSAA.
13     Q     Let me ask you this, during that phone
14 call on August 24th, 2017, was the CSAA
15 representative polite and courteous during the phone
16 call?
17     A     To the best of my remembrance.
18     Q     Did he answer all the questions that you
19 had for him at that time?
20     A     As far as I can remember, he answered my
21 questions at that time.
22     Q     If you would, flip to Page 6.  I'm sorry,
23 I'm going to have you go back one last time to Page
24 8.  Right after you provide that -- that's why she
25 delayed reporting the loss, do you see that, it says



Case 5:17-cv-01302-D   Document 48-3   Filed 12/21/18   Page 13 of 14

CRYSTAL ANJEANETTE DUMOND SMITH
SMITH vs CSAA FIRE and CASUALTY INS.

August 22, 2018
125

1 that "The adjuster advised insured that prior to the
2 assignment being send, I would need to seek approval
3 from my supervisor to dispatch the engineer.  I
4 explained that we could not confirm or deny coverage
5 until after the inspection."  Says, "The insured
6 understood."  Do you read that?  It's about right in
7 the middle.
8     A    Did I understand that they couldn't
9 confirm or deny at that time?
10    Q    Until an engineer was sent out to inspect.
11    A    Yes, see that.
12    Q    Did you understand what the adjuster was
13 talking about at that time?
14    A    That they needed to send someone out to
15 investigate, yes, sir.
16    Q    Okay.  Now, flip over to Page 6.  This has
17 August 28th, 2017, it's the bottom entry, do you see
18 that, says, "OB call to insured," which is outbound
19 called, they called you?
20    A    Okay.
21    Q    It said, "Mr. and Mrs. Smith," do you
22 recall during this phone call that both you and your
23 husband were on the phone?
24    A    I do not believe my husband was on the
25 phone at any time, but I might be wrong on that.

Case 5:17-cv-01302-D   Document 48-3   Filed 12/21/18   Page 14 of 14

CRYSTAL ANJEANETTE DUMOND SMITH
SMITH vs CSAA FIRE and CASUALTY INS.

August 22, 2018
168

1  A     Because I did not realize our damage was
2 as extensive as it was, and when I did discover it,
3 we did call in.
4  Q     You don't dispute being aware of the
5 earthquake occurring on November 7th, 2016, because
6 you were in the house; correct?
7  A     That is correct, I do not dispute the
8 earthquake.
9  Q     And you don't dispute that a claim was not
10 made by you until August 24th, 2017; correct?
11  A     That is correct.
12  Q     And so I'm asking over that 290-day
13 period, would you agree with me that that is not
14 prompt notice to CSAA about the earthquake that
15 you're claiming damage from in this case?
16        MR. ENGEL:  Objection to the form; asked
17 and answered.  Go ahead.
18        THE WITNESS:  Back to we did not realize
19 the extent of the damage because of the back bedroom
20 not being used.
21  Q     (By Mr. Andrews)  Irregardless of how much
22 damage you suffered, you did not give prompt notice
23 to CSAA, did you?
24        MR. ENGEL:  Same objections.
25        THE WITNESS:  No, sir.