Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

SEAN SMITH and CRYSTAL SMITH,    )
                                 )
         Plaintiff,              )
                                 )
-vs-                             )   CASE NO. 5:17-cv-1302 D
                                 )
CSAA FIRE AND CASUALTY           )
INSURANCE COMPANY,               )
                                 )
         Defendant.              )

DEPOSITION OF

DAVID M. BATTLE

TAKEN ON BEHALF OF THE PLAINTIFFS

IN OKLAHOMA CITY, OKLAHOMA

ON NOVEMBER 2, 2018

REPORTED BY:  TRENA K. BLOYE, CSR

PLAINTIFF'S EXHIBIT 12

```
                                                       Page 31
 1      A    I only just glanced at it.
 2      Q    Did you --
 3      A    I did not study it or did not analyze it.
 4      Q    You didn't dive into the details of that
 5   report?
 6      A    Yeah.  There was kind of a holdup.  I think
 7   there were some issues about that report, doing any work
 8   on that.  So it was on hold to do any -- make any
 9   decisive information.  I had to go back on anything I
10   would have to dig into it, analyze it.  Like I said, it
11   was sent to me as a matter of record, but I was told
12   just to hold it.
13      Q    But your report or your findings or -- I'm
14   sorry.  Let me start over.
15           Your conclusions for your testimony in this
16   case weren't in any way affected by the Sean Wiley
17   report?
18      A    No.  I did not have the Wiley report before I
19   made my report.
20      Q    Okay.  But to this day there is no changes to
21   your report based on the Wiley report?
22              MR. ANDREWS:  Object to the form.
23      A    That's correct.
24      Q    (By Mr. Engel) Okay.  Now, I want to talk about
25   more in-depth what you and Mr. Ford talked about on
```

David Battle                                          November 2, 2018

```
                                                          Page 32
 1    August 23rd.  Okay?  And I will tell you the crux, it's
 2    difficult for me to understand what you were looking at
 3    or what Steve Ford's recommendations were, because you
 4    didn't have Steve Ford's report when you prepared your
 5    estimate; right?
 6         A    That's correct.
 7         Q    So I need to understand what he was telling you
 8    at the time.  Okay?
 9         A    Okay.
10         Q    And during that phone call he was telling you
11    that -- well, I think it's in your report.
12         A    On page 2.  What I remember we discussed, he
13    said there were some shifting or something -- or not
14    shifting, but there was actually some bricks that were
15    loose and some of the pilasters were laying over.
16         Q    Yeah.  I want to draw your attention to the
17    second paragraph on page 2, the first complete paragraph
18    on page 2.
19         A    Correct.
20         Q    It says, Based on Mr. Ford's findings, the
21    earthquake damage he could visibly observe, was four by
22    six brick column supports supporting the floor structure
23    under the house were partially dislodged.  Did I read
24    that accurately?
25         A    Okay.
```

David Battle								November 2, 2018

Page 70

```
 1   as to what caused this damage, did you?
 2        A    I only wrote that down because of my
 3   discussions where his findings said, you know, these
 4   columns, we need to get a price to repair those.
 5        Q    It's going to be your testimony that Steve Ford
 6   never told you there was earthquake damage to this home?
 7        A    That's correct.
 8        Q    Even though you put it into your report?
 9        A    Yeah.  It's a poor choice of words on my part
10   there.
11        Q    You understand this entire litigation is about
12   whether or not this home was damaged by an earthquake;
13   right?
14        A    That's what I understand, yes.
15        Q    And now your report says that Steve Ford told
16   you there was earthquake damage?
17        A    It says that, but I wrote that down just, you
18   know, verbally what he told me.  But he never said
19   anything that was in writing that I could rely on that.
20        Q    Okay.  Because you didn't have his report at
21   the time.
22        A    That's correct.
23        Q    So you are writing this report just relying on
24   what he told you?
25        A    Right, just across the phone.
```