IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SEAN SMITH and CRYSTAL SMITH, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CSAA FIRE AND CASUALTY ) <br> INSURANCE COMPANY, ) <br> ) <br> Defendant. ) | Case No.: CIV-17-1302-D |

## CSAA'S REPLY TO PLAINTIFFS' RESPONSE
## TO CSAA'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Respectfully submitted,

Gerard F. Pignato, OBA No. 11473
R. Greg Andrews, OBA No. 19037
Dixie A. Craven, OBA No. 31528
R<small>OBERSON</small>, K<small>OLKER</small>, C<small>OOPER</small> & G<small>OERES</small>, P.C.
Robinson Renaissance Building
119 North Robinson Avenue, 11th Floor
Oklahoma City, Oklahoma 73102
Telephone:    405-606-3333
Facsimile:    405-606-3334
Email:        jerry@rkcglaw.com
              greg@andrews.law
              dixie@rkcglaw.com

**A<small>TTORNEYS FOR</small> D<small>EFENDANT</small>,
  CSAA F<small>IRE AND</small> C<small>ASUALTY</small>
  I<small>NSURANCE</small> C<small>OMPANY</small>**

January 25, 2019

The Defendant, CSAA Fire and Casualty Insurance Company ("CSAA"), hereby submits its Reply to Plaintiffs' Response to CSAA's Motion for Partial Summary Judgment, in the above case.

Plaintiffs have come out of the gate swinging, but their strong rhetoric is no substitute for admissible evidence, and not enough to overcome CSAA's Motion for Partial Summary Judgment. Plaintiffs excoriate CSAA for hiring Rimkus, a respected engineering firm used by individuals and insurance companies nationwide, to inspect Plaintiffs' house for earthquake damage. Plaintiffs point out that Rimkus is one of four approved engineering firms on CSAA's engineering list. Plaintiffs suggest four is not enough, and as a result, CSAA's relationship with Rimkus is too cozy. Plaintiffs contention is speculative and unsupported. The undisputed fact is, the adjusters at CSAA select an engineering firm from an approved list on a revolving basis; each engineering firm is hired the same number of times. (Depo. of Chad Heckman, p. 163, **Exhibit 1**.)

What is significant about this case – which may distinguish this particular lawsuit from other lawsuits filed by insureds against their insurance companies based on their use of a particular engineering firm – is that Plaintiffs here have not listed a single expert witness or person qualified to testify regarding the cause of the condition of Plaintiffs' house. Likewise, Plaintiffs' misguided belief that CSAA "pre-identified" Rimkus to inspect Plaintiffs' house lacks any evidentiary support and flies in the face of the undisputed facts.

This is important for several reasons. For example, Plaintiffs complain that Rimkus' Lisa Holliday ("Holliday") and Tim France ("France") did not inspect the crawl space under the living room to look at the floor joists and did not inspect the attic. The implication is, of course, that inspections of the crawl space beneath the home and of the attic would have

2

revealed earthquake-related damage.  Again, Plaintiffs offer no expert testimony or admissible evidence to support this theory.

Holliday explained in her deposition that Plaintiffs' home was built in the 1920's or 1930's with a crawl space foundation. (Depo. of L. Holliday, p. 147, **Exhibit 2**.) She stated she did not enter the crawl space because, according to the homeowner, there was no opening. (Depo. of L. Holliday, pp. 149, 227, **Exhibit 2**.) Likewise, she did not go into the attic because there was no need to do so. (Depo. of L. Holliday, p. 148, **Exhibit 2**.) She explained that when "looking for earthquake damage, you want to look at the places where earthquake damage happens, and that there was no reason to look in those places." (Depo. of L. Holliday, p. 148, **Exhibit 2**.) She described the "scope" of her inspection: "to see if there was earthquake damage to the house." (Depo. of L. Holliday, p. 148, **Exhibit 2**.) When asked why she didn't tear up the floor or the walls during her inspection, she aptly responded, "I generally don't tear up peoples' houses" and "our investigations are generally limited to non-destructive testing." (Depo. of L. Holliday, p. 150, **Exhibit 2**.) Holliday did not take soil samples as she deemed it unnecessary. (Depo. of L. Holliday, pp. 224-226, **Exhibit 2**.)

Plaintiffs attempt to sensationalize a purported dip in the floor in Plaintiffs' living room by suggesting the "dip" should have aroused some suspicion on the part of the Rimkus engineers. The fact is, Holliday saw nothing about the floor that caused any great concern. She stated: "But it seems like – if there would have been something that dramatic, yeah, it seems like they would have called an engineer themselves." And again, "If I was a

homeowner and there was a gaping hole in my floor, I would call an engineer." (Depo. of L. Holliday, p. 152, **Exhibit 2**.) As pointed out by CSAA in its Motion for Partial Summary Judgment, Holliday is not only a licensed structural engineer, she has extensive background and expertise studying earthquakes and earthquake damage.

Because this was Holliday's first inspection in connection with her employment at Rimkus, she was accompanied by senior engineer, France. (Depo. of T. France, pp. 9-10, **Exhibit 3**.) France acknowledged that neither he nor Holliday went into the attic. As he explained, they "didn't see the need for it." (Depo. of T. France, pp. 145-146, **Exhibit 3**.) He agreed with Holliday's assessment that there was no need to go up into the attic. (Depo. of T. France, p. 146, **Exhibit 3**.) France also agreed that neither he nor Holliday looked into the crawl space; he does not "recall finding access to the crawl space." (Depo. of T. France, pp. 81, 146-147, **Exhibit 3**.) However, even if France had been able to locate access to the crawl space, he did not believe it was necessary to enter the crawl space to investigate the Smith home. (Depo. of T. France, pp. 147-148, **Exhibit 3**.) France also concurred that destructive testing at the Smiths' house would have been unnecessary, and that he typically does not take soil samples because it is likewise unnecessary. (Depo. of T. France, pp. 76, 148, 151, **Exhibit 3**.) Importantly, France has no recollection of Plaintiffs ever raising a concern, during the inspection, about a sag in the floor, the living room wall leaning, or a fear that the living room wall might fall. (Depo. of T. France, pp. 149-150, **Exhibit 3**.)

Plaintiffs conveniently criticize the scope of the investigation conducted by Holliday and supervised by France, but Plaintiffs offer no expert testimony of their own to controvert

Rimkus' findings which were properly relied upon by CSAA. Plaintiffs are unable to produce any admissible evidence to support their arguments that Holliday should have inspected the attic, found a way to get into the crawl space, taken soil samples, or cut up the floor in Plaintiffs' living room. On the other hand, the testimony of Holliday and France, combined with Holliday's report to CSAA, *are* admissible evidence. Just as Plaintiffs believe CSAA should have added one more engineering firm to its approved list, Plaintiffs also insist the Rimkus engineers should have inspected one more part of the house.

Plaintiffs suggest CSAA knew (or should have known) the Holliday report was incomplete and/or wrong, and therefore, CSAA's reliance on same was *unreasonable*. Plaintiffs' theory lacks any supporting admissible evidence. An inspection of a home where alleged earthquake damage is claimed necessarily requires engineering expertise such as that possessed by Holiday and France. Nonetheless, despite the lack of admissible evidence, Plaintiffs argue CSAA should not have relied on the Rimkus Report in this case because (1) Rimkus did not conduct a thorough inspection of Plaintiffs' home, and (2) Rimkus routinely determines that the damage complained of by insureds is not earthquake-related.

In an effort to address the first prong, the relevant question is whether CSAA had a right and obligation to obtain the opinion of a licensed structural engineer regarding the cause of the damage to the Plaintiffs' home. Clearly, CSAA did have such a right and duty; Plaintiffs do not seriously suggest otherwise. In fact, had CSAA not done so, then, and only then, might Plaintiffs have a valid bad faith claim against CSAA. Plaintiffs are not qualified to challenge the nature and extent of Rimkus' inspection. With respect to the second prong, this point dovetails into the argument CSAA set forth in its Motion for Partial Summary

Judgment – that is, this Court should not consider, as support for Plaintiffs' bad faith claim in the present case, evidence of Rimkus' engineering reports on unrelated claims. Said differently, this Court should consider only evidence that will be admissible at trial.

Plaintiffs pointed out in their Response that CSAA's arguments are more akin to a Motion *in Limine*. Indeed, a separate Motion *in Limine* will be filed on this subject. However, it is also necessary to address this issue as part of CSAA's Motion for Partial Summary Judgment.

Without any expert testimony or other admissible evidence, Plaintiffs continue to allege that CSAA and Rimkus conspired together to undervalue, underpay, or deny earthquake claims in Oklahoma. Plaintiffs believe this evidence is admissible because it goes to bias and, according to Plaintiffs, evidence of bias is <u>always</u> admissible. But again, Plaintiffs' arguments lack any evidentiary support. As the old adage goes, when a party is strong on the facts, he pounds the facts; when a party is strong on the law, he pounds the law; but when a party is strong on neither the facts nor the law, he pounds the table.

The same issue was addressed by the Honorable Scott Paulk in the case of *Fox v. Country Mutual Ins. Co.*, Case No. CIV-17-1228-SLP. In *Fox*, the plaintiffs/insureds brought suit against their homeowner's insurance company arising from the alleged underpayment of their earthquake claim. Rimkus performed the inspection of the plaintiffs' home, and plaintiffs, through the same attorneys who are prosecuting the present lawsuit, argued the same theory of liability – *i.e.*, Country Mutual acted in collusion with Rimkus to pay less on a valid claim. Country Mutual filed a Motion for Summary Judgment with respect to the plaintiffs' claims, including the "collusion-with-Rimkus" claim. The court agreed with

6

Country Mutual on this issue and stated in its Order filed on November 21, 2018 [Doc No. 108]:

> Plaintiffs argue that "it defies belief that CMIC can actually insist that, as a matter of law, it 'reasonably relied' on the report of an engineer *it pre-identified to produce favorable reports for $4,000 a claim.* PLS." Resp. at 26 (emphasis added). But plaintiffs fail to point to any evidence from which a reasonable inference can be drawn that Defendant engaged in such conduct. Instead, plaintiffs make speculative assertions.
>
> The court agrees with Defendant that evidence of reports made by Rimkus in matters involving other insureds and other insurance companies is insufficient to establish that *this* Defendant hired Rimkus to inspect plaintiffs' property with the knowledge that Rimkus would produce a favorable report to Defendant or otherwise fail to adequately investigate and evaluate Plaintiffs' claim. Indeed, Defendant's evidence that Mr. France found structural damage in the only other earthquake claim he investigated for Defendant refutes plaintiffs' speculative assertion.

(Italics emphasis in original)(Order, p. 17, **EXHIBIT 4**.)

Plaintiffs apparently concede that CSAA should be allowed at trial to address each of these other earthquake claims investigated by Rimkus, by way of numerous "mini-trials." Each earthquake claim investigated by Rimkus (and other engineering firms) is different. In some instances, benefits were not paid because the damages fell within the deductible. In other instances, benefits were not paid because the earthquake exclusion was not in effect at the time of the earthquake in question. In other instances where the insureds purchased an earthquake endorsement, the engineers determined that the damage was unrelated to earthquake activity and more related to normal Oklahoma earth movement and settlement. Yet, on other claims, it was conclusively determined that the damage in question existed before the earthquake coverage was added.

7

Plaintiffs also argue in their Response that CSAA has ignored the Oklahoma Insurance Commissioner's Earthquake Insurance Bulletin No. PC 2015-02, and that CSAA's avoidance of this directive is further evidence of bad faith. In the Bulletin, the Insurance Commissioner stated that where the insurer denies a claim based on preexisting damage, then "I expect that the insurer has inspected the property prior to inception of the coverage and maintained reasonably current information as to the condition of the insured property, prior to loss." (Bulletin, p. 2, **Exhibit 5**.) However, the Bulletin does not have the force of law, because it is neither a rule nor a regulation. The Insurance Commissioner's statement is merely a statement of what he "expects," but Oklahoma law is very specific about what steps a state agency such as the Oklahoma Insurance Department must take before it can promulgate a rule that would have legal effect. Simply stated, to become valid, an agency rule must be promulgated in accordance with the requirements of Oklahoma's Administrative Procedures Act, 75 O.S. § 308.2(A). None of the requirements set forth in this statute were done before the Oklahoma Insurance Commissioner issued the Bulletin.

These steps are necessary under Oklahoma law. 75 O.S. § 303(E). No compliance was done here. The Commissioner can use an enabling statute to make law <u>only</u> when he complies with the law, pursuant to the powers delegated to him. 75 O.S. § 308.2(C). The Commissioner's Bulletin was a statement of his wishes or expectations, not a rule or regulation or anything with legal effect.

Inasmuch as Plaintiffs have telegraphed their intention to make the Bulletin an issue at trial, CSAA will timely file an appropriate Motion *in Limine* with additional arguments and authorities precluding any reference to the Bulletin at the time of trial. Plaintiffs should

be reminded that this Court granted a Motion *in Limine* in July 2018 to prohibit evidence of the Bulletin. This Court determined that the Bulletin constituted hearsay for which the business records exception did not apply. *Charles A. Shadid, LLC v. Aspen Specialty Ins. Co.*, 2018 WL 3420816, at *5 (W.D. Okla. 2018). Specifically, the Honorable Judge DeGiusti ruled: "Because discovery has been completed and Plaintiff has not timely identified any witness who could provide the information needed to satisfy Rule 803(6), the Court finds that Plaintiff has failed to establish the admissibility of the hearsay statements in the Insurance Bulletin."

Likewise, as in *Shadid*, Plaintiffs in the present case have not identified a witness who could avoid the hearsay statements in the Insurance Bulletin. (*See,* Plaintiff's **Final** Witness List in the present case, filed on November 21, 2018 [Doc No. 41], **EXHIBIT 6**.) Even the generic description of an unidentified Rule 30(b)(6) witness to be designated by CSAA does not provide a description of testimony sufficient to address this topic, and it certainly does not satisfy the hearsay exception.

It is also worthy of mention that the only known Oklahoma appellate decision that has come close to addressing this issue *rejected* the conclusion that an insurer, by accepting a risk, must pay for a loss that was in existence at the time the policy incepted. The court in *Aduddel Lincoln Plaza Hotel v. Certain Underwriters at Lloyds of London*, 2015 OK CIV APP 34, ¶ 16, 348 P.3d 216, 221, held that the insurer, "did not, as a matter of law, agree to pay damages that were in existence before it issued the policy merely because it had the opportunity to know the condition of the insured premises." Based on the *Aduddel* decision, it would certainly appear that an insurer is not required to inspect a prospective insured

property as a prerequisite for denying an insurance claim based on the condition of the property as it existed before the issuance of the policy. The *Aduddel* decision has persuasive effect. *See,* Okla. Sup. Ct. R. 1.200(d)(2). Simply stated, the Insurance Commissioner's Bulletin does not have legal effect.

Plaintiffs emphasize in their Response that the burden is on the insurer to prove an exclusion relied upon in the policy. Indeed, that is black letter law. CSAA reasonably relied upon the Rimkus engineers. The conclusions of Holliday triggered certain exclusions in the CSAA policy. As set forth in CSAA's Undisputed Fact Nos. 2, 3 and 38 in CSAA's Motion for Partial Summary Judgment, CSAA cited the relevant exclusions in its policy upon which it relied. (*See, e.g.,* CSAA letter to the Smiths, dated September 19, 2017, **EXHIBIT 7**.) Again, the important question and singular issue here is whether the report submitted by Rimkus to CSAA provided a sufficient basis for reliance upon the exclusions identified by CSAA. CSAA submits that the Rimkus Report led to only one result, and that only one conclusion can be reached regarding CSAA's reliance upon the Rimkus Report: Such reliance was at least *reasonable*.

As CSAA pointed out in its Motion for Partial Summary Judgment, its claim file does not have to be perfect. In fact, CSAA even has a right to be wrong. But, what cannot be seriously questioned here is that CSAA's actions throughout the handling of this claim were reasonable. As long as CSAA's actions were reasonable, Plaintiffs cannot maintain a bad faith action against CSAA. CSAA's Motion for Partial Summary Judgment should be granted.

        Respectfully submitted,

        s/ Gerard F. Pignato
        Gerard F. Pignato, OBA No. 11473
        R. Greg Andrews, OBA No. 19037
        Dixie A. Craven, OBA No. 31528
        ROBERSON, KOLKER, COOPER & GOERES, P.C.
        Robinson Renaissance Building
        119 North Robinson Avenue, 11th Floor
        Oklahoma City, Oklahoma  73102
        Telephone:   405-606-3333
        Facsimile:    405-606-3334
        Email:          jerry@rkcglaw.com
                          greg@andrews.law
                          dixie@rkcglaw.com
        **ATTORNEYS FOR DEFENDANT,**
          **CSAA FIRE AND CASUALTY**
          **INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

     I hereby certify that on January 25, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

    Steven S. Mansell, Esquire
    Mark A. Engel, Esquire
    Kenneth G. Cole, Esquire
    M. Adam Engel, Esquire

        s/ Gerard F. Pignato
        For the Firm