# EXHIBIT 5

OKLAHOMA INSURANCE DEPARTMENT
STATE OF OKLAHOMA

## EARTHQUAKE INSURANCE BULLETIN NO. PC 2015-02

TO:  ALL PROPERTY & CASUALTY INSURERS LICENSED IN THE STATE OF OKLAHOMA (collectively, "addressees")

RE:  Earthquake Insurance, Excluded Loss, Inspection of Insured Property and Adjuster Training

FROM:  John D. Doak, Oklahoma Insurance Commissioner

ISSUE DATE:  March 3, 2015

### Background

Since 2013, Oklahoma has seen a significant increase in earth tremors and other seismic phenomena. Last year, (2014) Oklahoma experienced several thousand earthquakes. Fortunately, most were very small and were only detectable on seismic measuring equipment; however, 567 of these quakes were of magnitude 3.0 or higher.

The news media, announcements by United States Geological Survey, Oklahoma Geological Survey, conservation groups, various state officials and the publicity surrounding several lawsuits has raised public awareness, the demand for earthquake insurance and critique of the coverage.

The purpose of this bulletin is to address the following issues in regard to earthquake insurance:

1. "Man-Made" Earthquake Exclusion

2. Preexisting Damage exclusion and

3. Specialized Training of Earthquake Adjusters.

### 1. Exclusion of "Man-Made" Damage

Earthquake policies insure against damage resulting from earth movement caused by:

(a) "natural faulting of land masses" or
(b) "convulsion of the earth's surface caused by natural seismic forces" or

Page 1 of 3

030315

(c) "displacement within the earth's crust through release of strain associated with 'tectonic processes'."

In general, it would be correct to say that earthquake insurance excludes loss due, in whole or part, to any "man-made" cause such as construction, mining, oil and gas exploration and production.

Lately there has been heated debate as to whether earthquakes can be caused by water disposal injection wells or hydraulic fracturing ("fracking"). At present, there is no agreement at a scientific or governmental level concerning any connection between injection wells or fracking and "earthquakes."

Recent information, collected by my office from the larger earthquake insurance companies, indicates that approximately one hundred Oklahoma earthquake claims were filed in 2014 with only eight having been paid.

In light of the unsettled science, I am concerned that insurers could be denying claims based on the unsupported belief that these earthquakes were the result of fracking or injection well activity. If that were the case, companies could expect the Department to take appropriate action to enforce the law.

I am considering market conduct examinations to ascertain the facts surrounding the extraordinary denial rate of earthquake claims that the preliminary data seems to indicate.

## 2. Pre-Existing Damage

Earthquake policies exclude coverage of property damage which occurs, prior to the effective date of the policy and after termination of the policy. Insurers understandably are only responsible for covered loss which occurs during the policy period. To help protect themselves from fraudulent claims, insurers have a right to inspect the property as often as required to ascertain the condition of the property.

In the case of frequent potential loss events, which may or may not result in a loss, it is important that the insurer know the condition of the insured property at inception of the coverage and remain cognizant of any damage that may have occurred during the policy period. In addition, since earthquake policies have a "single covered event clause" maintaining current knowledge of the insured property is essential to the proper application of deductibles.

As Commissioner, I have an obligation to enforce the insurance laws. Part of that responsibility is monitoring claims practices to determine whether insurers are employing fair claims practices and otherwise acting in conformity with the terms of their policies. If an insurer intends to deny a claim, asserting pre-existing" damage, I expect that the insurer has inspected the property prior to inception of the coverage and maintained reasonably current information as to the condition of the insured property, prior to loss.

As in the case of denials based on "man-made" earthquakes, I am considering market conduct examinations to ascertain the facts surrounding the extraordinary denial rate of earthquake claims that the preliminary data seems to indicate.

3. Claim Adjusters

In the event of an earthquake, properly trained adjusters are absolutely vital to ensure that claims are properly handled. What makes earthquake insurance more difficult from a claims perspective? I suggest that the coverage may not be well understood, the provisions differ from traditional property insurance and application of the limits and deductibles is complex.

Earthquake coverage is different from traditional forms of property insurance. For example, earthquake policies, define "earthquake" utilizing somewhat unintelligible scientific jargon such as:
  (a) "natural faulting of land masses" or
  (b) "convulsion of the earth's surface caused by natural seismic forces "or
  (c) "displacement within the earth's crust through release of strain associated with "tectonic processes"

Man-made earthquakes are excluded. Complex fact questions arise when determining whether earth movement has resulted from a covered cause or an excluded cause.

Another example of the unique nature of earthquake coverage is the common exclusion of coverage for masonry veneer walls and chimneys, the imposition of deductibles on various items of property that are much larger than the typical homeowners insurance deductible, multiple deductibles may apply to a single loss and in different ways. Structural damage is always an issue and requires technical expertise to evaluate.

All of this goes to say that due to the differences and complexity of the coverage, when compared to traditional property insurance, claims adjusters need specific training in earthquake insurance. I expect the addressees of this bulletin to take steps to ensure that claims adjusters receive training as necessary to address the concerns expressed above.

Questions concerning any aspect of this bulletin should be directed to the Oklahoma Insurance Department, Mike Rhoads, Deputy Commissioner (Mike.Rhoads@oid.ok.gov ) or Gordon C. Amini, Senior Attorney (Gordon.Amini@oid.ok.gov ) or by mail to the Oklahoma Insurance Department, Five Corporate Plaza, 3625 N.W. 56th St., Oklahoma City, OK 73112 Attn: Mike Rhoads, Deputy Commissioner or Gordon C. Amini, Senior Attorney.