# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

SEAN SMITH and CRYSTAL SMITH,

      Plaintiffs,

v.

CSAA FIRE AND CASUALTY
INSURANCE COMPANY and LISA
HOLLIDAY,

      Defendants.

Case No: CIV-17-1302-D

## PLAINTIFFS' RESPONSE TO DEFENDANT CSAA'S MOTION TO STRIKE EXHIBIT 2 FROM PLAINTIFFS' RESPONSE TO DEFENDANT CSAA'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**MANSELL ENGEL & COLE**
Steven S. Mansell, OBA #10584
Mark A. Engel, OBA #10796
Kenneth G. Cole, OBA #11792
M. Adam Engel, OBA #32384
204 North Robinson Avenue, 21st Floor
Oklahoma City, OK 73102-7001
T: (405) 232-4100 **      F: (405) 232-4140
E-mail:  mec@meclaw.net

**ATTORNEYS FOR PLAINTIFFS**

February 15, 2019

## **TABLE OF CONTENTS**

STATEMENT OF FACTS ................................................................................... 1

CSAA'S MOTION REQUESTS THIS COURT TO PREVENT A JURY
 FROM SEEING PHOTOGRAPHS OF DAMAGE CSAA CHOSE
 NOT TO INVESTIGATE DURING MULTIPLE INSPECTIONS ................................. 4

ARGUMENT AND AUTHORITY .................................................................... 5

   I.   CSAA'S CLAIM OF ALLEGED "PREJUDICE" IS A WHOLLY
      SELF-INFLICTED WOUND .............................................................. 5

   II.  A FOUNDATION CAN BE LAID FOR THE ADMISSION OF
      EXHIBIT 2 AT TRIAL ................................................................ 10

   III. THE PHOTOGRAPH IS RELEVANT ............................................. 14

# TABLE OF AUTHORITIES

**Cases:**

*Abbott v. Elwood Staffing Servs., Inc.*,
  44 F. Supp. 3d 1125 (N.D. Ala. 2014) .......................................................................... 11

*Agee v. Chugach World Servs. Inc.*,
  2014 WL 5795555 (N.D. Ala. Sept. 30, 2014)............................................................... 12

*Block v. R.H. Macy & Co., Inc.,*
  712 F.2d 1241 (8th Cir. 1983 .......................................................................................... 16

*Brassfield v. State Farm Fire & Cas. Co.*,
  2012 WL 12864942 (W.D. Okla. Dec. 13, 2012) ............................................................ 9

*Brown v. Patel*,
  2007 OK 16, 157 P.3d 117 ....................................................................................... 14, 15

*Brown v. Perez*,
  835 F.3d 1223 (10th Cir. 2016) ....................................................................................... 11

*Buzzard v. Farmers Ins. Co.*,
  1991 OK 127, 824 P.2d 1105 .......................................................................................... 15

*Buzzard v. McDanel*,
  1987 OK 28, 736 P.2d 157 .............................................................................................. 15

*Campbell v. Shinseki*,
  546 Fed. Appx. 874 (11th Cir. 2013) .............................................................................. 10

*Deters v. Equifax Credit Information Services, Inc.*,
  202 F.3d 1262 (10th Cir. 2000) ................................................................................. 15, 16

*Goodman v. Pennsylvania Turnpike Commission*,
  293 F.3d 655 (3d Cir. 2002) ..................................................................................... 16, 17

*Hendrix v. Raybestos-Manhattan, Inc.*,
  776 F.2d 1241 (8th Cir. 1983) ........................................................................................ 16

*Int'l Shipping Agency, Inc. v. Unión de Trabajadores de Muelles Loc. 1740*,
  2015 WL 5022794 (D.P.R. Aug. 21, 2018)..................................................................... 11

*Law Co., Inc. v. Mohawk Const. & Supply Co., Inc.*,
  577 F.3d 1164 (10th Cir. 2009) ................................................................. 12, 13

*Lopez v. Delta Int'l Mach. Corp.*,
  312 F. Supp. 3d 1115 (D.N.M. 2018) ............................................................. 13

*McEwen v. City of Norman, Okl.*,
  926 F.2d 1539 (10th Cir. 1991) ........................................................................ 16

*Newport v. USAA*,
  2000 OK 59, 11 P.3d 190 .................................................................................. 15

*Niagara Transformer Corp. v. Baldwin Techs., Inc.*,
  2013 WL 2919705 (D. Md. June 12, 2013) .................................................... 11

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*,
  310 F. Supp. 3d 1089 (S.D. Cal. 2018) ........................................................... 12

*Rivers v. Burnette*,
  2015 WL 535623 (D.S.C. Feb. 10, 2015) ....................................................... 11

*Smart & Associates, LLC v. Indep. Liquor (NZ) Ltd.*,
  226 F. Supp. 3d 828 (W.D. Ky. 2016) ............................................................. 12

*United States v. Clayton*,
  643 F.2d 1071 (5th Cir.1981) .......................................................................... 13

*U.S. v. Holmquist*,
  36 F.3d 154 (1st Cir. 1994)*, cert. denied,* 514 U.S. 1084 (1995)................... 13

*Wagenmann v. AdCMIC*,
  829 F.2d 196 (1st Cir. 1987) ........................................................................... 16

*Weber-Stephen Products LLC v. Sears Holding Corp.*,
  2015 WL 5161347 (N.D. Ill. Sept. 1, 2015).................................................... 11

*White Oak Glob. Advisors, LLC v. Pistol Drilling*,
  2015 WL 11236968 (W.D. Okla. Apr. 15, 2015)............................................ 11

**Rules:**

Fed. R. Civ. P. 56........................................................................................... 10, 11

Fed. R. Civ. P. 56(c)(2) ................................................................................... 10

Fed. R. Civ. P. 56, Adv. Comm. Notes, "Subdivision (c)" (2010 Amendments). ...... 10, 12

Fed. R. Evid. 401 ........................................................................................... 14

Fed. R. Evid. 403 ........................................................................................... 16

## <u>EXHIBITS</u>

1. Excerpts from Deposition of Chad Heckman

2. Smith Cracked Floor Joists Photograph

3. Smith Rimkus Report (CSAA_SMITH 76-106)

4. Claim Notes (CSAA_SMITH 6-7)

5. Excerpts from Deposition of Tim France

6. Excerpts from Deposition of Lisa Holliday

7. Excerpts from Deposition of J. Stephen Ford

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SEAN SMITH and CRYSTAL SMITH,<br><br>        Plaintiffs,<br><br>v.<br><br>CSAA FIRE AND CASUALTY<br>INSURANCE COMPANY and LISA<br>HOLLIDAY,<br><br>        Defendants. | Case No: CIV-17-1302-D |

**PLAINTIFFS' RESPONSE TO DEFENDANT CSAA'S MOTION TO
STRIKE EXHIBIT 2 FROM PLAINTIFFS' RESPONSE TO
DEFENDANT CSAA'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs Sean Smith and Crystal Smith ("the Smiths") respectfully submit the following Response in Opposition to the Motion to Strike Exhibit 2 from Plaintiffs' Response to CSAA's Motion for Partial Summary Judgment filed herein by Defendant CSAA Fire and Casualty Insurance Company ("CSAA"). For the reasons which follow, the Smiths respectfully submit that CSAA's Motion to Strike should be denied.

**STATEMENT OF THE FACTS**

On November 9, 2016, a 5.0 earthquake violently shook the City of Cushing. Several of the buildings downtown fell over and collapsed into the street. After the earthquake, the City of Cushing lost power for over 24 hours.

Mrs. Smith was in her living room when the earthquake occurred. As her living room shook, she jumped off the sofa and placed her hands on the living room wall. The wall shook and bowed as the earthquake rocked her home. She feared it would fall on her.

After it stopped, she turned and found that the middle of her living room floor had collapsed and that there was a large new depression in the floor. The wall upon which she had put her hands was out plumb, with the top of the wall leaning in toward the living room.

Mr. Smith works construction and framing and the Smiths initially thought he could repair the damage.  However, as they discovered further damage, they realized that the damage was far more serious than they had originally thought and that it extended throughout their home.  They then made a claim with their homeowners' insurer, CSAA. CSAA's initial claim file notes show that, in her first communication with adjuster Heckman, Mrs. Smith informed CSAA of "substantial damage" to the living room.  The Smiths' claim was assigned to adjuster Chad Heckman ("Mr. Heckman").  CSAA's claim file notes show that during his first call to Mrs. Smith with the adjuster, Mr. Heckman was aware the living room floor had collapsed and that, after the earthquake, the living room door would not close.  Mr. Heckman has testified he knew from the onset of the claim the insured was claiming damage to the living room.  *See* Ex. 1, Heckman depo., pp. 157:8 – 158:7.

CSAA's claim handling earthquake policy is to hire an engineer from one of the four approved engineering firms on CSAA's engineering list.  Mr. Heckman hired Rimkus Engineering ("Rimkus").  Rimkus has already conducted dozens of earthquake inspections for CSAA on other insureds' earthquake claims.  Initially, Rimkus Engineer Tim France was assigned to the claim.  Later, the claim was reassigned to Rimkus Engineer Lisa Holliday.  Mr. France and Lisa Holliday inspected the property together.  Mr. France acted as a "guide" to new hire Lisa Holliday during the inspection of the Smiths' home.

2

During their "inspection," Lisa Holliday, Tim France, and their Rimkus assistant walked through the front door and into the living room.  At no time did they inspect the crawlspace under the living room to look at or photograph the floor joists that the earthquake had caused to break.  Although they examined areas where ceiling tiles had fallen, they did not bother to inspect the attic above the fallen ceiling tiles. Not one of the three Rimkus representatives bothered to take even one photograph of the collapsed living room floor.  Nor did they measure the out-of-plumb wall.  Later, Plaintiffs accessed the crawlspace via holes cut in the living room floor.  That view revealed cracked floor joists. *See* Ex. 2, Smith Cracked Floor Joists Photograph (the exhibit at issue in Defendant's Motion).  Measurements of the living room wall similarly indicated that the wall had significantly shifted.  In fact, during the claim, Lisa Holliday's CSAA engineering report is totally silent as to the living room damages.  *See* Ex. 3, Smith Rimkus Report (CSAA_SMITH 76-106).  Her report neither mentions the living room, the leaning interior structural wall, nor the collapsed living room floor.  *Id.*

Predictably, like nearly every other Rimkus "inspection," the "inspection" concluded that the damage to the home was caused by long-term soil settling due to soil type and moisture content in the soil.  Not a single Rimkus photograph supports that claim. Nonetheless, as has occurred in many other earthquake claims, CSAA issued a denial letter to Plaintiffs stating that due to the Rimkus engineer's report, the damage to their home was not attributable to earthquake, but rather to non-covered soil settling.

The damage that Mrs. Smith personally saw occur was never addressed by the Rimkus report.  The moisture in the soil was *never* tested and the level of soil moisture is

unknown. The type of soil beneath the home was also *never* tested and remains unknown. The Smiths were not paid one dollar in benefits and, to this day, no adjuster or anyone else from CSAA has ever seen the Smiths' home.  The only people who went to the Smiths' home to investigate this claim were the three Rimkus employees that CSAA hired to help it deny the claim.

## CSAA'S MOTION REQUESTS THIS COURT TO PREVENT A JURY FROM SEEING PHOTOGRAPHS OF DAMAGE CSAA CHOSE NOT TO INVESTIGATE DURING MULTIPLE INSPECTIONS

CSAA has a pattern and practice of using Rimkus and other engineering firms to help it deny earthquake claims.  Indeed, the evidence shows that: 1) CSAA has a continuing relationship with Rimkus; 2) CSAA denies claims based on the "conclusions" of its hired engineers; and 3) most Rimkus reports are nearly identical.  No wonder CSAA fears a jury might question how "reasonable" it has been by consistently hiring Rimkus.

CSAA filed a Motion for Partial Summary Judgment asserting that it is entitled to judgment as a matter of law because it "reasonably relied" on the predetermined "conclusions" of the engineering firm it routinely hires to obtain precisely the same conclusions in order to assist it in denying its insureds' claims.  Attached as Plaintiffs' Ex. 2 to the Smiths' Response is a photograph depicting the broken floor joists beneath the depression in the floor of the Smiths' living room that no one on behalf of CSAA had ever bothered to investigate at any time.

CSAA has now filed a Motion to Strike Plaintiffs' Ex. 2 from the Smiths' Response claiming, among other things, that it was "unfairly surprised" by the photograph depicting the broken joists beneath the living room - the very issue that it was specifically informed

had fallen in the earthquake.  That is a curious assertion given that CSAA simultaneously pretends that it conducted a thorough, complete and adequate "inspection" of the damage to the Smiths' home.  How can CSAA seriously claim to be "surprised" by photographs of damage to one of the very areas it was called out to inspect if its inspection was so thorough?

The Smiths submit that CSAA's alleged "surprise" is feigned, and that it made a tactical decision <u>not</u> to perform destructive testing, such as cutting a hole at the location in the floor where the depression that it was supposed to investigate existed, because it knew precisely what it would find if it did so.  Instead the report of the Rimkus engineers who purportedly "inspected" the Smiths' home for CSAA <u>does not even mention</u> the very structural issue that: 1) was part of the reason the Smiths' filed this claim in the first place; and 2) the Smiths specifically informed CSAA of when they called to make the claim.  Nor does the Rimkus report contain even one photograph of the Smiths' living room.  The photograph that CSAA seeks to strike simply highlights the evidence that CSAA's purported "inspection" of the Smiths' home was entirely inadequate and unreasonable.  For the reasons that follow, the Smiths respectfully submit that CSAA's Motion to Strike should be denied.

## <u>ARGUMENT AND AUTHORITY</u>

## I.    CSAA'S CLAIM OF ALLEGED "PREJUDICE" IS A WHOLLY SELF-INFLICTED WOUND

CSAA's claim of alleged "prejudice" is largely a self-inflicted wound caused by its poor handling of, and investigation into, the Smiths' claim.  Interestingly, CSAA does not

claim that the broken joist occurred at some point in time other than when the earthquake occurred and the floor in the Smiths' living room collapsed.  It cannot because there is no evidence to support such a claim.  What it complains about is the fact that it was unaware of the broken floor joist depicted by the photograph at issue because the Smiths did not immediately give it a copy of the photograph when it was taken – which was only after CSAA had already hired two sets of experts, twice inspected the home, already listed its testifying expert witnesses, and already provided copies of its experts' reports.  The Smiths produced the photographs before the close of discovery and listed them on the Smiths' Final Exhibit List.

CSAA completely ignores the fact that it <u>chose</u> not to address the Smiths' concerns about the condition of their home, including the collapsed floor, at any time.  Indeed, CSAA had two sets of experts inspect the Smiths' home <u>after</u> the Smiths had <u>specifically</u> informed CSAA that their living room had sustained "significant damage" in the earthquake.  *See* Ex. 1, Heckman depo., pp. 157:8 - 158:7; 227:5 - 228:4; *See* Ex. 4, Claim File Notes (CSAA_SMITH 6-7). The only "prejudice" about the photograph at issue is it accurately depicts the situation beneath the living room floor of the Smiths' home, and it graphically demonstrates more clearly than words the fact of CSAA's near wholesale failure to properly investigate the Smiths' claims.  That is not the type of alleged "surprise" or "prejudice" warranting the exclusion of the evidence.

CSAA's claims handlers and its experts agree that CSAA could have cut holes in the living room floor of the Smiths' home in order to view the floor joists had it chosen to. *See, e.g.*, Ex. 1, Heckman depo., pp. 246:2 - 248:16; Ex. 5, France depo., pp. 65:19 - 67:7.

However, no one chose to do that.  After agreeing that he could have sought to open the floor, Rimkus engineer Tim France testified that he never considered opening up the floor to determine why it was sagging because he "didn't feel it was necessary."  *See* Ex. 5, France depo., pp. 81:9-19 and 148:10-13.   Lisa Holliday, the Rimkus engineer who "investigated" the damage to the house with Mr. France, agreed that she could have sought "destructive testing" (and had previously done so, presumably on other claims).  *See* Ex. 6, Holliday depo., p. 150:3-22.   However, she stated that she was not "doing a full, thorough, structural evaluation of the house" and further indicated that she did not recall a broken floor joist or a problem with the living room floor.  *See* Ex. 6, Holliday depo., pp. 151:4 - 152:19.[1]   Indeed, Ms. Holliday's report of her inspection does not even mention the living room or the existence of a broken floor joist.  *See* Ex. 1, Heckman depo., pp. 228:15 - 231:16.   Steve Ford, the engineer CSAA hired to investigate the Smiths' home <u>after</u> it had already denied the claim and had been sued, testified he thought there was a "high probability" that some of the floor joists were broken based upon the elevation information contained in the Rimkus report.  *See* Ex. 7, Ford depo., p. 112:2-7.   Yet he did not suggest opening the floor to verify his suspicions either.[2]   CSAA now claims it is "surprised" by the existence of a photograph depicting the existence of evidence that it had

---

[1] One is only left to wonder why CSAA would hire Ms. Holliday, a structural engineer, to purportedly inspect a home that might have suffered structural damage in an earthquake if it was not to perform "a full, thorough, structural evaluation of the house."

[2] While Mr. Ford initially said that he thought the floor joists had broken due to rot, he later agreed that there could be many reasons why they were broken.  *See* Ex. 7, Ford depo., pp. 112:8 - 114:17.

deliberately chosen to ignore. The Smiths submit that CSAA should not have been.  In any event, as above indicated, CSAA's alleged "surprise" rather clearly did not extend to CSAA's expert Steve Ford who thought there was a "high probability" that the floor joists were broken before the photograph was even taken.

CSAA was given every opportunity, both during the pendency of the claim and again after the lawsuit was filed and it hired new engineers and experts to once again inspect the home, to investigate and obtain precisely the information regarding the broken floor joists that it now complains the Smiths did not timely provide it.  Only after CSAA was given multiple opportunities to inspect their home and failed to do so on each occasion, did the Smiths perform their own investigation into their claim – the investigation that CSAA should already have performed.

As CSAA has indicated, the photograph at issue was taken on September 10, 2018 by Sean Wiley during his inspection of the Smiths' home.  It was produced to CSAA less than a month later.  By the time it was taken CSAA's engineers and experts had already inspected the Smiths' home (at least twice), had formulated their opinions, had been listed as testifying experts herein by CSAA [See Doc. No. 27, filed August 23, 2018], and had provided written reports regarding their opinions and conclusions.  Although the damage to the living room was a concern that the Smiths had communicated to CSAA from the inception of this claim, not one of CSAA's three engineers even addressed that issue except to generally assert that the earthquake had not damaged the home.  Nor did CSAA's expert construction estimator.

Nothing that the Smiths or Mr. Wiley "prevented" CSAA from doing anything. What "prevented" CSAA from learning why the floor was sagging was CSAA's complete lack of interest in obtaining that information – because that information might jeopardize its claim that the earthquake had caused "no damage" to the Smiths' home. This is not a case where the Smiths engaged in destructive testing during which critical evidence was lost, altered or destroyed, and CSAA does not even try to assert that is the case.[3] The broken floor joists are in precisely the same condition as they were when CSAA was ignored them, and are still in precisely the same condition they were when Mr. Wiley exposed them. CSAA simply chose not to avail itself of multiple opportunities to look at them. That results of that decision rest with CSAA not with the Smiths.

CSAA's alleged "prejudice," if any, is entirely of its own making. If it exists, it is because CSAA deliberately chose not to perform the type of investigation that might reveal the cause of the very damage the Smiths had been complaining about from the outset. That is a problem created by CSAA, not by the Smiths, and it does not provide CSAA with a

---

[3] Even in cases which do involve the potential destruction of evidence, " 'a loose consensus' has developed that a custodial party may destroy relevant evidence after he discharges his duty to preserve evidence by 'giving the other side notice of a potential claim and a full and fair opportunity to inspect relevant evidence.' " *Brassfield v. State Farm Fire & Cas. Co.*, 2012 WL 12864942, at *4 (W.D. Okla. Dec. 13, 2012) (citing *Am. Family Mut. Ins. Co. v. Golke*, 2009 WI 81, 768 N.W.2d 729, 737). The duty to preserve "is not boundless and a potential spoliator need only do what is reasonable under the circumstances." *Id.* (citing *Capogrosso v. State Farm Insurance Co.*, 2010 WL 3404974 *9 (D.N. J. Aug. 26, 2010). Here, CSAA was given notice of the Smiths' claim, was given notice that the Smiths' living room had suffered "significant damage," was allowed to have its hired engineers inspect the home thereafter, and <u>again</u> allowed to re-inspect the home with new experts <u>after</u> litigation had ensued. At no time have the Smiths ever tried to impede CSAA's access to the home.

legitimate basis for seeking to strike the evidence showing its failures.  For that reason, the

Smiths respectfully submit that CSAA's Motion to Strike Plaintiff's Exhibit 2 from their

Summary Judgment Response should be denied.

## II.      A FOUNDATION CAN BE LAID FOR THE ADMISSION OF EXHIBIT 2 AT TRIAL

With the December 1, 2010 rules change to Rule 56 of the Federal Rules of Civil

Procedure, motions to strike materials submitted on summary judgment motion or response

are no longer appropriate.  Revised Rule 56(c)(2) provides that "[a] party may object that

the material cited to support or dispute a fact cannot be presented in a form that would be

admissible in evidence."  The Advisory Committee Notes specify as follows:

> Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.  The objection functions much as an objection at trial, adjusted for the pretrial setting.  The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.  There is no need to make a separate motion to strike.  If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

Fed. R. Civ. P. 56, Adv. Comm. Notes, "Subdivision (c)" (2010 Amendments).  "Before

this amendment, parties properly challenged evidence used in a summary judgment motion

by filing a motion to strike.  The plain meaning of these provisions shows that objecting to

the admissibility of evidence supporting a summary judgment motion is now a part of

summary judgment procedure, rather than a separate motion to be handled preliminarily."

*Campbell v. Shinseki*, 546 Fed. Appx. 874, 879 (11th Cir. 2013).

With regard to documents submitted as evidence, the 2010 rule change has, as it has with motions to strike on summary judgment, modified the applicable procedure.  Revised Rule 56 eliminated the bright-line requirement that documents be authenticated.  It:

> [A]llows a party making or opposing a summary judgment motion to cite to materials in the record including, among other things, "depositions, documents, electronically stored information, affidavits or declarations" and the like. Fed. R. Civ. P. 56(c)(1)(A).  If the opposing party believes that such materials "cannot be presented in a form that would be admissible in evidence," that party must file an objection. FED. R. CIV.P. 56(c)(2). Significantly, **the objection contemplated by the amended Rule is not that the material "has not" been submitted in admissible form, but that it "cannot" be.**  [Emphasis added]**.**

*Abbott v. Elwood Staffing Servs., Inc.*, 44 F. Supp. 3d 1125, 1134 (N.D. Ala. 2014) (quoting *Foreword Magazine, Inc. v. OverDrive, Inc.*, 2011 WL 5169384, at \*2 (W.D. Mich. 2011)).[4]  The objecting party must explain why the evidence could not be presented in an

---

[4] Many other cases are to the same effect.  *See, e.g.*, *Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016) (summary judgment evidence need not be presented in admissible form; "[t]he requirement is that the party submitting the evidence show that it <u>will be possible</u> to put the information, the substance or content of the evidence, into an admissible form.") (emphasis added); *White Oak Glob. Advisors, LLC v. Pistol Drilling,* 2015 WL 11236968, at \*3 (W.D. Okla. Apr. 15, 2015), *on reconsideration in part, White Oak Glob. Advisors, LLC v. Pistol Drilling, LLC*, CIV-13-280-C, 2015 WL 11236850 (W.D. Okla. May 26, 2015) (rejecting a claim similar to that made here, stating "Defendants argue that the lender agreements are inadmissible and cannot be relied upon at this stage.  This argument fails. First, nothing in Fed. R. Civ. P. 56 requires that the evidence considered be admissible in its current form; rather, the question is whether or not the evidence can be presented in a manner that would render it admissible."); *Weber-Stephen Products LLC v. Sears Holding Corp.*, 2015 WL 5161347, at \*6, fn. 6 (N.D. Ill. Sept. 1, 2015) (""under the new rule [Revised Fed. R. Civ. P. 56(c)], the proper objection on summary judgment is that the evidence cannot be presented at trial in an admissible form."]; *Niagara Transformer Corp. v. Baldwin Techs., Inc.*, 2013 WL 2919705, at \*1 (D. Md. June 12, 2013) ("Importantly, "the objection [now] contemplated by the amended Rule is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be.") (citation omitted); *Rivers v. Burnette*, 2015 WL 535623, at \*8 (D.S.C. Feb. 10, 2015) (same).

admissible form at trial.  *See Int'l Shipping Agency, Inc. v. Unión de Trabajadores de Muelles Loc. 1740*, 2015 WL 5022794, at *3 (D.P.R. Aug. 21, 2018) ("Because [the plaintiff] makes no argument that the defendants' evidence could not be authenticated, its objection should be denied.").

In effect, "[u]nder the 2010 amendment, which became effective on December 1, 2010, authentication of documents no longer is required at the summary judgment stage." *Agee v. Chugach World Servs. Inc.*, 2014 WL 5795555, at *5 (N.D. Ala. Sept. 30, 2014). *See also*, *Smart & Associates, LLC v. Indep. Liquor (NZ) Ltd.*, 226 F. Supp. 3d 828, 844 (W.D. Ky. 2016) ("No 'unequivocal requirement [exists] that documents submitted in support of a summary judgment motion must be authenticated.'") (citation omitted).  Once the opposing party objects "that the materials ... *cannot* be presented in a form that would be admissible in evidence … [t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56, Adv. Comm. Notes, "Subdivision (c)" (2010 Amendments) (emphasis added). "[B]oilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence," should be rejected.  *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 310 F. Supp. 3d 1089, 1107 (S.D. Cal. 2018).

The Tenth Circuit does "not require an affidavit to authenticate every document submitted for consideration at summary judgment."  *Law Co., Inc. v. Mohawk Const. & Supply Co., Inc.*, 577 F.3d 1164, 1170 (10th Cir. 2009).  Authentication is typically satisfied "by evidence sufficient to support a finding that the matter in question is what its proponent claims."  *Mohawk Const.*, 577 F.3d at 1170 (citing Fed. R. Evid. 901).

Satisfactory authentication evidence can come from the document's face.  *Id*. ("Mohawk's submitted exhibits might be sufficiently authenticated taking into consideration the '[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.' ") (quoting Fed. R. Evid. 901(b)(4)). Authentication is not a high threshold.  *Lopez v. Delta Int'l Mach. Corp.*, 312 F. Supp. 3d 1115, 1154 (D.N.M. 2018).

In this case, CSAA does not even try to claim that Plaintiff's Exhibit 2 <u>cannot</u> be presented in a form that is admissible at trial.  For that reason, its objection is insufficient. Moreover, a foundation can be laid to introduce the photograph about which CSAA now complains at trial in any event.  Mrs. Smith, who was present when the photograph was taken, can regarding the circumstance that existed in her home when it was taken.[5]  So too can Sean Wiley, the person who took the photograph.  Mr. Wiley and Mrs. Smith can both

---

[5] Contrary to CSAA's apparent assertion, it is not necessary to have Sean Wiley, the photographer, authenticate it.  *See, e.g.*, McCormick, *Evidence* § 214 at 14 (5th ed. 1999) ("[T]he witness who lays the foundation need not be the photographer nor need he know anything of the time conditions, or mechanisms of the taking.  Instead he need only know about the facts represented or the scene or objects photographed, and once this knowledge is shown he can say whether the photograph correctly and accurately portrays these facts."); *United States v. Clayton*, 643 F.2d 1071, 1074 (5th Cir.1981) ("A witness qualifying a photograph need not be the photographer or see the picture taken; it is sufficient if he recognizes and identifies the object depicted and testifies that the photograph fairly and correctly represents it."); *U.S. v. Holmquist*, 36 F.3d 154, 169 (1st Cir. 1994), *cert. denied*, 514 U.S. 1084 (1995) ("Appellant inveighs against this assessment, asserting that the prosecution presented no evidence to show when, where, why, and under what circumstances the photographs were taken.  This assertion is true — but it is beside any pertinent point.  A photograph's contents, buttressed by indirect or circumstantial evidence, can form a sufficient basis for authentication even without the testimony of the photographer or some other person who was present at the time it was taken.") (citations omitted).

testify that it is a fair and accurate depiction of the situation that they saw when they opened up the sub-flooring of the Smiths' home in the living room.  Mr. Wiley and Mrs. Smith can also both testify that the photograph is of a broken floor joist located beneath the floor in the living room of the Smiths' home.  That is sufficient to authenticate the photograph. CSAA's lack of foundation claim is inaccurate and, for that reason, the Smiths respectfully submit that CSAA's objections should be overruled.

## III.    THE PHOTOGRAPH IS RELEVANT

Contrary to CSAA's claim, the photograph of the broken floor joist meets the definition of relevance set forth in Fed. R. Evid. 401, which provides that:

Evidence is relevant if:

**(a)**    it has any tendency to make a fact more or less probable than it would be without the evidence; and

**(b**)    the fact is of consequence in determining the action.

The photograph of the broken floor joist in the Smith's living room is relevant for several reasons.  For example, it is either relevant to show the existence of earthquake damage, which would assist in proving the Smiths' claim, or it is relevant to show that the cause of the break is something else, which would assist CSAA in its defense of the Smiths' claim.  Moreover, regardless of what caused the break, the photograph of the broken joist is relevant to the issue regarding the adequacy of CSAA's investigation, because the fact that CSAA did not even know there was a broken floor joist indicates that an inadequate investigation was performed.  *See*, *e.g., Brown v. Patel*, 2007 OK 16, 157 P.3d 117, 122

(noting that "a duty to *timely* and *properly* investigate an insurance claim is intrinsic to an insurer's duty to *timely* pay a valid claim") (emphasis in original).

When presented with a claim by its insured, an insurer "must conduct an investigation reasonably appropriate under the circumstances" and "the claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient." *Newport v. USAA*, 2000 OK 59, 11 P.3d 190, 195 (quoting *Buzzard v. McDanel,* 1987 OK 28, 736 P.2d 157, 159 ("*Buzzard I*")) (emphasis added). "The decisive question is whether the insurer had a 'good faith belief, **at the time its performance was requested**, that it had a justifiable reason for withholding payment under the policy." *Buzzard v. Farmers Ins. Co.,* 1991 OK 127, 824 P.2d 1105, 1109 ("*Buzzard II*") (citing *Buzzard I*) (emphasis added). "The knowledge and belief of the insurer during the time period the claim is being reviewed is the focus of a bad-faith claim." *Buzzard I,* 736 P.2d at 159.

The photograph of the broken floor joist is certainly relevant particularly given that the depression in the Smiths living room floor was one of the issues that CSAA was specifically notified of and asked to investigate. Indeed, it is difficult to comprehend how CSAA can argue with a straight face that it properly and adequately investigated the Smiths' claims when it did not even bother to investigate or address the issues it was specifically told existed at the home.

CSAA's "unfair prejudice" claim is similarly inaccurate. In that regard, "[e]vidence should be excluded under [Fed. R. Evid.] 403 only if the probative value of the evidence is substantially outweighed by unfair prejudice." *Deters v. Equifax Credit Information*

*Services, Inc.,* 202 F.3d 1262, 1274 (10th Cir. 2000).  Rule 403 "favors admissibility of relevant evidence and should be invoked very sparingly to bar its admission."  *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1502 (11th Cir.1985) (citations omitted).  *See also*, *Block v. R.H. Macy & Co., Inc.,* 712 F.2d 1241, 1244 (8th Cir. 1983) ("Consistent with the requirement that the overbalance must be substantial, we have said: 'In weighing the probative value of evidence against the dangers and considerations enumerated in Rule 403, the general rule is that the balance should be struck in favor of admission'") (internal citations omitted).  In performing the 403 balancing, the Court should "'give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.'" *Deters*, 202 F.3d at 1274 (quoting 1 J. Weinstein & M. Burger, *Weinstein's Evidence* ¶ 403[3], at 403-25 to 403-26 (1982)).

Moreover, "as has been stated many times, Rule 403 does not protect a party from all prejudice, only <u>unfair</u> prejudice." *Deters,* 202 F.3d at 1274.  *See also*, *McEwen v. City of Norman, Okl.,* 926 F.2d 1539, 1550 (10th Cir. 1991), stating that "[t]he "unfair prejudice" stated in Rule 403 cannot be equated with testimony which is simply unfavorable to a party. It must be unfair in the sense that it would be misleading and not aid and assist the jury in making a material determination in the case"); *Wagenmann v. AdCMIC*, 829 F.2d 196, 217 (1st Cir. 1987) ("[T]he . . . prejudice against which the law guards [is] ... *unfair* prejudice - ... prejudice of the sort which cloud[s] impartial scrutiny and reasoned evaluation of the facts, which inhibit[s] neutral application of principles of law to the facts as found") (emphasis added).  "[P]rejudice does not simply mean damage to the opponent's cause." *Goodman v. Pennsylvania Turnpike Commission*, 293 F.3d 655, 670 (3d Cir. 2002) (citing

1 *McCormick on Evidence* § 185 at 645 (John W. Strong, et al. eds., 5th ed.1999).  If it did, most relevant evidence would be deemed "prejudicial."  *Id.*  However, the fact that probative evidence helps one side prove its case obviously is not grounds for excluding it under Rule 403.  *Id.*  Excluded evidence must be unfairly prejudicial, not just prejudicial. *Id.*

In this case, CSAA has not shown any <u>unfair</u> prejudice from the photograph of the broken joist beneath the floor of the Smiths' living room, particularly given CSAA's consistent assertion that it conducted a thorough and proper investigation into the Smiths' claim before denying it.  Instead, the photograph is simply additional evidence refuting CSAA's claim.  While the photograph does not in and of itself prove that CSAA breached its duty of good faith and fair dealing or show that CSAA conducted a biased and inadequate investigation, it is certainly relevant evidence that merits consideration along with all of the other evidence on those issues.

Because CSAA has failed to demonstrate that the photograph is unfairly prejudicial, or that any such alleged unfair prejudice substantially outweighs the probative value of the photograph, the Smiths respectfully submit that CSAA's Motion to Strike Exhibit 2 to the Smiths' Summary Judgment Response should be overruled.

**MANSELL ENGEL & COLE**

By: s/M. Adam Engel
    Steven S. Mansell, OBA #10584
    Mark A. Engel, OBA #10796
    Kenneth G. Cole, OBA #11792
    M. Adam Engel, OBA #32384
    204 N. Robinson, 21st Floor
    Oklahoma City, OK 73102
    T: (405) 232-4100 ** F: (405) 232-4140
    Firm Email:  mec@meclaw.net

**ATTORNEYS FOR PLAINTIFFS**

:

## CERTIFICATE OF SERVICE

       I hereby certify that on February 15, 2019, I electronically transmitted the attached document to the Clerk of the Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following registrants:

    Gerard F. Pignato (jerry@pclaw.org)
    R. Greg Andrews (greg@andrews.law)
    Dixie A. Craven (dixie@pclaw.org)

**ATTORNEYS FOR DEFENDANT –
CSAA FIRE AND CASUALTY INSURANCE COMPANY**

        s/Adam M. Engel