1

```
 1            IN THE UNITED STATES DISTRICT COURT
 2           FOR THE WESTERN DISTRICT OF OKLAHOMA
 3
 4   SEAN SMITH and CRYSTAL SMITH,      )
                                        )
 5            Plaintiffs,               )
                                        )No.
 6   vs.                                )5:17-cv-1302D
                                        )
 7   CSAA FIRE & CASUALTY INSURANCE     )
     COMPANY,                           )
 8                                      )
              Defendant.                )
 9
10
11
12            VIDEOTAPED DEPOSITION OF TIM FRANCE
13            TAKEN ON BEHALF OF THE PLAINTIFFS
14              IN OKLAHOMA CITY, OKLAHOMA
15                  ON JANUARY 7, 2019
16
17
18
19      REPORTED BY:   KAREN B. JOHNSON, CSR
20
21
22
23
24
25
```



PLAINTIFF'S EXHIBIT 5

Timothy France                                      January 7, 2019

1   any questioning that doesn't involve an earthquake
2   and on something that he worked on.
3       Q    (By Mr. Engel)  You testified that you did
4   work Elk City claims; right?
5            MR. FELTY:  Object to form.  Again, move
6   for protective order.
7            MR. ENGEL:  Let me ask the question so we
8   can have a clear record.
9            MR. FELTY:  Okay.
10      Q    (By Mr. Engel)  How many structures did
11  you investigate as a result of the Elk City
12  tornadoes?
13           MR. FELTY:  Move for protective order.
14  Don't answer the question.  We'll talk to the judge.
15      Q    (By Mr. Engel)  I want to kind of leave
16  where we're at and move on to something else, all
17  right?
18      A    Okay.
19      Q    I want to talk about this idea of
20  destructive investigation.  Are you familiar with
21  that term?
22      A    Yes.
23      Q    What is destructive investigation?
24      A    It's where you have to destroy part of a
25  structure or take a piece of it to be examined.

Timothy France                                          January 7, 2019

```
                                                        Page 66
 1         Q     And the reason -- one of the reasons you
 2   would destroy part of a -- a structure is that you
 3   could view the structural components behind
 4   coverings; right?
 5         A     Correct.
 6         Q     For example, you might tear off drywall to
 7   view the structural components of the wall behind
 8   the drywall; right?
 9         A     Yes.
10         Q     Or you might tear off the ceiling so you
11   could see the roof or the ceiling joists; right?
12         A     Yes.
13         Q     Does it frustrate you when I say the wrong
14   terms for the building materials?
15         A     I'm following you just fine.
16         Q     I apologize, I'm trying my best, all
17   right?  Or you might -- in one instance, you might
18   tear up the floor to see the structural components
19   under the floor; right?
20         A     Yes.
21         Q     And this destructive investigation is
22   something you're familiar with; right?
23         A     Yes.
24         Q     Are there instances where you've performed
25   destructive investigation to view structural
```

Timothy France                                      January 7, 2019

Page 67

1  components behind wall coverings and floor coverings
2  and ceiling coverings?
3      A    Yes.
4      Q    Would you agree that you can't view the
5  structural components of things while the coverings
6  are still on?
7      A    Yes.
8      Q    When you've been working for Rimkus --
9  well, strike that.
10          Do you believe in doing a thorough
11 investigation?
12     A    Yes.
13     Q    Do you feel like you always do a thorough
14 investigation?
15     A    Can you rephrase that?
16     Q    I know -- well, let me ask it this way, do
17 you think in order to perform an ethical
18 investigation, you need to perform a thorough one?
19     A    Yes.
20     Q    If you're investigating a claim and you
21 have the opportunity to look in the attic, would you
22 look in the attic?
23     A    If I felt it was warranted to do so, I do.
24     Q    If you had the opportunity to view in a
25 basement or a crawl space, would you do that?

Timothy France                                            January 7, 2019

Page 81

1   believe it's not necessary to go into the crawl
2   space?
3        A     Yes.
4        Q     Why?
5        A     There was nothing there that I saw that
6   would justify going into it, and, too, if I remember
7   correctly, there was no direct access to the crawl
8   space.
9        Q     Did you ever consider destructive
10  investigation to get into there?
11       A     No.
12       Q     But that's something you could have done
13  to access if there was no access point; right?
14       A     We could propose it, have to get approval
15  from the property owner then and the client to pay
16  for the repairs.
17       Q     And that's something you guys could have
18  done; right?
19       A     Could have.
20       Q     I want to talk about the size of
21  earthquakes, all right?
22       A     Okay.
23       Q     How do you measure the size of an
24  earthquake?
25       A     There's -- when you say "measure," by

D&R REPORTING & VIDEO, INC.
(800)771-1500 / depo@drreporting.com

Timothy France                                    January 7, 2019

Page 148

1    A    No.
2         MR. ENGEL:  Asked and answered and form.
3    Q    (By Mr. Andrews)  Will you repeat your
4    answer, please?
5    A    No.
6         MR. ENGEL:  If you give me a little bit of
7    time to object and then answer, it will be a little
8    bit cleaner, all right?
9         THE WITNESS:  Okay.
10   Q    (By Mr. Andrews)  You testified that there
11   was no destructive testing at the Smith house, why
12   was that not done?
13   A    Didn't feel it was necessary.
14   Q    You didn't take any soil samples at the
15   Smith house, why was that not done?
16   A    Typically do not.
17   Q    Do you recall the condition of the soil
18   while you were out at the house doing your
19   investigation?
20   A    It's covered with vegetation.
21   Q    If you would, look at Exhibit 3A, which is
22   Dr. Holliday's report.
23        MR. ENGEL:  Should be the bottom.
24        MR. FELTY:  Put the rest of that over
25   there.  Get this out of your way.