# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SEAN SMITH and CRYSTAL SMITH, ) <br> ) <br>     *Plaintiffs*, ) <br> ) <br> v. ) <br> ) <br> CSAA FIRE AND CASUALTY ) <br> INSURANCE COMPANY, ) <br> ) <br>     *Defendant*. ) | Case No.:17-cv-01302-D |

## ORDER

CSAA Fire and Casualty Insurance Company (the "Defendant") filed a Motion for Partial Summary Judgment and Supporting Brief. Doc. No. 48. Plaintiffs Sean and Crystal Smith (the "Plaintiffs") have filed a Response [Doc. No. 53] to which Defendant has replied [Doc. No. 57]. Defendant filed a Motion to Strike Exhibit 2 from Plaintiffs' Response. Doc. No. 61. Pursuant to Rule 56, the Motion to Strike Exhibit 2, along with all accompanying briefs, will be considered as an objection to Exhibit 2 in Plaintiffs' Response [Doc. No. 53] and addressed as part of the Court's ruling on summary judgment.

## BACKGROUND

This case arises from an insurance claim for damages to Plaintiffs' home. Plaintiffs' First Amended Complaint, Doc. No. 19 at 1, ¶ 2. Plaintiffs allege the damage was caused by an earthquake on November 7, 2016. *Id.* at 1, ¶ 3. Defendant denied Plaintiffs' insurance claim, concluding that the damage was instead caused by poor construction and soil changes. Response to Motion to Strike Exhibit 2, Doc. No. 61 at 3.

1

Plaintiffs brought this action alleging breach of contract and bad faith. *See* First Amended Complaint.

Defendant argues in its motion that it is entitled to judgment on Plaintiffs' bad faith claim and request for punitive damages, as Plaintiffs present no genuine dispute as to any material fact. *Id.* at 1. Plaintiffs respond that their bad faith claim is not barred. Response at 5 n.1. Plaintiffs state that Defendant failed to inspect the damage Plaintiffs complained of from the outset. *Id.* at 5. Plaintiffs further state that there are disputed facts as to whether Defendant disregarded guidance from the Oklahoma Insurance Department and whether Defendant has a practice of hiring engineers to aid in the underpayment of claims. *Id.* at 9, 12. As part of their Response, Plaintiffs included Exhibit 2, a photograph depicting structural damage to their home. Plaintiffs' Response and Objection to Defendant's Motion for Partial Summary Judgment. Doc. No. 53, Ex-2. Defendant subsequently filed a Motion to Strike Exhibit 2. Doc. No. 59. The Court, in a previous Order [Doc. No. 67], denied that Motion and, pursuant to Rule 56, agreed to consider all filings related to the Motion to Strike as an objection herein.

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Universal Underwriters Ins. Co. v. Winton*, 818 F. 3d 1103, 1105 (10th Cir. 2016). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v.*

*Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Court's inquiry must be whether the evidence, when viewed "through the prism of the substantive evidentiary burden," *Anderson*, 477 U.S. at 254, "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Although the Court views all facts in the light most favorable to the nonmoving party at the summary judgment stage, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

## DISCUSSION

The Court will first address Defendant's objection to Exhibit 2 in Plaintiffs' Response. Next the Court will turn to Defendant's Partial Motion for Summary Judgment.

**I.    The Court will consider Exhibit 2 in ruling on summary judgment, over Defendant's objection.**

Defendant filed a Motion to Strike Exhibit 2 from Plaintiffs' Response to CSAA's Motion for Partial Summary Judgment. Doc. No. 59. The Court now considers the substance of that Motion, Plaintiffs' Response to the Motion to Strike [Doc. No. 61], and Defendant's Reply [Doc. No. 63].

Exhibit 2 includes a photograph depicting what Plaintiffs assert are broken floor joists located beneath Plaintiffs' living room. Response to Motion to Strike at 4. Defendant asserts that Plaintiffs failed to timely produce Exhibit 2, rather presenting it for

the first time to Defendant's expert during a deposition. Doc. No. 59 at 1–3. Plaintiffs respond that Defendant cannot both have conducted a thorough inspection of their home and be unfairly surprised by Exhibit 2. Any surprise, Plaintiffs respond, is the direct result of tactical decisions made by Defendant. Response to Motion to Strike at 5. Next Defendant asserts that Plaintiffs failed to lay a proper foundation for Exhibit 2, omitting from their brief any mention of who took the photograph, when it was taken, or where it was taken. Motion to Strike at 1. Plaintiffs note that the proper focus of the inquiry as to the photograph's foundation—at this stage in the proceedings—is whether Exhibit 2 could eventually be reduced to admissible evidence at trial. Response to Motion to Strike at 13. The Court will consider these arguments in turn.

    a.    *Plaintiffs' untimely disclosure of Exhibit 2 was harmless.*

Defendant first claims Plaintiffs' failure to timely disclose the photograph at issue should preclude Plaintiffs from now introducing it as Exhibit 2. Motion to Strike at 4. On February 16, 2018, Defendant issued a discovery request, asking Plaintiffs to produce "all photographs or videos that depict, to any degree," damage attributed to the incident giving rise to the insurance claim. *Id.* at 1. Exhibit 2 was taken on September 10, 2018, by Sean Wiley ("Wiley"), Plaintiffs' rebuttal expert. Response to Motion to Strike at 14. Plaintiffs' deposed Defendant's expert witness David Battle ("Battle") on November 2, 2018. During the deposition Plaintiffs showed Battle the picture now labeled as Exhibit 2. Motion to Strike at 3. Exhibit 2 was subsequently produced to Defendant, less than a month after Exhibit 2 was taken, but after Battle was deposed. *Id.* According to the Scheduling Order, discovery was to be completed by January 8, 2019. Doc. No. 29 at 2.

Supplemental disclosures under Fed. R. Civ. P 26 are a one-way street: the producing party has the burden to timely supplement disclosures, once the party is aware that the initial responses or disclosures are materially incomplete. *See* Fed. R. Civ. P. 26(e)(1)(A). The receiving party is left with little recourse to challenge the sufficiency of a supplemental disclosure and is often limited to challenging supplemental filings as untimely. *See* Rule 37(c)(1).

"The determination of whether a [Rule 26] violation is justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). The Court "need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose." *Id*. The following factors, however, "should guide its discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and, (4) the moving party's bad faith or willfulness." *Id*.

Plaintiffs' use of Exhibit 2 during Battle's deposition—before Plaintiffs produced the photograph to Defendant—is troubling. The Court agrees with Plaintiffs that producing a photograph a month after it was taken by an expert, who subsequently had to prepare a report, is not, per se, an unreasonable delay. The photograph was produced before the discovery deadline. But the fact that Plaintiffs were sufficiently prepared to present the photograph to Battle during his deposition, before disclosing the information

5

to the opposition, suggests that Plaintiffs failed to supplement their initial discovery responses promptly, as required by Fed. R. Civ. P. 26.

Defendant asserts that due to this delay, Defendant has suffered prejudice, which cannot be cured. The Court disagrees. Defendant was aware of Plaintiffs' complaints about the issues in Plaintiffs' living room and had inspected the area twice before. Response to Motion to Strike at 9. Plaintiffs did nothing to preclude Defendant from conducting its own examinations. Defendant's expert stated—basing his conclusions on Defendant's own reports—that there was a "high probability" that the floor joists were broken before the photograph was taken. *Id*. at 14. Certainly, the timing of the disclosure suggests there may have been some willfulness in the delay on Plaintiffs' part. But the Court finds the error was harmless, as it was not the cause of any prejudice to Defendant. Moreover, trial was not disrupted, as trial has not yet been set. Therefore, the timing of Exhibit 2's disclosure was ultimately harmless.

      b.     *The photograph in Exhibit 2 can be reduced to admissible evidence at trial.*

Next, Defendant argues that Exhibit 2 is inadmissible because Plaintiffs have not listed any witnesses competent to testify that the broken floor joists were caused by earthquakes, and therefore, Exhibit 2 is not relevant to Plaintiffs claim. Reply to Response to Motion to Strike at 3.

      i.     ***Exhibit 2 is relevant evidence and its probative value is not substantially outweighed by the risk of unfair prejudice.***

Under Fed. R. Evid. 401, evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of

consequence in determining the action." "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Where the risk of unfair prejudice substantially outweighs the probative value of evidence, the evidence should be excluded. Fed. R. Evid. 403

A matter of consequence to this case is whether Defendant performed an adequate investigation in response to Plaintiffs' insurance claim. Response to Motion to Strike at 15. *See Brown v. Patel*, 2007 OK 16, ¶ 11, 157 P.3d 117, 122 (explaining conduct that can form the basis of a bad-faith action and noting that "a duty to timely and properly investigate an insurance claim is intrinsic to an insurer's contractual duty to timely pay a valid claim"); *see also Buzzard v. Farmers Ins. Co., Inc.,* 1991 OK 127, 824 P.2d 1105, 1109 ("To determine the validity of the claim, the insurer must conduct an investigation reasonably appropriate under the circumstances."). The insured allegedly asserted from the outset that their living room had collapsed after an earthquake. Regardless of the cause of the break, the floor joists were broken. And the fact that they were left unexamined is of some consequence to Plaintiffs' bad faith claim. To be sure, it may be that leaving the floor joists unexamined did not constitute a breach of Defendant's duty to properly investigate. This, however, is not an issue for the Court to decide at this stage in the proceedings. The fact that Defendant might be prejudiced by the introduction of Exhibit 2 is not enough. *See Old Chief v. United States*, 519 U.S. 172, 193 (1997) ("Rule 403 does not permit the court to exclude the [] evidence simply because it may hurt the defendant."). Defendant had ample opportunity to do its own inspections and will have ample opportunity to prepare a defense for trial. Upon consideration of all relevant facts,

7

the Court finds that the risk of *unfair* prejudice in this case does not substantially outweigh the probative value of the evidence.

### ii. Exhibit 2 can be authenticated.

Further, Plaintiffs are correct to point out that the proper inquiry at the summary judgment stage is whether evidence could eventually be presented as admissible at trial.

While Rule 56 allows the use of materials that are not usually admitted at trial, such as affidavits, "[a] party may object that the material cited . . . cannot be presented in a form that would be admissible in evidence." *See* Fed. R. Civ. P. 56(c)(2). Under this rule, "the form of evidence produced . . . at summary judgment may not need to be admissible at trial, [but] 'the content or substance of the evidence must be admissible.'" *Johnson v. Weld Cty.*, 594 F.3d 1202, 1210 (10th Cir. 2010) (quoting *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 485 (10th Cir. 1995)). Thus, in ruling on summary judgment, courts must disregard evidence if there is a proper objection to its use and its proponent cannot show that the evidence in question could eventually be admissible at trial. *See Montes v. Vail Clinic*, 497 F.3d 1160, 1176 (10th Cir. 2007); *Johnson*, 594 F.3d at 1209.

A photograph becomes admissible only when a witness has testified that it is a correct and accurate representation of relevant facts personally observed by the witness. *United States v. Wilson*, 719 F.2d 1491, 1495 (10th Cir. 1983) (citing MCCORMICK'S HANDBOOK OF THE LAW OF EVIDENCE § 214, at 530–31 (2d ed. 1972)). The witness who lays the foundation need not be the photographer. *Id*. The witness "need only know about the facts represented or the scene or objects photographed, and once this

knowledge is shown he can say whether the photograph correctly and accurately portrays these facts." *Id.*

In a previous Order [Doc. No. 68], the Court ruled Plaintiffs could call Wiley as their rebuttal expert. Wiley, the photographer, will be able to authenticate Exhibit 2. In the alternative, Plaintiffs offer that Plaintiff Crystal Smith, who was present when the photograph was taken, could also testify that the photograph is a fair and adequate depiction of a broken floor joist located beneath Plaintiffs' living room floor. This would suffice to make the photograph admissible.

Therefore, Defendant's objection to the Court's consideration of Exhibit 2 as part of Plaintiffs' Response to Defendant's Motion for Partial Summary Judgment is overruled.

## II. There are genuine disputes of material fact as to whether Defendant performed an adequate investigation.[1]

Defendant's Partial Motion for Summary Judgment argues Plaintiffs' bad faith claim and request for punitive damages should be dismissed as a matter of law.

---

[1] Defendant argues that because there is a legitimate dispute as to coverage, the bad faith claim is barred. As the Court's analysis will show, this is not the case here. *See Timberlake Const. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 343 (10th Cir. 1995).
> We note, though, that a legitimate dispute as to coverage will not act as an impenetrable shield against a valid claim of bad faith. An insured may pursue a claim of bad faith even where the insurer has a legitimate defense to coverage. However, in order to pursue such a claim, the insured must present sufficient "evidence reasonably tending to show bad faith."

*Id.* (quoting *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1440 (10th Cir.1993)).

### a. Statement of Facts

Defendant issued a homeowner's insurance policy to Plaintiffs for a policy period of February 17, 2016 through February 17, 2017 for their home in Cushing, Oklahoma ("Policy"). The Policy covered direct physical loss to property caused by an earthquake. Motion at 3. An earthquake struck Cushing on November 7, 2016. *Id*. at 4. Plaintiffs' home was near the epicenter of the earthquake. Response at 5. Nine months later, on August 24, 2017, Plaintiffs made a claim to Defendant regarding damage to their home. Motion at 5. The delay in notifying Defendant arose because Plaintiffs did not know if they could afford the deductible on their claim and thought they could handle the repairs themselves. *Id*. at 5

Defendant assigned Chad Heckman ("Heckman"), a senior claims adjuster, to Plaintiffs' claim. *Id.* at 6. Plaintiffs allege they informed Heckman of extensive damage to their living room, including a large depression in the center of the room that came to be during the November 2016 earthquake. Response at 1. Rimkus Consulting Group, Inc., ("Rimkus"), an engineering firm, was selected to inspect Plaintiffs' property. Motion at 6. Rimkus assigned Lisa Holliday ("Holliday"), a structural engineer and senior consultant, as the inspector on the claim. *Id.* at 2, 7. Holliday inspected Plaintiffs' home to determine whether it had suffered any structural damage, and whether the damage was related to the November 2016 earthquake. *Id.* at 7.

Plaintiffs informed Holliday that during the earthquake, "the house shook, things fell off the shelves and broke, pictures fell off the wall, and the front door would not close." *Id*. at 8. Holliday concluded that the November 2016 earthquake did not cause damage to

Plaintiffs' home. Rather, Holliday concluded that the damage was caused by "differential foundation movement related to volumetric soil changes from soil moisture variations over time," and from "poor construction techniques found at the foundation." *Id.* Plaintiffs allege Defendant never collected any soil samples or measured soil moisture at Plaintiffs' home. Response at 8. Plaintiff also claims Rimkus never investigated "the roof, living room wall, living room floor (crawlspace), or wall structure" during inspection. Response at 7. Defendant denied Plaintiffs' insurance claim. Motion at 8.

After Plaintiffs filed suit, Defendant sent out Stephen Ford ("Ford"), a structural engineering expert witness, to inspect Plaintiffs' home. *Id.* Defendant asserts that Ford also concluded the damage to Plaintiffs' home was not the result of seismic activity. *Id.* Plaintiffs, however, claim Defendant's experts concluded the house was damaged by the earthquake, and that the experts contradicted their own testimony during their depositions. Response at 11. Subsequently, Plaintiffs own investigation revealed broken floor joists, which Plaintiffs assert Defendant had never investigated. *Id.* at 6. Plaintiffs assert that Defendant could have accessed the broken floor joists through an access hole. *Id*. at 8. Further, Defendant sometimes engages in destructive testing as part of its insurance investigation procedures, Plaintiffs note. And at Plaintiffs' home, this course of action was never considered. *Id.*

Defendant asserts that its handling of Plaintiffs' claim was reasonable. Motion at 13. Defendant also asserts that its reliance on the report produced by Rimkus was reasonable, and therefore, Defendant's actions with respect to the claim were reasonable. *Id.*

Defendant asserts that because there is a legitimate dispute between Defendant and Plaintiffs as to these issues, a bad faith claim is barred under Oklahoma law. *Id*.

      b.      *Standard of Decision: Bad Faith Claim*

As the parties concede, in this diversity action the law of the forum state governs. *See, e.g.*, *Dish Network Corp v. Arrowood Indem. Co.*, 772 F.3d 856, 867 (10th Cir. 2014).

"Oklahoma law recognizes an implied duty on the part of an insurer to deal fairly and act in good faith with regard to its insured." *Trinity Baptist Church v. Brotherhood Mut. Ins. Servs., LLC*, 341 P.3d 75, 79 (Okla. 2014). "An insurer's breach of this duty gives rise to a separate cause of action sounding in tort." *Wathor v. Mut. Assur. Adm'rs, Inc.*, 87 P.3d 559, 562 (Okla. 2004). A plaintiff bears the burden of proving the following elements to establish a bad faith claim against an insurer: (1) coverage exists under the policy at issue; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury. *Ball v. Wilshire Ins., Co.*, 221 P.3d 717, 724 (Okla. 2009). "Before the issue of an insurer's alleged bad faith may be submitted to the jury, the trial court must first determine as a matter of law, under the facts most favorably construed against the insurer, whether the insurer's conduct may be reasonably perceived as tortious." *Garnett v. Gov't Emps. Ins. Co.,* 186 P.3d 935, 944 (Okla. 2008).

"[A]n insurer's right to resist payment or resort to a judicial forum to resolve a legitimate dispute" is well-established. *Gov't Emps. Ins. Co. v. Quine*, 264 P.3d 1245,

1249 (Okla. 2011); *see also Brown v. Patel*, 157 P.3d 117, 126–27 (Okla. 2007). "If there is a legitimate dispute concerning coverage or no conclusive precedential legal authority requiring coverage, withholding or delaying payment is not unreasonable or in bad faith." *Ball*, 221 P.3d at 725. "The tort of bad faith hence does not prevent an insurer from denying, resisting or litigating any claim as to which the insurer has a reasonable defense." *Id*. "[W]hen presented with a claim by its insured," however, "an insurer must conduct an investigation reasonably appropriate under the circumstances, and the claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient." *Newport v. USAA*, 11 P.3d 190, 195 (Okla. 2000). An insurer's duty "to timely and properly investigate an insurance claim is intrinsic to an insurer's contractual duty to timely pay a valid claim." *Brown*, 157 P.3d at 122. "If there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of [an] insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case." *McCorkle v. Great Atl. Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981).

> ### i. *The admissibility of the Rimkus reports and the Oklahoma Insurance Commissioner's Earthquake Bulletin will be addressed by the Court once motions in limine are filed.*

As part of its Motion, Defendant contends that Rimkus reports corresponding to other insurance claims, unrelated to Plaintiffs' claims, should be inadmissible at trial. Motion at 18–23. The same argument is made of the Oklahoma Insurance Commissioner's Earthquake Bulletin. Reply at 9. Because the Court need not rely on those materials to

reach its conclusions here, and Defendant indicates separate motions in limine will be subsequently filed on these issues, the Court will not address their admissibility in ruling on summary judgment.

### ii. *There is an issue of fact as to whether Defendant performed an adequate investigation.*

Defendant asserts that its handling of Plaintiffs' claim was reasonable. Motion at 13. Defendant also asserts that its reliance on the report produced by Rimkus was reasonable, and therefore, Defendant's actions with respect to the claim were reasonable. *Id*. As noted *supra,* Defendant cites to conduct it believes supports its assertion that it acted in good faith. Defendant points to having several engineering firms ready to conduct these investigations, contacting Plaintiffs and sending Holliday, accompanied by Ford, out to inspect their home, Holliday's extensive qualifications, and having promptly communicated with Plaintiffs as to the inspection's results and denial of coverage. *Id.* at 2, 7. Defendant also asserts that, under the undisputed facts, there can be no question as to whether it had a justifiable reason for withholding payment under the policy. *Id*. at 7.

Plaintiff, however, has also provided evidence of bad faith. Plaintiffs state that despite concluding that extra moisture in the soil's composition caused the damage to Plaintiffs' home, Holliday (1) did not measure the moisture of the soil; (2) did not attempt to investigate the roof, living room wall, or make a serious attempt to investigate damage to living room crawlspace; (3) did not take a soil sample from beneath the home; and, (4) called the insurance company *on the day of inspection* to give her determination that the damage was not caused by an earthquake. Response at 8, 12. Plaintiff also points to

evidence indicating that, despite her findings that damage to the home was pre-existing, Holliday did not investigate when the cracks in the home occurred. *Id.* at 8,9. Plaintiffs uncovered broken floor joists in the area of the home where Plaintiffs allegedly complained damage had occurred. *Id.* at Ex-2, 1. Further, there is some question as to whether Defendant's experts who investigated the claims after suit was filed determined that some of the damage had, in fact, been caused by an earthquake. After all, Defendant's own expert wrote a report entitled "Earthquake Repair Estimate." *Id*. at 11.[2] *See Willis v. Midland Risk Ins. Co.,* 42 F.3d 607, 612–13 (10th Cir. 1994) (company's action "must be assessed in light of all the facts known *and knowable* concerning the claim at the time plaintiff requested [the inspection].") (emphasis added).

Viewing these facts in Plaintiffs' favor and drawing all reasonable inferences therefrom, indicates to the Court that issues of material fact exist, to be resolved by a jury. *See Whiteman v. State Farm Fire & Cas. Co*., No. CIV-16-975-D, 2018 WL 1582474, at *4 (W.D. Okla. Mar. 30, 2018) (DeGisuti, J.) (denying motion for summary judgment where the reasonableness of an earthquake inspection was at issue). Whether these facts are sufficient to ultimately prevail on a claim for bad faith is not for the Court to decide, as the Court does not weigh the evidence at the summary judgment stage. Whether Defendant breached its duty is an issue to be resolved by the finder of fact. Accordingly, Defendant is not entitled to partial summary judgment on this claim.

---

[2] Defendant's expert Battle wrote in his report that "[based] on Mr. Ford's findings, the earthquake damage he could visibly observe, was . . . ." Response at Ex-12, 3. Battle later maintained that Ford never told him of any earthquake damage, even though that is what he wrote in his report. *Id.* at 4.

c. *Standard of Decision: Punitive Damages*

Finally, Defendant moves for summary judgment on Plaintiffs' request for punitive damages.

Where a jury finds, by clear and convincing evidence, that a defendant acted with clear disregard for the rights of others, Oklahoma law provides for punitive damages. More precisely, pursuant to 23 Okla. St. Ann. § 9.1, punitive damages may be available in a bad faith suit where the insurer has either (1) recklessly disregarded its duty to deal fairly and act in good faith with its insured; (2) intentionally and with malice breached its duty to deal fairly and act in good faith with its insured; or (3) intentionally and with malice breached its duty to deal fairly and act in good faith with its insured, and the Court finds that, beyond a reasonable doubt, the insurer acted intentionally and with malice and engaged in life-threatening conduct. *Id.*

i. ***A decision barring punitive damages would be premature.***

Based on its findings *supra*, material facts exist as to whether Defendant acted in bad faith. The Court finds that the instant summary judgment record does not establish as a matter of law whether Defendant's conduct warrants the imposition of punitive damages. Defendant's conduct, at a minimum, may give rise to a finding of reckless disregard if presented to a jury; hence, any ruling on the issue of punitive damages is premature. *See Fox v. Country Mutual Ins. Co.*, Case No. CIV-17-1228-SLP (W.D. Okla. Nov. 21, 2018) (finding punitive damages claim was not barred where "disputed issues of material fact exist as to whether Defendant acted in bad faith.").

**IT IS THEREFORE ORDERED** that Defendant's Motion for Partial Summary Judgment and Supporting Brief [Doc. No. 48] is **DENIED**.

**IT IS SO ORDERED** this 24th day of September 2019.

TIMOTHY D. DeGIUSTI
Chief United States District Judge