## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

SEAN SMITH and CRYSTAL SMITH,  )
                                 )
        *Plaintiffs*,          )
                                 )
v.                                 )     Case No.:17-cv-01302-D
                                 )
CSAA FIRE AND CASUALTY     )
INSURANCE COMPANY,         )
                                 )
        *Defendant*.      )

## DEFENDANT'S TRIAL BRIEF

The theme of Plaintiffs' case is that CSAA conspired with Rimkus Consulting Group, Inc. ("Rimkus"), and its engineer to undervalue, underpay, or deny entirely all earthquake claims in Oklahoma. Plaintiffs appear to contend that Rimkus is routinely hired by insurance companies, including CSAA, to investigate earthquake claims, and routinely determines that the cause of loss is something other than earthquake. Indeed, this is far from the first time that Plaintiffs' counsel has advanced such a theory. This Court itself was presented with this approach in *Whiteman v. State Farm Fire & Cas. Co*., No. CIV-16-975-D, albeit with a *different insurer, different engineering firm* and *different engineer.* Plaintiffs contend CSAA hires Rimkus to investigate earthquake claims, and pays Rimkus large amounts of money, to report that the damage in question is not earthquake related. Plaintiffs should not be permitted to inject such highly prejudicial rhetoric at trial until they have made an evidentiary showing--outside the presence of the jury--that they can meet the minimum standards for asserting such an argument.

## BACKGROUND

On August 24, 2017, CSAA received its First Notice of Loss from the Plaintiff, Crystal Smith, stating she may have damage from an earthquake. Crystal Smith attributed the recently discovered damage in her house, which was built in 1920, to an earthquake that occurred nine months earlier, on November 7, 2016. CSAA advised that it would hire an engineer to conduct an inspection of Plaintiffs' home.  Rimkus was chosen through a random selection process.  The claims representative had never used Rimkus before.

Lisa M. Holliday, P.E., Ph.D. ("Holliday") was a senior consultant with Rimkus. CSAA had never used Holliday to investigate any of its claims before. Holliday inspected Plaintiffs' property on September 1, 2017. She found no earthquake damage, only settlement and construction defects.

On September 18, 2107, Holliday completed her engineering report and forwarded it to CSAA. The report stated that the November 7, 2016 earthquake did not cause the structural damage to Plaintiffs' residence. The report further stated that the origin of the observed damages to the floor, ceiling tiles, and driveway slab was from differential foundation movement related to volumetric soil changes and poor construction techniques at the foundation.

On September 19, 2017, CSAA's adjuster called and wrote a letter to Plaintiffs denying coverage and explaining that the damage was determined to be from settling and improper construction to the foundation.

## ARGUMENT AND AUTHORITIES

Testimony and evidence related to Rimkus reports, other than the one on the Smith's home, have no connection or relevance to Plaintiffs' breach of contract claim. The Oklahoma Supreme Court has explained exactly what a party must do in order to prove a breach of contract claim based on an insurance policy. An insurance policy is a contract. *American Economy Ins. Co.* v. *Bogdahn,* 2004 OK 9, ¶ 8, 89 P.3d 1051, 1054.   The elements of a breach of contract claim are: (1) formation of a contract; (2) a breach of that contract; and (3) actual damages suffered from that breach. *See Digital Design Group, Inc.* v. *Information Builders, Inc.,* 2001 OK 21, ¶ 33, 24 P.3d 834, 843. In defining what qualifies as "a breach," the Supreme Court has explained that a breach of contract "is a material failure of performance of a duty arising under or imposed by agreement." *Lewis* v. *Farmers Ins. Co.,* 1983 OK 100, ¶ 5,681 P.2d 67, 69.[1]

Engineering reports for other insureds and other insurers have no possible relevance to any element that Plaintiffs must prove to establish their breach of contract claim: (1) other engineering reports would not have any connection to whether a contract was formed; (2) other engineering reports would have no connection to whether Defendants materially failed to meet their duty imposed by their contract to pay Plaintiffs' claim for alleged earthquake damages to *their residence;* and (3) other engineering reports would have no connection to whether Plaintiffs suffered actual damages due to a breach. To allow

---

[1] Contracts are binding only upon those who are parties thereto and are enforceable only by the parties to a contract. *Drummond* v. *Johnson,* 1982 OK 37, ¶ 25,643 P.2d 634, 639. Plaintiffs are not parties to these other contracts and therefore have no enforceable interest in them.

evidence of other reports would not only allow irrelevant material into the record, it would confuse the jurors, who might erroneously conclude that they could find Defendants liable for breach of contract based on the contents of engineering reports of damage to other properties.

Further, those other reports would necessarily involve all sorts of factors that are different from the report authored by Holliday in the instant case. They would concern different earthquakes, with different epicenters and different intensities. They would concern different structures, on different types of soil. They would concern different types of damages that might have resulted from different causes than an earthquake.  As a result, any use of other reports would require a mini-trial for each report, because Defendants would be entitled to show the relevant differences between any other report and the instant case, including differences in the structures involved, the intensity of the different earthquakes, the different soil structures, the different damages, and so on.

Much of the necessary information would be in the hands of other insurers, which are not parties to this action, and would involve information which has not been produced in discovery. It would be unfair and prejudicial to Defendant to allow Plaintiffs to argue that because a different report prepared by Rimkus found no earthquake damage, that must mean that Defendants requested a report on Plaintiffs' property because Defendants expected the same result. To allow the reports to be introduced without allowing Defendants the opportunity to challenge any argument Plaintiffs' would be unfair and prejudicial, and it would delay the resolution of this case and confuse the jury.  A mini-trial would be required for every report Plaintiffs were allowed to introduce to determine

whether the report was accurate in each specific case. The fact that Holliday determined in this report that an earthquake did not cause significant damage to that structure is not any more relevant to Plaintiffs' claim than if she had found the earthquake caused significant damage. Certainly, Plaintiffs would object if Defendant was to introduce engineering reports concerning other claims and other insureds as evidence that Plaintiffs' home did not suffer earthquake damage, and so Plaintiffs should also be precluded from introducing evidence hinging upon this same argument.

These reports similarly have no connection or relevance to Plaintiffs' bad faith claim, because a bad faith claim focuses on the particular insurance claim, *Hanafee* v. *State Farm Mut. Auto. Ins. Co.,* 2011 WL 13232202, at *1 (N.D. Okla. 2011), and the facts of the particular case. *Beers* v. *Hillary,* 2010 OK CIV APP 99, n. 8, 241 P.3d 285.

The Oklahoma Supreme Court first recognized the tort of bad faith in *Christian v. American Home Assur. Co.*, 522 P.2d 899 (Okla. 1977). "[A]n insurer has an implied duty to deal fairly and act in good faith with its insured and . . . the violation of this duty gives rise to an action in tort." *Id*. at 904. The duty of good faith does not require an insurer to pay every claim made by an insured, and there may be valid disagreements between the parties. *Id.* at 905. *See also, Badillo v. Mid Century Ins. Co.,* 2005 OK 48 ¶ 28, 121 P.3d 1080, 1093 ("[t]he essence of an action for breach of the duty of good faith and fair dealing 'is the insurer's unreasonable, bad-faith conduct'"); *Skinner v. John Deere Ins. Co.*, 2000 OK 18, ¶ 17, 998 P.2d 1219, 1223 (recognizing that insurer "acted reasonably as a matter of law and, thus, summary judgment was proper"); *Navarez v. State Farm Mut. Auto. Ins. Co.,* 1999 OK CIV APP 92 ¶ 13, 989 P.2d 1051, 1053 (citing *McCorkle v. Great Atlantic*

*Insurance Co.*, 1981 OK 128, 637 P.2d 583) ("The essence of the tort of bad faith, as it is recognized in Oklahoma, is the unreasonableness of the insurer's actions").

*Badillo* also clarified that "bad faith" requires a showing of "more than simple negligence." *Badillo* at 1094. This point was recently reiterated by the Oklahoma Supreme Court when it held that "a party prosecuting a claim of bad faith carries the burden of proof and must plead all of the elements of an intentional tort." *Garnett v. Government Employees Ins. Co.*, 186 P.3d 935, 944 (Okla. 2008) (Emphasis added). Thus, to prove a *prima facie* case of bad faith against CSAA, Plaintiffs must establish more than just a mistake or negligence.

In an effort to prove CSAA's investigation of Plaintiffs' earthquake claim was unreasonable, Plaintiffs have attacked Rimkus and have erroneously alleged that Rimkus is biased, that CSAA knows that Rimkus is biased, and that CSAA purposely uses Rimkus to investigate earthquake claims in Oklahoma, knowing that Rimkus will determine the damage in question is not earthquake related. Rimkus' structural engineer, Holliday, is highly qualified and credentialed. Her Ph.D. dissertation while at the University of Oklahoma ("OU") addressed earthquakes and the seismic vulnerabilities of residential structures. She served as a professor at OU for more than eight (8) years before joining Rimkus fulltime. Steve Ford, who is a structural engineer expert witness also holding a Ph.D., testified that Holliday was more than qualified to determine the cause of damage at Plaintiffs' home. Cindi Miles, a claims handling expert witness, echoed Ford's opinion regarding Holliday's credentials relating to investigating an earthquake related claim and

opines that it was appropriate for CSAA to rely on Holliday's Report of Findings in denying Plaintiffs' claim.

The facts against Plaintiffs' theory that CSAA's retention of Rimkus constitutes a biased investigation, and therefore evidence of bad faith, could not be much worse for Plaintiffs. Prior to Plaintiffs' claim, CSAA's adjustor had never used Rimkus. The adjustor testified that the selection of Rimkus was purely random on his part and Rimkus was only selected because they were the next engineering firm on the list. Rimkus selected Holliday to inspect Plaintiffs' home, not CSAA. Holliday is an expert on damage caused by earthquakes to residential structures having written her Ph.D. dissertation on that subject. Holliday's inspection of Plaintiffs' home was her first earthquake inspection for CSAA, and she is not concerned with the business relationship between Rimkus and CSAA as it relates to preparing an engineering report. Holliday did not deny this claim or make any other decisions regarding this claim. It was CSAA's adjustor who denied Plaintiffs' claim.

As stated in *City National Bank and Trust Co.* v. *Jackson National Life Insurance,* 1990 OK CIV APP 89, ¶ 18, 804 P .2d 463, 468: "We therefore hold that before the issue of insurer's alleged bad faith may be submitted to the jury, the Trial Court must first determine, *under the facts of the particular case* and as a matter of law, whether insurer's conduct may be reasonably perceived as tortious." (Emphasis added). Determining whether an insurer committed bad faith concerns an examination of the conduct of the insurer with respect to the particular insurance claim at issue over the time period when the insurer was requested to perform its contractual obligation to the insured. That is because the decisive question is whether the insurer "had a good faith belief, at the time its performance was

requested, that it had a justifiable reason for withholding payment under the policy." *Buzzard* v. *McDaniel,* 1987 OK 28, ¶ 10, 736 P.2d 157, 159.  "The facts of the particular case" do not involve other reports addressing other insurance claims for other properties. As explained above, the other reports are irrelevant, and their use would require mini-trials concerning each report that would confuse the jury and delay resolution of this case.

Plaintiffs' unsupported conspiracy claim necessarily relies on evidence which is simply inadmissible.  Plaintiff would argue that CSAA has mishandled their claims based on CSAA's handling of claims other than Plaintiffs', and that CSAA has used Rimkus previously to provide biased opinions to support a scheme of denying, undervaluing, or underpaying earthquake claims. Such testimony or evidence should not be allowed at trial, because it is speculative, conclusory, unsubstantiated, irrelevant, and highly prejudicial.

This case concerns an allegation that CSAA handled Plaintiffs' earthquake claim in bad faith. This case does not concern other insureds or other claims or statements regarding anyone other than Plaintiffs or any claim other than Plaintiffs. Any such extrinsic evidence is completely irrelevant and should be excluded pursuant to FED. R. EVID. 402. Whether CSAA used Rimkus to investigate other insureds' earthquake claims is completely irrelevant, because the undisputed evidence shows that CSAA did not have the "scheme" with Rimkus alleged by Plaintiffs, whereby CSAA would use the services of Rimkus as a biased expert to facilitate the undervaluing, underpayment, or denial of Oklahoma earthquake claims.

Plaintiffs have listed as witnesses Barbara and John Fox and Donna Iser, clients of Plaintiff's counsel who also sued insurance companies on similar theories arising from

8

earthquake claims.  Any such testimony is extrinsic and irrelevant to the issues of whether CSAA breached its insurance contract with Plaintiffs and whether CSAA breached the duty of good faith and fair dealing. *See* FED. R. EVID. 401-402. Rimkus' conduct is not on trial in this case.  Moreover, to permit Plaintiffs to parade witness after witness before the jury to talk about other insurance claims not involving Plaintiffs, or an unproven scheme amongst Rimkus and CSAA, would constitute inadmissible extrinsic evidence which is irrelevant and highly prejudicial to CSAA.

Plaintiffs will likely seek to introduce such evidence to make a showing of a pattern and practice of bad faith on the part of CSAA.  Plaintiffs allege that CSAA has engaged in a pattern and practice of bad faith by hiring engineers working for Rimkus Consulting Group more than once. Plaintiffs essentially allege that Rimkus' professionally licensed engineers intentionally mispresented findings relating to Plaintiffs' home, and that Plaintiffs' summaries of prior reports support this, but that the "correctness" of the prior reports is irrelevant. These allegations lack any substance and are meant only to inflame the jury's passions against Defendant despite the absence of any wrongdoing. Moreover, Plaintiffs' contention that a misrepresentation may be proved without any reference to the *correctness* of the representation defies logic and is simply an attempt to avoid analysis under the rules of evidence.

To introduce pattern evidence, they would have to show a business practice or repeated incidents of misconduct to establish a prima facie case of unfair insurance practices. *See Mead v. Burns*, 509 A.2d 11, 16 (Conn. 1986) (claims of unfair settlement practices against insurance companies require a showing of more than a single act of

insurance misconduct); *Casson v. Nationwide Ins. Co.*, 455 A.2d 361 (Del. Super. Ct. 1982) (to constitute an unfair practice, conduct must be performed with such frequency as to indicate general business practice); *United States Liability Ins. Co. v. Johnson & Lindberg, P.A.*, 617 F.Supp. 968 (D. Minn. 1985) (insureds had no claim for unfair insurance practices absent a showing of a "general business practice" of unfair conduct; *Safeco Ins. Co. v. McAllister*, 785 F.Supp. 119 (D. Mont. 1990) (pattern and practice bad faith claim failed where insureds did not show conduct sufficient to show a frequent business practice); and *Dano v. Royal Globe Ins. Co.,* 451 N.E.2d 488 (N.Y. 1983) (even if the unfair insurance practices legislation could be read to create a private cause of action, Court found no evidentiary proof of a general business practice on part of insurer).

Next, Plaintiffs would have to make a showing that CSAA treated unfairly multiple insureds in substantially similar situations. *See Baker v. CNA Ins. Co.,* 123 F.R.D. 322, 328-329 (D. Mont. 1988) (upholding insurer's objection to scope of discovery requests "until such time as [plaintiff] satisfies the burden of establishing sufficient similarity"); *State Farm Mut. Auto. Ins. Co. v. Stephens*, 425 S.E.2d 577, 585 (1992) (court upheld objections to discovery requests seeking information on all bad faith, unfair trade or settlement practices and excess verdict claims over a ten year period and data on all complaints filed against the insurer with state regulators and held "the logical approach in this case would be initially to narrow the scope of the interrogatories to other similar claims filed against [the insurer] in West Virginia").

Finally, Plaintiffs would have to make a showing of CSAA's ill intent regarding Plaintiffs independently of reference to events or conduct occurring after CSAA made

payment on Plaintiffs' claim. *See National Security Fire & Cas. Co. v. Coshatt*, 690 So.2d 391, 396 (Ala. 1996) (Trial court did not allow evidence as to claims more than three years removed from the plaintiff's claim). Plaintiffs have not established any of these elements and should therefore not be permitted to assert any evil scheme or conspiracy amongst CSAA, Rimkus, or Rimkus's engineers.

The mere fact that CSAA hired engineers to perform inspections on more than one occasion, and paid them for their time and expertise, cannot rationally support any inference that CSAA has engaged in a pattern and practice of denying claims *in bad faith*. Moreover, Plaintiffs' pattern and practice theory, and the evidence available to them, fall far short of the mark for bad faith claims based on pattern and practice evidence set forth in *Vining on behalf of Vining v. Enterprise Financial Group, Inc.,* 148 F.3d 1206 (10th Cir. 1998) (applying Oklahoma law).

In *Vining,* the plaintiff demonstrated "a deliberate, willful pattern of abusive conduct by [the insurer] in handling claims under its life insurance policies." *Id* at 1214. That pattern of abusive conduct was that the insurer would "rescind life insurance policies issued on a guaranteed basis as soon as claims were made." *Id.* Those rescissions would be based on "the grounds that the insured had made material misrepresentations on the insurance application regardless of whether [the insurer] would have declined to write the policy had it known of that information at the time the policy was written." *Id.* Moreover, the plaintiff introduced evidence showing that the insurer "engaged in a systematic, bad faith scheme of canceling policies without determining whether it had good cause to do so." *!d.* The Tenth Circuit held that such conduct "constitute[ed] bad faith regardless of whether [the

insurer] legitimately might have been able to contest Vining's claim" because the evidence shows that the insurer did not in fact "dispute coverage in good faith." *Id.*

The evidentiary lynchpin in *Vining,* and what the instant Plaintiffs' case lacks, is evidence of habit under 12 O.S. § 2406. A habit is a "regular practice of meeting a particular situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, or of giving a hand-signal for a left tum, or of alighting from railway cars while they are moving." *Us. v. Serrata,* 425 F .3d 886, 906 (10th Cir. 2005). The doing of the habitual acts may become semi-automatic." *Id.* (citing *Camfield* v. *City of Oklahoma City,* 248 F .3d 1214, 1232 (10th Cir.2001) (internal quotation marks omitted). Habit evidence has also been likened to "reflex behavior in a specific set of circumstances." *Perrin* v. *Anderson,* 784 F .2d 1040, 1046 (10th Cir. 1986). In *Vining,* the "reflex" or "semi-automatic" action was the adjuster's practice of *"never* pay[ing] a claim if she had any reason to doubt whether a person's medical history was inconsistent with the health disclaimer" in the insurance application. 148 F.3d at 1211. Additionally, the insurer's training manual in *Vining* encouraged agents "to maximize profit by overstating the actual monthly premium that should be charged and by secretly increasing the actual amount of monthly payments the customer agrees to pay." *Id.* In the instant case, Plaintiffs have no evidence comparable to that introduced in *Vining* showing that any of CSAA' actions were so reflexive or semiautomatic as to constitute a habit. As such, there is no foundation for the admission of any Rimkus engineering reports as habit evidence under 12 O.S. § 2406. The reports themselves cannot support a finding of *CSAA'* reflexiveness or automation as they identify the actions and findings of individual engineers, not those of CSAA. The

12

reports further fail to support a finding of reflexiveness as each of them deals with a different claim and involves different properties, varying conclusions, and varying distances from the epicenters of different earthquakes of differing magnitudes. Because the reports do not constitute habit evidence under 12 O.S. § 2406, they should not be admitted. In an attempted end-run around 12 O.S. § 2406, Plaintiffs argue that the reports are admissible to show Rimkus' bias. Generally, "[b]ias signifies a witness' interest in the outcome of the case, including friendly or hostile association with one of the parties which could induce him to distort or falsify his testimony." *Braden* v. *Hendricks,* 1985 OK 14, 695 P.2D 1343, 1348.  This argument must fail however, because (1) Rimkus will not be a witness in this case so Rimkus may not be impeached, and (2) any such impeachment evidence is excluded by specific provisions of the evidence code. As to the first point, only witnesses may be impeached. *See* 12 O.S. § 2607. Plaintiffs have not listed a corporate representative of Rimkus as a witness, therefore Rimkus as an entity will not testify at trial.

Here, Plaintiffs contend that each of the reports are either intentional misrepresentations or probative of bias. Both of those contentions go directly to the credibility of Rimkus. In light of this, the fact that the reports undeniably qualify as extrinsic evidence showing "specific instances of the conduct" of Rimkus means that the reports fall squarely within the prohibition in 12 O.S. § 2608(B) and so may not be introduced as evidence of bias or evidence of truthfulness.

Throughout this case, Plaintiffs have consistently presented unsupported arguments in their briefing of an evil scheme between CSAA and Rimkus to undervalue, underpay, or deny earthquake claims in Oklahoma. Plaintiffs have attempted to demonize Rimkus

and CSAA, arguing that Rimkus has a known reputation for lowballing these claims, as well as a reputation of providing the insurance company with a "purchased," biased expert opinion that minimizes or negates any covered damage. To the extent Plaintiffs are able to establish any such "reputation" of Rimkus, a feat they have not accomplished, they cannot impute any alleged bad faith actions of Rimkus on CSAA.

Certainly, if Plaintiffs could not use character evidence of Rimkus to show that they acted in conformance with a character trait on any particular occasion, they could not use character or reputation evidence of Rimkus or to show that CSAA acted in conformance with their reputation or character. CSAA's conduct may only be assessed on CSAA's actions, not on the actions or reputation of others. To allow such evidence, statements, or argument would violate the scope of Rule 404 and would cause CSAA unfair prejudice. *See* FED. R. EVID. 403.

Nor should the Court permit Plaintiffs to introduce evidence of habit relating to Rimkus. The problem with admitting this evidence as to Rimkus is that it is not party to this case. Its conduct is not an issue for the jury to determine, and such evidence, arguments, or statements are irrelevant to the issue of whether CSAA breached the insurance contract or breached the duty of good faith and fair dealing as to Plaintiffs' claim. *See* FED. R. EVID. 401, 402. To allow such evidence would confuse the jury and unfairly prejudice CSAA, as the jury would likely impute the habits of Rimkus to CSAA. *See* FED. R. EVID. 403.

## CONCLUSION

In summary, Plaintiffs simply cannot support a vast conspiracy between CSAA and Rimkus.   There are no facts and no inferences that could reasonably lead to such a conclusion.   Plaintiffs should not be permitted to inject such highly prejudicial rhetoric at trial as they cannot meet the minimum standards for asserting such an argument.

Respectfully Submitted,

s/ Gerard F. Pignato
Gerard F. Pignato, OBA No. 11473
RYAN WHALEY COLDIRON JANTZEN
  PETERS & WEBBER PLLC
900 Robinson Renaissance
Building 119 North Robinson
Avenue Oklahoma City,
Oklahoma 73102 Telephone:
                405-239-6040
Facsimile:    405-239-6766
Email:    jerry@ryanwhaley.com

**ATTORNEYS FOR DEFENDANT**

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Steven S. Mansell, Esquire
Mark A. Engel, Esquire
Kenneth G. Cole, Esquire
M. Adam Engel, Esquire

s/ Gerard F. Pignato
For the Firm