# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

SEAN SMITH and CRYSTAL SMITH, )
)
*Plaintiffs*, )
)
v. ) Case No. CIV-17-1302-D
)
CSAA FIRE AND CASUALTY )
INSURANCE COMPANY and LISA )
HOLLIDAY, )
)
*Defendants*. )

## O R D E R

Before the Court is Plaintiffs' Motion in Limine [Doc. No. 86]. Defendant CSAA Fire and Casualty Insurance Company ("Defendant" or "CSAA") has filed a Response [Doc. No. 98] in opposition, to which Plaintiffs have replied [Doc. No. 102]. The matter is fully briefed and at issue.

## BACKGROUND

This case arises from an insurance dispute involving alleged damage to Plaintiffs' home. The parties disagree as to what caused the damage to the home. Plaintiffs brought this action alleging breach of contract and bad faith.[1]

By their motion Plaintiffs ask the Court to: (1) prevent Defendant CSAA from referencing or suggesting that Plaintiffs bear the burden of demonstrating the damage to their home was caused by the earthquake rather than by faulty construction or soil settling;

---

[1] The facts relevant to this case have been fully detailed elsewhere. *See* Order [Doc. No. 69].

(2) limit Defendant CSAA's experts' trial testimony to the scope of their written reports; (3) exclude all references to Plaintiffs' consulting expert Kelly Parker; (4) prevent any reference or suggestion relating to Plaintiffs renting their Cushing home; (5) prohibit Defendant CSAA from asserting reasons for denying Plaintiffs' insurance claim not raised at the time of denial; and (6) exclude Steve Ford's inspection video. *See* Motion at 1.

## STANDARD OF DECISION

Although the Federal Rules of Evidence do not "explicitly authorize *in limine* rulings," they have become standard practice based on the district court's "inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing FED. R. EVID. 103; *cf.* FED. R. CRIM. P. 12(e)). A motion in limine is a "pretrial request that certain inadmissible evidence not be referred to or offered at trial." *Edens v. The Netherlands Ins. Co.*, 834 F.3d 1116, 1130 (10th Cir. 2016). The purpose of a motion in limine is to "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008) *aff'd*, 402 Fed. App'x. 337 (10th Cir. 2010).

"[T]he evidence must be inadmissible on all potential grounds" to be excluded on a motion in limine. *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). This is because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007). This high standard is necessary so that "questions of foundation, relevancy and potential prejudice may be resolved in [the] proper context" of trial.

*Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Accordingly, in the context of motions in limine, "the district court may change its ruling at any time for whatever reason it deems appropriate." *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995); *see also Luce*, 469 U.S. at 41–42 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

## DISCUSSION

### I. *Plaintiffs' position on several matters is unopposed, and Plaintiffs' requests as to these matters are therefore granted.*

#### A. Scope of Expert Trial Testimony

Plaintiffs seek to limit the scope of Defendant CSAA's experts' trial testimony. They ask that the testimony be limited to that detailed in expert reports, unless such expert was deposed. Motion at 5. In response, Defendant concedes that Cindy Miles' testimony should be limited to her written report. *See* Response at 4. Defendant then, however, misinterprets Plaintiffs' position on this issue, claiming that Plaintiffs are seeking to exclude the deposition testimony of David Battle and Steve Ford. *See id.* Plaintiffs clarify in their Reply that all they seek to exclude is any additional testimony not yet rendered by Defendant's experts in either their written reports or deposition testimony. *See* Reply at 3. Considering Plaintiffs' clarifications, their motion on this point is granted.

#### B. Kelly Parker

Plaintiffs seek to prohibit Defendant from referencing Plaintiffs' consulting expert Kelly Parker ("Parker"), whom they hired in anticipation of litigation. Parker is not

expected to be called as a witness at trial. Motion at 6. Defendant concedes the rules preclude any mention of Parker. *See* Response at 6. Given the concession, Plaintiffs' motion is granted on this issue.

### C. Steve Ford's Inspection Video

Finally, Plaintiffs seek to exclude an inspection video made by Steve Ford, Defendant's engineering expert, during an inspection of the home in which attorneys for both sides were present. Motion at 15–16. Defense counsel assured Plaintiffs' counsel that the video was only being made because Mr. Pignato, another defense attorney, was not present at the inspection; the video would be used to inform Mr. Pignato and "would not be used as evidence." *Id.* at 16. Defendant then listed the inspection video for the first time on its list of exhibits in the Final Pretrial Report. *Id.* Defendant now concedes Plaintiffs' position is correct, *see* Response at 24, and Plaintiffs' motion is therefore granted. Steve Ford's inspection video is excluded.

## II. *Plaintiffs' disputed requests are granted in part and denied in part.*

Defendant CSAA disputes the remainder of Plaintiffs' requests. First, Plaintiffs move to exclude any reference or suggestion that Plaintiffs bear the burden of proving at trial that the structural damage was caused by the earthquake. Motion at 2.

### A. Burden of Proof

Determining who bears the burden of proof in this case requires establishing the nature of the insurance policy; namely, whether the policy at issue is an "all-risks" or "named-perils" policy.

Plaintiffs claim the policy at issue is an "all-risks" policy, which would place the initial burden on the insured to prove, by a preponderance of the evidence, that the structural damage to their home was the result of a covered peril. *See Okla. Sch. Risk Mgmt. Tr. v. McAlester Pub. Sch.*, 457 P.3d 997, 1003 (Okla. 2019); *see also Tex. E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 564 (10th Cir. 1978) (interpreting Oklahoma law). The burden would then shift to the insurer to prove that the claimed loss—here, earthquake damage—is "excluded by some language set out in the policy." *Id.*

Defendant CSAA counters that the policy between the parties is partly a "named-perils" policy and, therefore, it is "Plaintiffs' burden [] to show that their claimed loss was caused by a named [] peril," here, an earthquake. Response at 1. Defendant asserts that the insurance contract is an "all-risk/named-peril[s] hybrid." *Id.* at 2. More specifically, parts of the policy may be "all-risk," but the earthquake policy endorsement—the one relevant here—is a named peril endorsement requiring a different burden of proof. *Id.* at 3.

Certainly, Plaintiffs' insurance policy generally covers "risk of direct physical loss to property described in Coverages A and B," with some exclusions. *See* Motion, [Doc. No. 86-1], at 162–65. But it is likewise the case that earthquake damage is addressed elsewhere and is specifically covered. *See* Response, Ex. 1 [Doc. No. 98-1] ("We insure for direct physical loss to property covered under Section I caused by earthquake….").

A leading treatise explains the two types of policies as follows:

> "Named perils" or "specific perils" policies provide coverage only for the specific risks enumerated in the policy and exclude all other risks. "All-

> Risk" policies provide coverage for all risks unless the specific risk is excluded.
>
> The purpose of an "All-Risk" policy is to insure losses when the cause of the loss is unknown or the specific risk was not explicitly contemplated by either party. This purpose is, in part, accomplished by a mechanism of burden-shifting as to which party bears the risk of an unexplained or uncontemplated loss.
>
> Because an "All-Risk" policy is considered by many jurisdictions to provide broad and comprehensive coverage, some courts may conclude that the term "All-Risk" may raise the insured's expectations that the policy provides coverage for all losses that are not intentional or expected. However, this expectation should only be enforced by court if it is reasonable in light of the actual policy provisions or if there was a promise of coverage that the insurer may have induced.

7 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 101:7 (3d ed. 1997); *accord Switzer v. State Farm Fire & Cas. Co.,* No. CIV.04 279 T, 2007 WL 841111, at *3–4 (W.D. Okla. Feb. 7, 2007). Defendant cites to federal caselaw applying the law of several states, not including Oklahoma, for the proposition that an insurance contract may be a hybrid of both. *See N. Am. Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA, Inc.*, 413 F. Supp. 2d 295 (S.D.N.Y. 2006) (insurance policy may provide both all-risks and named-perils coverage). Nevertheless, the Oklahoma Supreme Court has cited favorably to the Second Circuit, interpreting New York law, explaining the different types of insurance policies. *See McAlester Pub. Sch.*, 457 P.3d at 1002 n.12 (citing *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006)). The Court is persuaded, guided by the underlying logic in these decisions, that an insurance policy under Oklahoma law may, at once, provide both types of coverage.

Specifically, where earthquake damage is concerned, the Court finds the policy is more akin to a named-perils policy. Therefore, "the burden [is on] the insured to show the existence of particular conditions." *Underwriters at Lloyds v. Cherokee Lab., Inc.*, 288 F.2d 95, 98 (10th Cir. 1961) (collecting cases from the Oklahoma Supreme Court where coverage was limited to specific perils named in the policy). Since a named-perils policy requires the insured to prove that the loss was caused by a covered peril, Plaintiffs' motion is denied on this issue.

### B. Plaintiffs' Rental of Cushing Home

Next, Plaintiffs seek to prevent Defendant from making any reference related to Plaintiffs having rented out their Cushing home—the property at issue in this case. Motion at 7. After filing this lawsuit, Plaintiffs rented their home in Cushing to their friends. *Id.* According to Plaintiffs, the renting of the house "has no bearing on the policy benefits [Plaintiffs] are entitled to under the policy," so any reference to this fact should be excluded as irrelevant and likely to confuse the jury. *Id.*

Defendant CSAA counters that such evidence is "relevant and not prejudicial." Response at 6. One of the reasons Plaintiffs supposedly moved out of the house in Cushing was because they no longer felt safe living in the house. *Id.* According to Defendant, Plaintiffs did not disclose to the new tenant their alleged "fears of believing [the] house was not safe to live in" due to the structural damage, which shows how little they feared living in the house. *Id.* at 6–7.

In their reply, Plaintiffs claim that they did in fact disclose the prevalent damage in the house to the present tenant. *See* Reply at 7. Additionally, the friend to whom they leased

7

the house works in construction and is "well aware of the risks associated with the house." *Id.* at 8.

Federal Rule of Evidence 401 states that evidence is relevant if it has "any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." FED. R. EVID. 401. This case is about benefits which may be owed to Plaintiffs as a result earthquake damage allegedly sustained by the Cushing home. Reply at 8. Whether Plaintiffs were afraid to live in the home, however, focuses on a collateral matter irrelevant to the core issues in the case. Plaintiffs' rental of their house to a third-party, and what may or may not have been communicated to the tenants, have no bearing on any amount they may be owed under the insurance policy. Because this information has no tendency to make a fact of consequence more or less probable, any reference or suggestion that Plaintiffs are renting their Cushing home is excluded, and Plaintiffs' motion is granted on this issue.

### C. Subsequent Reasons for Denying Plaintiffs' Insurance Claim

Plaintiffs also seek to prohibit Defendant from arguing or otherwise mentioning that it denied Plaintiffs' insurance claim, in whole or in part, "on the basis of previously unarticulated alleged reasons outside the denial letter." Motion at 15. Among these unarticulated reasons are Plaintiffs' "failure to cooperate or otherwise comply with all conditions precedent to recovery under the subject insurance policy," and "concealing pre-suit evidence from CSAA that was not discovered by CSAA until post-suit." *Id.* In support, Plaintiffs cite numerous cases outlining the "mend the hold" doctrine, and also point to the

8

holding in *Buzzard v. Farmers Insurance Co.*, 824 P.2d 1105 (Okla. 1991) [hereinafter *Buzzard II*]. *See* Motion at 8–15.

Defendant CSAA first counters that, if Plaintiffs are asking the Court to preclude any references to information or documentation obtained after the claim was denied, then Plaintiffs should be precluded in the same way. Response at 7. In the alternative, Defendant asserts that the "mend the hold" doctrine is not applicable under Oklahoma law and the holding in *Buzzard II* is limited to cases where bad faith is the sole legal theory asserted. *Id.* at 10.

The "mend the hold" doctrine was established in 1877 in the case of *Ohio & Mississippi Railway Co. v. McCarthy*, 96 U.S. 258 (1877). The Court in *McCarthy* stated:

> Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted to mend his hold.

*Id.* at 267–68. Plaintiffs point to the case of *Haberman v. The Hartford Insurance Group*, 443 F.3d 1257 (10th Cir. 2006), to show how the reasoning underlying the doctrine has been applied by the Tenth Circuit. Motion at 10. Plaintiffs cite a single case of state-law authority: *Morrison v. Atkinson*, 85 P.2d 472 (Okla. 1906). *See* Motion at 14.

Contrary to Plaintiffs' assertions, the "mend the hold" doctrine has yet to be adopted by the Oklahoma Supreme Court in a relevant context. *See Genzer v. James River Ins. Co.*, 934 F.3d 1156, 1165 (10th Cir. 2019) ("But the [Oklahoma Supreme Court] has never endorsed the doctrine as a constraint on an alleged nonperforming party in a breach-of-contract action changing its prelitigation defenses.").

9

"As a federal court sitting in diversity, [the Court] must apply Oklahoma law as it exists and not opine on the merits of a doctrine that Oklahoma courts haven't seen fit to adopt." *Genzer,* 934 F.3d at 1165. As the Tenth Circuit identified, under relevant state law, the doctrine has been limited to barring "positional shifts between trial and appeal." *Id.* Additionally, while the *Haberman* case may "resemble the prelitigation mend-the-hold doctrine," it "do[es] not invoke it." *Id.* (discussing *Haberman*, 443 F.3d at 1270–71).

Nevertheless, Plaintiffs appropriately rely on the Oklahoma Supreme Court's holding in *Buzzard II*, a bad faith insurance case, to support their position. Motion at 11–15. Under *Buzzard II*, "[t]he decisive question [in a bad faith case] is whether the insurer had a 'good faith belief, *at the time its performance was requested*, that it had justifiable reason for withholding payment under the policy.'" *Buzzard II*, 824 P.2d at 1109 (quoting *Buzzard v. McDanel*, 736 P.2d 157, 159 (Okla. 1987) [*Buzzard I*]) (emphasis in original)). Therefore, under *Buzzard II*, the focus of a bad-faith claim is "[t]he knowledge and belief of the insurer during the time period the claim is being reviewed." *Id.*

Defendant misconstrues Plaintiffs' position as to *Buzzard II*'s reach. As noted above, Plaintiffs are seeking to exclude any mention of previously unarticulated reasons for denying their insurance claim. *See* Motion at 15. Plaintiffs are not, as Defendant contends, asking the Court to limit post-suit materials or documentation. *See* Reply at 3. Thus, Defendant's argument that it must be allowed to offer evidence of its post-suit investigation is moot since Plaintiffs do not ask that such evidence be excluded.

The Tenth Circuit recently offered a helpful interpretation of what *Buzzard II* requires in the bad-faith context:

> *Buzzard* holds that under Oklahoma law an insurance bad faith claim is premised on the actual reason the insurance company gave when it denied the claim, not a post-denial rationalization. Therefore, evidence that supports a post-denial rationalization, rather than the evidence that the insurance company actually relied on when initially denying a claim, is inadmissible under *Buzzard*.

*Thomas v. Farmers Ins. Co., Inc.*, 774 F. App'x 430, 432 (10th Cir. 2019). The "post-denial rationalizations" offered by Defendant in this case include the notion that Plaintiffs concealed pre-suit evidence and failed to cooperate during the claim-handling process. *See* Motion at 12.

Because Plaintiffs seek to prohibit Defendant from arguing or otherwise mentioning previously unarticulated reasons for denying the insurance claim, the Court, consistent with *Buzzard II*, grants Plaintiffs' Motion on this issue and limits Defendant's evidence in this narrow context to the reasons found in the denial letter.

## CONCLUSION

In sum, and subject to the requirements of the Federal Rules of Evidence and subsequent developments, the Court's rulings are as follows, in the order addressed by Plaintiffs' Motion:

1. Burden of Proof—Denied;
2. Scope of Expert Trial Testimony—Granted;
3. Testimony of Mr. Kelly Parker—Granted;
4. Plaintiffs' Rental of Cushing Home—Granted;
5. Subsequent Reasons for Denying Plaintiffs' Insurance Claim—Granted; and
6. Mr. Steve Ford's Inspection Video—Granted.

11

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion in Limine [Doc. No. 86] is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

**IT IS ORDERED** this 12th day of June, 2020.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge