## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

SEAN SMITH and CRYSTAL SMITH,   )
  )
*Plaintiffs,*   )
  )
  v.   )   Case No. CIV-17-1302-D
  )
CSAA FIRE AND CASUALTY   )
INSURANCE COMPANY and LISA   )
HOLLIDAY,   )
*Defendants.*   )

## O R D E R

Before the Court is Defendant CSAA Fire and Casualty Insurance Company's Motion in Limine [Doc. No. 93]. Plaintiffs filed a Response [Doc. No. 101] in opposition. The time within which Defendant could have replied has expired, and no reply was filed. The matter is at issue.

## BACKGROUND

This case arises from an insurance dispute involving alleged damage to Plaintiffs' home. The parties disagree as to what caused the damage to the home. Plaintiffs brought this action alleging breach of contract and bad faith.[1]

In preparing for trial, Defendant has filed the present motion in limine, asking the Court to exclude all evidence and testimony regarding the following matters: (1) Oklahoma's Unfair Claims Settlement Practices Act; (2) Defendant's employees not

---

[1] The Court assumes the parties' familiarity with the facts of this case, and they will not be restated here. A more detailed rendition of the background facts can be found in the Order [Doc. No. 69] denying a Motion for Partial Summary Judgment.

travelling to Oklahoma to testify at trial; (3) the "Golden Rule"; (4) what is "fair" or "reasonable"; (5) reserves set by Defendant; (6) reasons to pay a claim or pay more on a claim; (7) Defendant's profit-sharing plan; (8) that Defendant owes the "benefit of the doubt" to its insured; (9) other claims or lawsuits against Defendant; (10) punitive damages in the first stage of trial; (11) other Rimkus reports; (12) Plaintiffs' alleged litigation-induced distress; (13) the Oklahoma Insurance Commissioner's Earthquake Insurance Bulletin; and (14) media coverage of the November 7, 2016, earthquake.

## STANDARD OF DECISION

Although the Federal Rules of Evidence do not "explicitly authorize *in limine* rulings," they have become standard practice based on the district court's "inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing FED. R. EVID. 103; *cf.* FED. R. CRIM. P. 12(e)). A motion in limine is a "pretrial request that certain inadmissible evidence not be referred to or offered at trial." *Edens v. The Netherlands Ins. Co.*, 834 F.3d 1116, 1130 (10th Cir. 2016) (quoting BLACK'S LAW DICTIONARY (10th ed. 2014)). The purpose of a motion in limine is to "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008) *aff'd*, 402 F. App'x 337 (10th Cir. 2010).

"[T]he evidence must be inadmissible on all potential grounds" to be excluded on a motion in limine. *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). This is because "a court is almost always better situated during the actual trial to

assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007). This high standard is necessary so that "questions of foundation, relevancy and potential prejudice may be resolved in [the] proper context" of trial. *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Accordingly, regarding motions in limine, "the district court may change its ruling at any time for whatever reason it deems appropriate." *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995) (citations omitted); *see also Luce*, 469 U.S. at 41–42 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

## DISCUSSION

Based on the foregoing standard, the Court finds as follows:

### I.     Oklahoma's Unfair Claims Settlement Practices Act

Defendant seeks to preclude Plaintiffs or their witnesses from addressing the Oklahoma Unfair Claims Settlement Practices Act ("OUCSPA"). Defendant asserts that any reference to the OUCSPA is irrelevant and prejudicial, as "Oklahoma does not recognize a private right of action for violation of the act." Motion at 1. Plaintiffs respond that they will "neither seek to introduce [OUCSPA] nor will Plaintiffs' counsel ask questions specific to [it]." Response at 1. To the extent Plaintiffs concede Defendant's arguments on the OUCSPA, Defendant's Motion on this point GRANTED.[2]

---

[2] Plaintiffs state they intend to address the "duty of good faith and fair dealing and the responsibilities of an insurance company." *Id.* As Defendant does not challenge this point, nor does it argue such issues should be excluded by virtue of there being some overlap with the OUCSPA, the Court need not address this issue further.

## II.     Witnesses Not Traveling to Testify at Trial

Next, Defendant contends that Plaintiffs should not be allowed to "mention or refer to which witnesses did or did not appear live at trial." Motion at 2. Plaintiffs misconstrue Defendant's position on this point, and respond that, according to the Final Pretrial Report, there are no out-of-state witnesses in this case, and the parties have agreed that all witnesses are in the State of Oklahoma. Response at 3. But that is precisely Defendant's point: "[r]eference to the absence of out-of-state employees" should be precluded, because it makes no fact of consequence more or less probable.

Evidence is relevant if: (1) "it has any tendency to make a fact more or less probable than it would be without the evidence"; and (2) "the fact is of consequence in determining the action." FED. R. EVID. 401.

The Court generally agrees with Defendant that whether an out-of-state employee hypothetically should have testified is not relevant under the law, and the totality of trial witnesses are set forth in the Final Pretrial Report.  The Court can discern no purpose for evidence or argument that a witness not listed in the Final Pretrial Report was not called to testify.  Defendant's Motion on this point, uncontested by Plaintiffs, is GRANTED.

## III.     The "Golden Rule"

Defendant requests that Plaintiffs be barred at trial from making any "Golden Rule" arguments, since these arguments would be unfairly prejudicial to Defendant. Motion at 3.

Although the Tenth Circuit has recognized the "golden rule" argument may not be proper in certain instances, *see Blevins v. Cessna Aircraft Co*., 728 F.2d 1576, 1581 (10th Cir. 1984), the Circuit has likewise carved out a narrow exception in cases where the reasonableness of conduct, in light of information known at the time, is at issue.  *See, e.g*, *Shultz v. Rice*, 809 F.2d 643, 652 (10th Cir. 1986) (quoting *Stokes v. Delcambre*, 710 F.2d 1120, 1128 (5th Cir. 1983)).  Use of the so-called "golden rule" argument, when its aim is to elicit an emotional response by jurors, is improper.  The Court reserves ruling on this issue in advance of trial, opting instead to consider it in context if the issue is raised during trial.

## IV.    Comments on What Is "Fair" or "Reasonable"

Defendant argues both that it is the Court's duty to instruct the jury on the law and that testimony by witnesses, or comments by counsel, regarding what is "fair," "reasonable," or the "right thing" to do are inadmissible.  Defendant argues this would be tantamount to allowing a lay witness to instruct the jury on Oklahoma's bad-faith law. Plaintiffs respond that Defendant's claim adjusters testified that the industry standards are requirements of their job when adjusting claims. Response at 4. Furthermore, Plaintiffs contend that Defendant "wants to use its hired expert, [Cindi Miles], to do precisely what it seeks to prevent the [Plaintiffs] from doing." *Id.* at 5.

Under FED. R. EVID. 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by . . .unfair prejudice." Rule 403 favors admissibility, and the Court should "give the evidence its maximum reasonable probative force and its

minimum reasonable prejudicial value." *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1274 (10th Cir. 2000).

"An opinion is not objectionable just because it embraces an ultimate issue." FED. R. EVID. 704. "[O]pinions that merely tell the trier of fact what result to reach or state a legal conclusion in a way that says nothing about the facts still are objectionable," however. 29 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. EVID. § 6284 (2d ed.); *see also United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015) (Rule 704 testimony must still "be helpful to the trier of fact"). This is because "such opinions are not 'helpful' as required by Rule 701 and do not 'help' as required by Rule 702." *Id*.

Plaintiffs make a plausible argument that the questions to witnesses concerning fairness and reasonableness will help the jury in this case, will be based on a witness's factual perception, and will avoid telling the jury how to rule. Plaintiffs seek to question the adjuster who handled their inspection about the adjuster's understanding of duties.

The Court cautions counsel for both parties, however, "that questions or comments by a witness or counsel that misstate Oklahoma law will encroach on the Court's role in instructing the jury on the applicable law." *Godfrey v. CSAA Fire & Cas. Ins. Co.,* No. CIV-19-00329-JD, 2020 WL 1056306, at *6 (W.D. Okla. Mar. 4, 2020) (citing *Specht v. Jensen*, 853 F.2d 805, 810 (10th Cir. 1988) ("In no instance can a witness be permitted to define the law of the case.")); *see also Stewart v. Brotherhood Mut. Ins. Co*., No. 16-cv-488-JED-FHM, 2018 WL 4092018, at *6-7 (N.D. Okla. July 10, 2018) (unpublished) (citing *Specht* in granting motion in limine for questions or contentions that insurer must give "the benefit of the doubt" to its insureds to satisfy duty of good faith and fair dealing).

The jury will be equipped to form its own conclusion on whether the insurance policy was breached and whether CSAA had a reasonable, good-faith belief in denying and not paying the claim.

Defendant's Motion on this point is DENIED without prejudice to the parties reasserting objections at trial, if necessary.

## V.     Reserves Set by Defendant

Defendant objects to the introduction of evidence related to its loss reserves for Plaintiffs' insurance claim as "highly prejudicial and confusing to a jury." Motion at 7. Defendant argues that such reserves are required by insurance departments in various states and Defendant's own internal controls. *See id.* at 6. Plaintiffs respond that evidence of loss reserves is "relevant in a bad faith case," when weighing the subjective component of the bad faith claim. Response at 7 (citing *Oneok, Inc. v. Nat'l Union Fire Ins. Co.*, No. 06-CV-200GKFSAJ, 2007 WL 2891519, *4 (N.D. Okla. Sept. 28, 2007) (stating that a "bad faith [case] necessarily [has] a subjective component")).

The facts pertaining to this issue are like those found in a previous insurance dispute before the Court. *See Charles A. Shadid, L.L.C. v. Aspen Specialty Ins. Co.*, 2018 WL 3420816 (W.D. Okla. July 13, 2018). In *Charles A. Shadid, L.L.C. v. Aspen Specialty Insurance Co.*, the Court found evidence of a defendant's loss reserve relevant and concluded the defendant had failed to show the probative value of the evidence was substantially outweighed by a danger of unfair prejudice. *Id.* at *5. In this case, as in *Aspen*, any prejudice to Defendant arising from such evidence can be avoided by using an appropriate jury instruction. Defendant's motion on this issue is DENIED.

## VI.     Reasons to Pay a Claim or Pay More on a Claim

Defendant argues that the Court should disallow Plaintiffs' insinuations that Defendant had an obligation to look for reasons to pay a claim or to pay more on a valid claim, Motion at 7–8, and that Defendant must devote more time and attention to finding a reason to pay a claim than to deny a claim. *Id*. Plaintiffs respond that their counsel does not anticipate asking questions about whether Oklahoma law requires adjusters to "look harder" to pay more on claims. Response at 9. However, Plaintiffs' counsel anticipates asking Defendant's adjusters about their training and understanding regarding their duty of good faith and fair dealing, and therefore requests the Court to reserve its ruling until the trial. *Id.* The Court will reserve ruling on this issue until the appropriate time during trial.

## VII.    Defendant's Profit-Sharing Plan

Defendant requests that any mention or evidence relating to its IRS-approved profit-sharing plan, in which its employees participate, be excluded. *See* Motion at 8–9.  Because Plaintiffs do not intend to introduce any evidence of Defendant's profit-sharing plan, and do not challenge Defendant's position, *see* Response at 9, Defendant's motion on this issue is GRANTED.

## VIII.   The "Benefit of the Doubt" to the Insured

Defendant requests that Plaintiffs be prohibited from suggesting to the jury that Defendant owes the "benefit of the doubt" to its insured. *See* Motion at 10–11; *Barnes v. Okla. Farm Bureau Mut. Ins. Co.*, 11 P.3d 162, 171 (Okla. 2000) (stating that "a decision to withhold or delay payment, if based on a legitimate dispute or reasonable justification (legal or factual) cannot form the basis of bad faith tort liability"); *Garnett v. Government*

*Employees Ins. Co.*, 186 P.3d 935, 944 (Okla. 2008) ("It is not breach of the duty if good faith for an insurer to resort to the judicial forum to settle legitimate disputes as to the validity or amount of an insurance claim.").

Plaintiffs respond that they do not intend to ask Defendant's witnesses whether they have a duty to give their insureds the "benefit of the doubt." Response at 9. Therefore, the motion on this issue is GRANTED.

## IX.    Other Claims or Lawsuits

Defendant objects to Plaintiffs offering evidence pertaining to other breach of contract and/or bad faith claims against Defendant. Motion at 12. Defendant contends that this "pattern and procedure" evidence should be prohibited because it is irrelevant, unfairly prejudicial and unduly confusing to the jury, inadmissible as evidence of unrelated conduct, and constitutes inadmissible hearsay. *Id*. Pursuant to FED. R. EVID. 401, Defendant argues other claims or lawsuits are not relevant because it would not make any fact of consequence in this action more or less probable. *Id* at 13 (citing *Black v. M & W Gear Co.*, 269 F.3d 1200, 1227 (10th Cir. 2001)).  Furthermore, Defendant argues that even if this evidence is deemed relevant under FED. R. EVID. 401, it is inadmissible under FED. R. EVID. 403. Motion at 14. Defendant further argues that evidence of "other wrongs" or "other acts" are generally inadmissible and that admitting this evidence would create a substantial risk that the jury might punish Defendant for actions not relevant to this case. Motion at 14. Lastly, Defendant asserts that permitting evidence of other complaints or lawsuits constitutes inadmissible hearsay, unless the parties bringing those complaints are available to testify. *See*, *e.g., Johnson v. Ford Motor Co.*, 988 F.2d 573, 579 (5th Cir. 1993).

Plaintiffs contend that Defendant's "pattern and practice" evidence is admissible. In support of their contention, Plaintiffs point to *Vining v. Enterprise Financial Group, Inc.*, 148 F.3d 1206, 1218–19 (10th Cir. 1998), where the Tenth Circuit affirmed the decision to admit evidence regarding the insurer's treatment of other, non-party insureds, finding it relevant under FED. R. EVID. 406. The Tenth Circuit concluded this was so because the evidence made a showing a "pervasive, consistent pattern of abuse" by the insurance company. *Id*. Plaintiffs further argue that Defendant has failed to identify specific evidence that it wishes to keep out. Response at 12.

The Court agrees that it does not have sufficient information before it to make a ruling on this issue, and any decision based on the instant briefs would be premature. Accordingly, Defendant's Motion on this point is RESERVED for later determination, if necessary.

## X.      Arguments Related to Punitive Damages

Defendant seeks to prohibit Plaintiffs' counsel from raising any argument relating to punitive damages in the first phase of the trial. Motion at 16–17. Plaintiffs respond that Oklahoma has adopted a bifurcated procedure in cases involving a claim for punitive damages, and that it is proper to inform the jury that Plaintiffs are seeking punitive damages from the onset of trial. Response at 14.

Oklahoma substantive law provides a two-stage process for the awarding of punitive damages. OKLA. STAT. tit 23, § 9.1*; Lierly v. Tidewater Petroleum Corp*., 139 P.3d 897, 906 (Okla. 2006). At the first stage, the jury determines liability, the actual amount of damages, and whether a defendant acted with reckless disregard for the rights of others. *Id.*

The second stage, if made necessary by the jury's findings, is when the jury determines the amount of punitive damages that will appropriately "punish the reckless and malicious behavior and deter such behavior in the future." *Id*.

During voir dire and opening statements, Plaintiffs may comment on their request for punitive damages. Plaintiffs' counsel, however, is prohibited from using language about "sending a message, making an example of CSAA, punishing CSAA, or inviting the jury to award damages based on punishment or deterrence when only compensatory damages are at issue in the first stage of the trial." *Godfrey,*2020 WL 1056306, at *7 (citing *Cook v. Med. Sav. Ins. Co.*, No. 05-cv-289-C, 2006 WL 1049253, at *2 (W.D. Okla. April 13, 2016) (unpublished) (explaining plaintiff may comment on request for punitive damages in voir dire or opening statement)). Accordingly, Defendant's motion on this issue is GRANTED in part as set forth above.

## XI.     Rimkus Reports in This Case and Other Cases

Defendant seeks to preclude Plaintiffs' proposed evidence that Defendant's extensive work history with Rimkus for engineering reports makes Rimkus inherently biased in Defendant's favor. Response at 17–18. Defendant claims that reports by Rimkus for other claims beside the one at issue in this lawsuit are irrelevant and inadmissible. Motion at 18 (citing FED. R. EVID. 402, 403).

Plaintiffs assert that evidence of other Rimkus reports is relevant to their bad faith claim, and that the other Rimkus inspection reports are relevant to the issue of bias. Plaintiffs show that Defendant has hired Rimkus a total of twenty-seven times to investigate earthquake claims, and that Rimkus has never found structural damage caused

by an earthquake. Response at 15–16. Additionally, that "it is the improper treatment that insureds received due to the use of Rimkus Engineering to 'inspect' their homes and structures that is relevant, not whether the other insureds made or filed bad faith claims or actions, settled their claims, or obtained a judgment." Response at 18. Plaintiffs further assert that Rimkus engineers alter their reports to attribute damage to non-covered losses. Plaintiffs offer that Defendant's own corporate representative testified that the hiring of Rimkus is a claims-handling practice for Defendant. Response at 19. Plaintiffs further note that if the relationship between an expert and an insurer may cause the expert to slant his testimony in favor of the insurer, such relationship is "relevant to credibility," and that the jury should be allowed access to that information. Response at 20; (quoting *Great Lakes Anesthesia, PLLC v. State Farm, et al.*, 2011 WL 450 at p. *5 (E.D. Mich. 2011)).

In the Court's view, the manner that Defendant handled and denied similar claims with other insureds involving the same Rimkus Engineer, Tim France (with nearly identical reports) is relevant to Plaintiffs' claim of bad faith, and therefore should be admitted. Accordingly, Defendant's motion on this issue is DENIED.

## XII.   Litigation-Induced Distress

Next, Defendant seeks to exclude any evidence that litigating this case has caused Plaintiffs stress, anxiety, and depression because litigation conduct should not be allowed to serve as proof of bad faith. *See* Motion at 20–21; *Roesler v. TIG Ins. Co.*, 251 F. App'x 489, 498 (10th Cir. 2007) (unpublished) ("[T]o hold an insurer's acceptable litigation tactics as evidence of bad faith would be to deny the insurer a complete defense."); *Timberlake Constr. Co. v. USF&G*, 71 F.3d 335, 341 (10th Cir. 1995) (holding that

evidence of an insurer's litigation conduct to prove bad faith should generally be inadmissible due to its lack of probative value and high risk of prejudice). Plaintiffs respond that they are seeking to introduce Defendant's litigation conduct not "as evidence of bad faith," but rather to be considered by the jury when assessing damages. *See* Response at 22.

Evidence of litigation-induced stress is regularly excluded. *See, e.g., Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70, 79 (1st Cir. 2001) ("[L]itigation-induced stress is not ordinarily recoverable as an element of damages."); *Stoleson v. United States*, 708 F.2d 1217, 1223 (7th Cir. 1983) ("It would be strange if stress induced by litigation could be attributed in law to the tortfeasor."); *accord Godfrey,* 2020 WL 1056306, at \*8.

"Admitting evidence of litigation-induced stress when it is not recoverable renders the evidence irrelevant, potentially confusing to the jury, and a waste of time under Rule 403." *Godfrey,* 2020 WL 1056306, at \*8.  According to the Tenth Circuit, to argue that the mere act of suing is reprehensible serves no proper purpose. *See Oulds v. Principal Mut. Life Ins. Co*., 6 F.3d 1431, 1442 (10th Cir. 1993) ("No reasonable inference of bad faith arises from the insurer's withholding payment based on a legitimate dispute."). "It is not the function of closing argument 'to debase, degrade or impugn the veracity of a litigant' or opposing counsel" and that our system should instead "focus on the merits of the case at hand, and that [counsel] can disagree about those merits without being disagreeable." *Whittenburg v. Werner Enterprises Inc.,* 561 F.3d 1122, 1130 (10th Cir. 2009). Defendant's Motion on this point is GRANTED.

### XIII.  Earthquake Bulletin

Defendant moves the Court to preclude the admission of the Oklahoma Insurance Commissioner's Earthquake Insurance Bulletin No. PC 2015-03 into evidence at trial. Motion at 21. Defendant points to the language by the Insurance Commissioner stating that "where an insurer denies a claim based on pre-existing damage, then '[the Commissioner] expect[s] that the insurer has inspected the property prior to inception of the coverage and maintained reasonably current information as to the condition of the insured property, prior to loss,'" and states that this bulletin is neither a rule nor a regulation. *Id*. Accordingly, Defendant argues that the use of this bulletin would be unfairly prejudicial, because it would create a false impression that prior inspections are required by law and amount to a home warranty. *Id.* at 21–22.

Plaintiffs respond that Defendant failed to comply with "industry standards" of prior inspections set forth by the Earthquake Bulletin. Plaintiffs state that the bulletin is a record stored in the ordinary course of business for Defendant's adjusters when adjusting earthquake claims and, therefore, satisfies the requirements of the business records exception.

Plaintiffs attempt to distinguish the Court's prior decision in *Charles A. Shadid, LLC v. Aspen Specialty Insurance Co.,* pointing to the fact that this case is based on an earthquake claim, and not a hail damage claim. *See Aspen Specialty Ins. Co*., 2018 WL 3420816, at *2–3.

Defendant requests that the Court adhere to the logic in *Aspen* and rule similarly, primarily on the basis that the bulletin is hearsay for which the business records exception,

FED. R. EVID. 803(6), does not apply. The Court finds Plaintiffs' argument unpersuasive. Like in *Aspen*, discovery has been completed and Plaintiffs have not timely identified any witness who could provide the information necessary to satisfy Rule 803(6). Plaintiffs have therefore failed to establish the admissibility of the hearsay statements in the bulletin. Accordingly, Defendant's motion on this issue is GRANTED.

## XIV. Media Coverage

Finally, Defendant seeks to exclude any evidence of media coverage of the November 7, 2016, earthquake arguing it lacks probative value as to "whether *Plaintiffs* suffered earthquake damage to their residence." Motion at 23–24 (emphasis in original). Additionally, Defendant asserts that any such articles or media coverage are also inadmissible hearsay and are not covered by any exception to the hearsay rule. *Id.* at 24. Plaintiffs respond that they do not intend to introduce "any exhibit regarding media coverage." Response at 25.

Defendant also asserts that witnesses who are not experts cannot testify as experts pursuant to Rules 701 and 702. Motion at 24. Defendant specifically points to Plaintiffs' rebuttal expert witness, Sean Wiley, and to Plaintiffs themselves, Sean and Chrystal Smith. *Id.* at 25. Based on the motion, Defendant asks the Court to define the scope of any testimony that may be properly proffered by Plaintiffs and Mr. Wiley. Plaintiffs do not respond to this separate request.

As to Plaintiffs, who are set to testify to "work related to loss" and "scope, amount, and cause of damages," consistent with Rule 701 as lay witnesses, their testimony will be limited to what is rationally based on their perception and not on scientific, technical, or

other specialized knowledge. *See* FED. R. EVID. 701. As to Mr. Wiley, as a rebuttal expert witness, the Court will limit the scope of his rebuttal testimony to David Battle's expert report and testimony thereon, as both parties have had access to the report. This will limit Mr. Wiley's expert testimony to the cost of reconstruction and damages, given that Mr. Battle's report did not make a determination as to the cause of the damages. Accordingly, Defendant's motion on this issue is GRANTED as set forth above.

## CONCLUSION

In sum, and subject to the requirements of the Federal Rules of Evidence and subsequent developments, the Court's rulings are as follows:

1. Oklahoma's Unfair Claims Settlement Practices Act—GRANTED;

2. Witnesses Not Traveling to Testify at Trial—GRANTED;

3. The "Golden Rule"— RESERVED;

4. Comments on What Is "Fair" or "Reasonable"— DENIED;

5. Reserves Set by Defendant— DENIED;

6. Reasons to Pay a Claim or Pay More on a Claim—RESERVED;

7. Defendant's Profit-Sharing Plan— GRANTED;

8. The "Benefit of the Doubt" to the Insured— GRANTED;

9. Other Claims or Lawsuits— DENIED;

10. Arguments Related to Punitive Damages— GRANTED IN PART;

11. Rimkus Reports in This Case and Other Cases—DENIED;

12. Litigation-Induced Distress—GRANTED;

13. Earthquake Bulletin—GRANTED; and

14. Media Coverage—GRANTED.

**IT IS THEREFORE ORDERED** that Defendant's Motion in Limine [Doc. No. 93] is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

**IT IS ORDERED** this 28th day of July, 2020.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge